## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       -v-<br><br>STEPHANIE MARYLOU BAEZ,<br><br>       Defendant. | Criminal No. 21-cr-507 (PLF)<br><br><br>**DEFENDANT'S MOTION TO DISMISS**<br>**ON FIRST AMENDMENT GROUNDS** |

COMES NOW, Stephanie Marylou Baez ("Baez"), by and through counsel, with this Motion to dismiss all counts of the indictment, on 1st amendment grounds.

## I.   INTRODUCTION

Of all the places in America, the U.S. Capitol must be the most accessible to the citizenry.   Conversely, the Capitol is perhaps the place in America where government has the least authority to restrict citizen presence, petitioning, demonstrating, and activism.  The First Amendment explicitly states that "Congress shall make no law" restricting free speech, peaceably assembling or interfering with the right to petition government for redress of grievances.  Thus, Congress is subject to the control and correction of the public according to the plain text of the Constitution.  *See, e.g.*, *Lederman v. United States*, 291 F.3d 36 (DC Cir. 2002) (striking down a regulation banning leafleting and other "demonstration activities" on the sidewalk at the foot of the House and Senate steps on the East Front of the Capitol). The *Lederman* Court found that sidewalks around the Capitol are a public forum, and that a regulation banning leafleting and other "demonstration activities" at the foot of the House and Senate steps on the east side of the Capitol is unconstitutional.

In Count One, Baez is accused of "knowingly enter[ing] and remain[ing] in the United States Capitol, a restricted building, without lawful authority to do so, in violation of 18 U.S.C. § 1752(a)(1))."  But there is no law of Congress which makes the Capitol a restricted building. (Nor could Congress lawfully restrict the Capitol in such a way, as they have no constitutional authority to "make [any] law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.") Section 1752(a) does not proclaim that the Capitol is a "restricted" building.

In fact, generally speaking, the Capitol is open to the public during normal business hours.  Prior to January 6, the official website explicitly informed visitors that "The Capitol Visitor Center, the main entrance to the U.S. Capitol, is located beneath the East Front plaza . . . . The Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday . . ."



U.S. Capitol Visitor Center \ Plan A Visit
\ Travel and Guidelines \ Visitor Hours & Info

# Visitor Hours & Info

The Capitol Visitor Center, the main entrance to the U.S. Capitol, is located beneath the East Front plaza of the U.S. Capitol at First Street and East Capitol Street.  Getting to the Capitol »

**Hours** - The Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday except for Thanksgiving Day, Christmas Day, New Year's Day and on Inauguration Day.

**Official Business** - Visitors with official business appointments may enter the Visitor Center as early as 7:15 a.m.



It is simply not possible for the government to lawfully convict Baez of "enter[ing] and remain[ing] in the United States Capitol, a restricted building, without lawful authority to do so," when (a) the Capitol's official signage and websites proclaim the building is open to the public, and (b) Baez has a constitutional right, under the 1st amendment, to monitor, watch, advocate, petition, and protest regarding the work of representatives and officials inside the building.

Indeed, it can be argued that Baez <u>has a civic duty</u> to monitor, observe, watch, and (try to) influence the goings-on inside the Capitol.

Although Baez's right and duty to watch and monitor doings inside the Capitol may be subject to reasonable time, place, and manner restrictions, the government cannot prevent Baez from exercising her constitutional rights and duties. <u>Baez' right to enter the Capitol is not subject to the permission, will, or discretion of the government</u>. *Cf., inter alia*, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002); *Bay Area Peace Navy v. United States*, 914 F.2d 1224 (9th Cir. 1990); *A Quaker Action Group v. Hickel*, 137 U.S. App. D.C. 176, 421 F.2d 1111 (D.C. Dir. 1969).

Given these principles, Count One does not state an offense under federal law upon which any relief can be granted; and must be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

## II. COUNTS TWO AND THREE ARE ALSO UNCONSTITUTIONAL, AS PEOPLE HAVE A FIRST AMENDMENT RIGHT TO "IMPEDE AND DISRUPT" "THE ORDERLY CONDUCT OF GOVERNMENT" BY FIRST AMENDMENT PROTECTED EXPRESSION AND ADVOCACY.

Count 2 alleges that Baez "knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engaged in disorderly and disruptive conduct in, and within such proximity to the United States Capitol, a restricted building, when, and so that, such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions" in violation of 18 U.S.C. § 1752(a)(2)).

Count 3 is essentially a repeat of Count 2.  It alleges that on January 6, Baez "did willfully and knowingly engage in disorderly and disruptive conduct at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress . . ." in violation of 40 U.S.C. § 5104(e)(2)(D)).

Both these counts must be dismissed because they conflict with Baez's rights and duties under the 1st amendment to speak freely, assemble with others, and petition for redress of grievances at the U.S. Capitol.

