## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | **:** | |
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **No. 21-CR-507 (PLF)** |
| | **:** | |
| **STEPHANIE M. BAEZ,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS

The United States of America respectfully submits this opposition to Stephanie M. Baez's motion to dismiss all counts of the information. ECF No. 28. Baez advances three main arguments and grounds for dismissal. First, she argues that Count One "does not state an offense under federal law upon which any relief can be granted" and "must be dismissed." *Id*. at 4. Second, she argues that Counts Two and Three "simply do not state valid criminal claims in the context of people demonstrating and expressing their views at the U.S. Capitol in accordance with the 1st [A]mendment." *Id*. at 7. Both challenges can be consolidated into a single allegation that as to Counts One, Two, and Three, the government failed to state an offense. Third, Baez argues that Count Four should be dismissed because it "is unconstitutional both on its face and as applied to the alleged conduct of defendant Baez." *Id*. at 11. Each of Baez's proffered grounds for dismissal lacks merit and this Court should deny the defendant's motion.

## I.    BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential

Election. With the Joint Session underway and with Vice President Michael Richard Pence presiding, a large crowd gathered outside the U.S. Capitol. "The mob [ . . . ] scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol," with the first rioters entering shortly after 2:00 p.m. *Trump v. Thompson*, 20 F.4th 10, 10 (D.C. Cir. 2021).

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. The siege of the Capitol lasted for several hours and represented a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in damage and losses. The siege of the U.S. Capitol on January 6, 2021, was "the most significant assault on the Capitol since the War of 1812." *Trump*, 20 F.4th at 18-19.

### A.      *"I just came out [to Washington, D.C.] alone to fight Antifa."*

United States Capitol Police (USCP) closed-circuit video (CCV) shows Baez entering the U.S. Capitol twice. The first time was at approximately 2:56 p.m. when she entered through a fire door—the window of which had been previously broken out to achieve the breach—on the north side of the NW Plaza of the Capitol. At approximately 2:59 p.m., police officers pushed rioters out of that hallway and back into the NW Plaza. USCP CCV shows rioters waving for others who are trying to get in to move out of the way and allow them to exit. There is a bottleneck, and a considerable amount of jostling occurs. Baez can be seen getting violently shoved around from multiple directions. She finally gets out of the Capitol at 3:01 p.m.

At approximately 3:07 p.m., USCP CCV shows Baez reentering the Capitol through the Senate Wing Door on the east side of the NW Plaza. The door itself had by that time been violently breached twice, and the two windows flanking the door were broken out with rioters climbing into

2

and out of them. Baez walked from this entry point south to the Crypt, and she remained there until she was escorted out by police officers. The officers led Baez and other rioters out of the Capitol and into the East Plaza via a door known as the Memorial Door. At approximately 3:24 p.m., Baez left the Capitol for the second time.

On January 6, 2021, the FBI already started receiving tips that an Instagram account associated with Baez was posting videos from inside the U.S. Capitol on January 6, 2021. ECF No. 1-1, p. 2. In a non-custodial interview that took place on April 27, 2021, Baez admitted to being in Washington, D.C., on January 6, 2021. *Id.* at 6. She also admitted to being inside of the U.S. Capitol. *Id.* Baez stated that the purpose of her visit was to attend former president's rally and to look at medical schools, although in a social media message sent January 5, 2021, she stated "fight antifa" as her reason for being there. *Id.* at 7. In another publicly available video, while on Capitol grounds, Baez claimed that she was there to meet a Proud Boy and gave out her Instagram handle. *Id.* at 2-3. After leaving the Capitol, Baez described herself as a "revolutionary," "so proud [of herself]," and described her participation in the riot as "her proudest moment." *Id.* at 11-12. In describing the other rioters, Baez stated that, "Americans fought back against the actual government." *Id.* at 8. Baez maintained at the time that "[she and other rioters] are legally allowed into the Capitol Building," and that "[she] checked and technically American citizens are allowed into the Capitol Building ANY TIME that congress is speaking." ECF No. 1-1, pp. 11-12.

Baez is charged by information with: (1) Entering and Remaining in a Restricted Building in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2); (3) Violent Entry and Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading,

Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). ECF

No. 10. This case is set for trial on November 29, 2022. ECF No. 26, p. 7.