A person's speech or petitioning activity is not removed from the ambit of First Amendment protection simply because it advocates an unlawful act. *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). The First Amendment does not permit government "to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982); *Noto v. United States*, 367 U.S. 290, 291 (1961); *Yates v. United States*, 354 U.S. 298, 318 (1957), *overruled in part on other grounds by, Burks v. United States*, 437 U.S. 1, 7,

12 (1978).  Advocacy is unprotected only if it is "intended to produce, and likely to produce, imminent disorder"; "advocacy of illegal action at some indefinite future time" is not actionable. *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973).

It is clear that the term "advocacy," as used in *Brandenburg*, encompasses not only freedom of speech, but the other rights of expression guaranteed by the First Amendment as well. *Brandenburg* specifically held that "statutes affecting the right of assembly, like those touching on freedom of speech, must observe the established distinctions between mere advocacy and incitement to imminent lawless action." 395 U.S. at 449 n.4. *See also Communist Party of Indiana v. Whitcomb*, 414 U.S. 441, 448-50 (1974) (applying *Brandenburg* principles to state regulation of access to the ballot). The Supreme Court has also explained that the right to petition is "inseparable" from and "was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble." *McDonald v. Smith*, 472 U.S. 479, 485 (1985) (citations omitted).

Thus, even if Baez knowingly intended "to impede and disrupt the orderly conduct of Government business and official functions" at the Capitol, she had a right to walk inside the Capitol, express her opinions and communicate her grievances. There is nothing sacrosanct about "orderly conduct of government business." Arbitrary and oppressive government power has been the norm rather than the exception, and much of the federal government is out of control at all times. Cf., *City of Arlington v. FCC*, 569 U.S. 290, 312-17 (2013) (Roberts, C.J., dissenting) (describing the tendency of government agencies toward abuse and misconduct).

Without some specific allegation of violent or lawless conduct by Baez, the government's allegations in Count 2 fail to state a constitutional allegation. "Imminent lawless action," as used in *Brandenburg*, means violence or physical disorder in the nature of a riot. Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment." *White*, 227 F.3d at 1228. The First Amendment protects the right of every citizen to "reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Kovacs v. Cooper*, 336 U.S. 77, 87 (1949).

Counts 2 and 3, like Count 1, simply do not state valid criminal claims in the context of people demonstrating and expressing their views at the U.S. Capitol in accordance with the 1st amendment.   Accordingly, Counts 2 and 3 must also be dismissed.

## III. COUNT FOUR VIOLATES BAEZ' FIRST AMENDMENT RIGHTS TO PARADE, DEMONSTRATE AND PICKET AT THE CAPITOL

The final count in Baez's indictment, Count 4, also violates the Constitution. Count 4 alleges that "On or about January 6, 2021, [Baez] did willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings" in violation of 40 U.S.C. § 5104(e)(2)(G)).

Parading, demonstrating and picketing for redress of grievances is the birthright of every American. '[D]emonstrate' has been defined by the Supreme Court as "to make a public display of sentiment for or against a person or cause" and "picket" as an effort "to persuade or otherwise influence"). *Hill v. Colo.*, 530 U.S. 703, 721-22 (2000) (quoting Webster's Third New International Dictionary). The no-

demonstration and no-picketing zone established by 40 U.S.C. § 5104(e)(2)(G)) in the entirety of a 1.5-million-square-foot building is the largest infringement on basic 1st amendment rights ever imposed anywhere in the United States.

Baez's indictment is aimed at chilling Baez's (and millions of others)' right to petition and speak against perceived government abuses at the Capitol.   The government seeks to insulate congressional representatives, staff, officials and attendees from receiving the messages of Baez and other protestors and petitioners. Such efforts by the government are undeniably unconstitutional. *See, e.g.*, *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000).

Under the First amendment, "free speech zones" are presumptively invalid everywhere.  However, there are a tiny few temporary instances and secure spaces where courts have allowed limited restrictions on picketing and demonstration. Never, however, has any court allowed the government to silence and censor all petitioning and protesting in such a vast radius as the government seeks here.

 A number of cases have recognized that certain officials or facilities are so highly-sensitive or protected that protestors can be confined to "free speech zones" at a given distance away.  How far away, exactly?  In *Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994), the Supreme Court determined that a 300-foot buffer between protesters and the entrance to an abortion clinic was <u>too great a restriction</u> on speech, however, a thirty-six-foot buffer was acceptable. *Id*. at 771. The Court reasoned that "citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to freedoms protected by the First Amendment." *Id*. at 774.