## II.     LEGAL STANDARD

### A.     *The Failure to State an Offense Challenge—Counts One, Two, and Three*

A defendant may move before trial to dismiss an information, or a count thereof, for

"failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging

document, such as an indictment or (as here) an information, is to inform the defendant of the

nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015)

(discussing purpose of an indictment). Thus, an information need only contain "a plain, concise,

and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim.

P. 7(c)(1). A charging document is sufficient under the Constitution and Federal Rule of Criminal

Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of

the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974),

which may be accomplished by "echo[ing] the operative statutory text while also specifying the

time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).

"[T]he validity of an indictment 'is not a question of whether it could have been more definite and

certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v.

Debrow*, 346 U.S. 374, 378 (1953)). And a charging document need not inform a defendant "as to

every means by which the prosecution hopes to prove that the crime was committed." *United States

v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

When assessing the sufficiency of criminal charges before trial, an information "must be

viewed as a whole and the allegations [therein] must be accepted as true." *United States v.

Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether the allegations

4

"if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id*.

Judge Bates, in a recent memorandum opinion, recognized that there are two ways in which an information may fail to state an offense. First, "if the charged statutory provision is unconstitutional," and second, "if the offense charged does not apply to the defendant's conduct." *United States v. Nassif*, 21-CR-421, ECF No. 42, p. 3 (Sept. 12, 2022) (Bates, J.) (citations omitted).

**B.      The Facial and As-Applied Constitutional Challenge—Count Four**

In the First Amendment context, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 450 (2008). "To succeed in a typical facial attack, [a defendant] would have to establish that no set of circumstances exists under which [a statute] would be valid [ . . . ] or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up). The Supreme Court recognizes a second type of facial challenge when dealing with First Amendment issues, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (cleaned up). The Supreme Court has recognized that to rule a statute as facially unconstitutional is "strong medicine" that it has employed "with hesitation, and then only as a last resort." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (cleaned up). In a so-called "as-applied" challenge, the defendant would necessarily show that even if there are no constitutional issues with the statute as-written, it could still "be applied in such a manner as to stifle free expression." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002).

### C.    The Forum Based Approach to Restrictions on Government Property

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981)." First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id*. By contrast, a nonpublic forum is "a space that a space that is not by tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886; and—notably for this analysis—the inside of the United States Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.).

### III.    ARGUMENT

### A.    The Information Adequately States an Offense in Counts One, Two, and Three

Count One of the information alleges that, in violation of 18 U.S.C. § 1752(a)(1), "On or about January 6, 2021, in the District of Columbia, STEPHANIE MARYLOU BAEZ, knowingly entered and remained in the United States Capitol, a restricted building, without lawful authority to do so." ECF No. 10, p. 1. The elements of Count One are:

1)      The defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2)      The defendant did so knowingly.

Count Two of the information alleges that, in violation of 18 U.S.C. § 1752(a)(2),

On or about January 6, 2021, in the District of Columbia, STEPHANIE MARYLOU BAEZ, knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engaged in disorderly and disruptive conduct in, and within such proximity to the United States Capitol, a restricted building, when, and so that, such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

*Id*. The elements of Count Two are:

1)      The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2)      The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3)      The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

Count Three of the information alleges that, in violation of 40 U.S.C. § 5104(e)(2)(D),

On or about January 6, 2021, in the District of Columbia, STEPHANIE MARYLOU BAEZ, did willfully and knowingly engage in disorderly and disruptive conduct at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

*Id*. The elements of Count Three are:

1)      The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2)      The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress;

3)      The defendant acted willfully and knowingly.

The information therefore includes the elements of the offense for all three offenses. The

Counts of the information "echo[ ] the operative statutory text while also specifying the time and

place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Counts One, Two, and Three "fairly inform" Baez of the charges against which she must defend, and that it stems from her conduct on January 6, 2021, in the District of Columbia. *Hamling*, 418 U.S. at 117. "No more is required." *Nassif*, 21-CR-421 (JDB) at 15.