The late Judge Larry McKinney of the U.S. Southern District of Indiana dealt with a similar case involving a protestor who picketed a speech by Vice President Dick Cheney in 2002. *Blair v. City of Evansville*, 361 F. Supp. 2d 846 (S.D. Ind. 2005). Blair was arrested for "disorderly conduct" while merely holding a sign that stated "Cheney 19th Century Energy Man" at an event in Evansville, Indiana.  Blair later sued arresting officers, and the court held that "the restriction of protesters to an area <u>500 feet</u> away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the [government's] goals of safety."

Even more than in *Blair*, the expansive speech and picketing restrictions here (effectively <u>the entire</u> 1.5 million square foot Capitol complex) are massively overexpansive and not narrowly tailored to serve a significant government interest. *See United States v. Albertini*, 472 U.S. 675, 689 (1985)). While the vice president and Congress can and should be properly protected from danger, the First Amendment requires that the vice president and Congress cannot be entirely insulated from picketing and advocacy.

Judge McKinney found that the restriction of protesters to an area 500 feet away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the goals of safety.

Furthermore, other cases that have looked at restrictions on access to public buildings similar to the Centre have found a violation of the First Amendment on more narrow restrictions. See, e.g.,*Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 861-62 (9th Cir. 2004) (200 and 265 feet security zones found over broad); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (seventy-five yard security zone found over broad because it prevented demonstration from reaching intended audience; but see *Madsen*, 512 U.S. at 771 (holding that a thirty-six-foot buffer zone on public property was narrow enough).

*Blair*, 361 F. Supp. 2d at 858.

Similarly to the 1,000-foot ban in *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir. 2002), Judge McKinney found that the location of the protest zone in *Blair* "eliminated any meaningful avenue for the communication of ideas by the protestors to at least one intended audience, the attendees."

Note that the government here is <u>asserting that the entire U.S. Capitol</u>—one of the largest public buildings in the United States—is a no free speech and no picketing zone.  According to the Architect of the U.S. Capitol:

> **As the nation has grown so has the U.S. Capitol : today it covers well over 1.5 million square feet, has over 600 rooms, and miles of corridors.**
>
> **\*     \*     \*     \***
>
> **Today, the U.S. Capitol covers a ground area of 175,170 square feet, or about 4 acres, and has a floor area of approximately 16-1/2 acres. Its length, from north to south, is 751 feet 4 inches; its greatest width, including approaches, is 350 feet. Its height above the base line on the east front to the top of the Statue of Freedom is 288 feet.**

Architect of the Capitol, "The U.S. Capitol Building," (https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building) (accessed 8/14/2022).

Significantly, some federal courts have *already held* that the West Front Lawn is a traditional public forum where demonstrations must be allowed. *See also*, *e.g.*,

*Lederman*, 291 F.3d at 44.   In *Lederman*, the D.C. Circuit declared facially unconstitutional a "regulation banning leafleting and other 'demonstration activit[ies]' on the sidewalk at the foot of the House and Senate steps on the East Front of the United States Capitol." 291 F.3d at 39 (alterations in original). In finding that the law at issue in *Lederman* failed the narrow-tailoring analysis, the Court of Appeals cautioned that "the Constitution does not tolerate 'regulations that, while serving their purported aims, prohibit a wide range of activities that do not interfere with the Government's objectives.'" *Id*. at 44 (quoting *Cmty. for Creative Non-Violence v. Kerrigan* (CCNV), 865 F.2d 382, 390 (D.C. Cir. 1989)). Applying that principle, the panel concluded that the "ban's absolute nature" rendered the regulation not narrowly tailored, as "[s]ome banned activities" "cannot possibly" interfere "with the stated objectives of traffic control and safety." *Id*. at 45.

## IV.    CONCLUSION

40 U.S.C. § 5104(e)(2)(G), which forbids "willfully and knowingly parad[ing], demonstrate[ing], or picket[ing] in any of the Capitol Buildings" is unconstitutional both on its face and as applied to the alleged conduct of defendant Baez.  Baez is accused of nothing more than walking into the Capitol during normal business hours as part of a demonstration of expression regarding the fairness of the 2020 presidential election.  Baez has a First Amendment right to express her opinions in such a manner.

For all the above-described reasons, the indictment in this case must be dismissed.

Dated: September 2, 2022    Respectfully submitted,

<u>/s/ John M. Pierce</u>
John M. Pierce
John Pierce Law, P.C.
21550 Oxnard Street
3d Floor, PMB 172
Woodland Hills, CA 91367
Tel: (213) 279-7846
jpierce@johnpiercelaw.com


*Attorneys for Defendant*
*Stephanie Marylou Baez*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 2, 2022, this motion and the accompany

declaration was filed via the Court's electronic filing system, which constitutes

service upon all counsel of record.

/s/ John M. Pierce

John M. Pierce