### B. The Argument That Baez (And All) Have an Unfettered Right to Enter the U.S. Capitol Without Permission Lacks Merit

Baez asserts she should have unfettered access to the United States Capitol. Nonetheless, Baez asserts, without citation to any kind of authority, "the U.S. Capitol must be <u>the most accessible</u> to the citizenry" and that of all the places in America, it is at the U.S. Capitol that the "government has the <u>least authority</u> to restrict citizen presence, petitioning, demonstrating, and activism." ECF No. 28, p. 1 (emphasis in original). Immediately after recognizing that her rights and duties "to watch and monitor doings inside the Capitol may be subject to reasonable restrictions," Baez asserts that her "<u>right to enter the Capitol is not subject to the permission, will, or discretion of the government</u>." *Id.* at 4 (emphasis in original). None of the cases in the subsequent string-cite stand for such a broad-sweeping proposition.

In fact, as this Court concluded in *Bynum*, the Capitol building is a nonpublic forum. For one thing, government "ownership of property does not automatically open that property to the public." *Kokinda*, 497 U.S. at 725. And notwithstanding occasional access to the Capitol building by members of the public, the building is "not open to meetings by the public at large," and thus not generally "open to the public for limitless expression." *Bynum*, 93 F. Supp.2d at 56. In short, "Congress has not opened the Capitol as a public forum for free and open public discourse." *Id.* That was especially true on January 6, 2021, when security precautions for the Joint Session and the upcoming presidential inauguration *and* the ongoing global pandemic meant that the Capitol building was not open to the public at large.

8

The undated screenshot from what appears to be the U.S. Capitol's website that Baez includes in her motion does not undermine that straightforward analysis. Although there are no captures of the site from on January 6, 2021, the Wayback Machine—a digital snapshot of various sites on the World Wide Web—captured how the U.S. Capitol's website looked on December 25, 2020,[1] and January 7, 2021,[2] and how it appeared on those two dates is identical.

While Baez's screenshot is generally accurate, it does not show the whole picture. For example, just above the text "U.S. Capitol Visitor Center / Plan A Visit / Travel and Guidelines / Visitor Hours & Info" is the following notice:



*Image 1*—*A portion of a screenshot from the U.S. Capitol website as it appeared on December 25, 2020, and January 7, 2021.*

Anyone looking at the U.S. Capitol's website prior to January 6, 2021, would have seen a large notice advising of the "COVID-19 (coronavirus) Update," specifically that, "The Capitol Visitor Center is closed for tours. All tours are cancelled. We regret any inconvenience this may cause you, and we look forward to welcoming you to the Capitol Visitor Center at a future date."

Just below where Baez's proffered screenshot cuts off, another section, titled "Admission and Passes" begins.

---

[1]  http://web.archive.org/web/20201225000110/https://www.visitthecapitol.gov/plan-visit/visitor-hours-info

[2]  http://web.archive.org/web/20210107054455/https://www.visitthecapitol.gov/plan-visit/visitor-hours-info

 **Official Business** - Visitors with official business appointments may enter the Visitor Center as early as 7:15 a.m.

**Admission and Passes -** Admission to the Capitol Visitor Center is free. However, passes are required for tours of the historic Capitol and may be needed for other special events. All visitors to the Capitol are required to go through security screening.

**Tours -** Tours of the U.S. Capitol can be scheduled in advance on the Capitol Visitor Center website or through the office of one of your senators or your representative. Same-day passes are usually available at the Information Desk on the lower level. The last tour of the day is at 3:20 p.m. Please leave time to go through security. Book a Tour »

*Image 2—A portion of a screenshot from the U.S. Capitol website as it appeared on December 25, 2020, and January 7, 2021.*

The text of this section clearly states that "passes are required for tours of the historic Capitol." While it does qualify that by saying they "may be needed for other special events," it immediately states with no ambiguity that "All visitors to the Capitol are required to go through security screening." The words "security screening" are a hyperlink, and when clicked, the site redirects the viewer to a page regarding "Prohibited Items." [3] Some of the prohibited items include liquid, including water, and food or beverages of any kind, including fruit and unopened packaged food. Finally, back on the main page, there is a section entitled Capitol Etiquette Information, which reads, "To ensure that everyone has an enjoyable visit to the Capitol, we ask that all visitors adhere to the Capitol Etiquette guidelines." The words "Capitol Etiquette" comprise another hyperlink that, when clicked takes the viewer to a website[4] that outlines in detail the dos-and-don'ts of "entering the Capitol Visitor Center." One clearly visible request on the website advises

[3] http://web.archive.org/web/20210107054423/https://www.visitthecapitol.gov/plan-visit/prohibited-items

[4] http://web.archive.org/web/20210107004802/https://www.visitthecapitol.gov/plan-visit/capitol-etiquette

would-be visitors, "The Capitol is a working office building. Therefore, you are expected to dress appropriately and behave in a respectful manner in this business environment." In short, the website confirms that the Capitol was (and remains) a nonpublic forum.

    **C.**    ***Any Constitutional Argument Regarding Counts One, Two, and Three is Undeveloped and May Be Disregarded by This Court***

Regarding Counts One, Two, and Three, Baez mentions the First Amendment a few times but never describes the framework under which this Court should analyze her request for relief. In her arguments against Count One, Baez mentions the First Amendment twice and her right and duty to have unfettered access to the Capitol's interior twice more, but beyond that there is no on-point caselaw or legal analysis to support these meritless claims.

These failures mean that Baez has not properly developed claims for this Court's consideration. The D.C. Circuit has regularly disregarded claims or arguments when a movant fails to adequately develop a claim and when they assert but fail to properly analyze a claim. *See Barot v. Embassy of Zambia*, 773 F. App'x 6, 6 (D.C. Cir. 2019) ("The court declines to consider the other cursory arguments raised by appellant regarding this claim."); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613, (D.C. Cir. 2000) (noting that the court may disregard "asserted but unanalyzed" arguments); *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments." (internal quotation marks and citations omitted)). The same result is warranted here.

In her arguments against Counts Two and Three, Baez cites more caselaw, but they do little to frame the legal issue or advance her claims thereupon. She does not identify whether the challenge is facial or as applied. She does not make a claim as to whether the statute as written is content based or content neutral. She does not identify whether the U.S. Capitol is a public forum, a designated/limited public forum, or a nonpublic forum. She does not ask this Court to apply

either strict scrutiny or the reasonableness standard. She simply asserts her belief that, on January 6, 2021, she "had a right to walk inside the Capitol [twice—both times through a broken door with alarms blaring and rioters engaged in various violent and destructive acts], to express her opinions and communicate her grievances." ECF No. 28, p. 6. No precedent supports this broad claim. This Court need therefore go no further and should deny Baez's request for dismissal of Counts One, Two, and Three.

### D.      *Baez's Claim is Premature*

Baez argues that each of the statutory provisions charged in the information constitutes an impermissible restriction on speech in a public place. *Id*. at 1-11. That claim is premature because it requires an analysis of Baez's conduct, which is not before the Court at this stage in this case.

Baez advances the blanket assertion that any violation of 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), or 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) necessarily involves speech or conduct protected by the First Amendment. To be sure, certain conduct "such as picketing or demonstrating" may be so closely associated with speech as to warrant First Amendment protection, *see Virginia v. Hicks*, 539 U.S. 113, 124 (2003), at least where the picketing is "peaceful." *See United States v. Grace*, 461 U.S. 171, 176 (1983). But no evidence of Baez's precise conduct is before the Court; the record consists of the allegations in the information. Baez may raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241-42, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion,

12

Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010); *see Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context").[5] No record of the defendant's conduct yet exists in this case, which involves Baez's participation in a siege at the United States Capitol that involved significant violence against police officers and forced lawmakers meeting in a joint Session to evacuate from their respective chambers.[6] This Court should therefore deny her First Amendment challenge as premature.

### E.    Baez's First Amendment Challenge to 40 U.S.C. § 5104(e)(2)(G) Fails

Baez's more targeted attack on 40 U.S.C. § 5104(e)(2)(G), which prohibits knowing and willful demonstrating, parading, and picketing in a Capitol building, also fails. More than 20 years ago, this Court recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents." *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). Baez offers no compelling reason to deviate from that sensible conclusion.

A First-Amendment challenge involves three steps. First, the speech or conduct at issue must be protected under the First Amendment. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985). If so, the analysis then turns to the forum analysis described

---

[5] Baez's reliance on First Amendment challenges in civil cases is accordingly flawed. The cross-motions for summary judgment at issue in *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), identified "undisputed." *id.* at 30, facts showing that the plaintiff sought to distribute leaflets, id. at 31, a practice long recognized as falling within the ambit of the First Amendment. *See Grace*, 461 U.S. at 176.

[6] For this reason, Baez's apparent argument that her conduct is protected under *Brandenburg v. Ohio*, 395 U.S. 444 (1969) is also premature. ECF No. 28 at 5-7.

above. The third step "assess[es] whether the justification for exclusion from the relevant forum satisfies the requisite standard." *Cornelius*, 473 U.S. at 797.

As described above, Baez's claim founders at the first step because she fails to establish beyond cursory arguments that her case involves speech or conduct protected by the First Amendment. On the one hand, to the extent Baez seeks to argue that Section 5104(e)(2)(G) contravenes the First Amendment, she must do after trial. *See United States v. Kokinda*, 497 U.S. 720, 724-25 (1990). In *Kokinda*, two defendants were prosecuted for violating a United States Postal Service regulation that prohibited soliciting contributions outside of a post office. *Id.* at 723. As Baez does here, they advanced a First Amendment claim, namely, that the regulation was an impermissible restriction in a public forum—the sidewalk outside the post office. *Id.* at 724. But they pressed that claim *after trial* in which the presentation of evidence established precisely the defendants' conduct, where it took place, and relevant facts about the sidewalk outside the post office. *Id.* at 724-25. Because, by contrast, Baez's First Amendment challenge is premature, this Court should "go no further." *Cornelius*, 473 U.S. at 797.

In any event, Baez's apparent First Amendment claim—that the Capitol building should be considered a public forum—lacks merit. Baez cites no precedent in which a building comparable in form or function to the U.S. Capitol has been found to be a public forum. As discussed above, a nonpublic forum is one to which the government does not "grant general access." *Id*. at 803. This Court's conclusion in *Bynum* that the Capitol building is correct for the reasons described above.

Baez's counterarguments are flawed. She relies principally on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), to contend that the Capitol building is a public forum. But *Lederman* involved a challenge to a Capitol Police regulation of conduct, the alleged violation of

which occurred on the Capitol grounds *but outside the Capitol building*. Baez's characterization of her unfettered right to enter the Capitol building does not undermine the government's "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56.

Moreover, this court explicitly concluded that 40 U.S.C. § 5104(e)(2)(G), is viewpoint neutral and a reasonable regulation of a nonpublic forum (i.e., the Capitol). Congress, in 40 U.S.C. § 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, *Bynum*, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. At least two other courts in this district have concurred with the court's analysis in Bynum. *See United States v. Nassif*, 21-CR-421 (JDB), ECF No. 42, pp. 3-11 (Bates, J.) (denying defendant's motion to dismiss 40 U.S.C. § 5104(e)(2)(G) count on First Amendment grounds); *United States v. Seitz*, 21-CR-279 (DLF), ECF No. 51 (Friedrich, J.) (same).

The same analysis applies to 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D). First, 18 U.S.C. § 1752(a) prohibits certain conduct inside a restricted area—restricted given the presence of a United States Secret Service protectee—without lawful authority. For reasons like those discussed above and in *Bynum*, the government is within its rights to maintain restricted areas as nonpublic fora. Moreover, neither Section 1752(a)(1) nor Section 1752(a)(2) target speech: the former is a trespass prohibition, while the latter covers disorderly and disruptive conduct. Similarly, Section 5104(e)(2)(D) as charged here covers only disorderly and disruptive conduct in the nonpublic Capitol building.[7]

---

[7] To the extent Baez also presses a vagueness challenge, that fails because none of the statutes is so vague as to merit being "held invalid on its face merely because it is possible to conceive of a single impermissible application." *Houston v. Hill*, 482 U.S. 451, 458 (1987) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 630 (1973) (Brennan, J., dissenting)).

## IV.     CONCLUSION

For the foregoing reasons, the Government respectfully requests that Baez's Motion to

Dismiss on Failure to State First Amendment Grounds be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

SEAN P. MURPHY
Assistant United States Attorney
D.C. Bar No. 1187821
Torre Chardon, Suite 1201
350 Carlos Chardon Ave.
San Juan, PR 00918
787-766-5656
sean.murphy@usdoj.gov

SONIA MITTAL
Illinois Bar No. 6314706
Assistant United States Attorney
601 D Street NW
Washington, DC 20001
Tel. (202) 821-9470
sonia.mittal@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

On this 16th day of September 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ Sean P. Murphy*

SEAN P. MURPHY
Assistant United States Attorney
