UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0507 (PLF) |
| ) | |
| STEPHANIE MARYLOU BAEZ, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Defendant Stephanie Marylou Baez is charged in a four-count information ("Information") based on conduct related to the events at the United States Capitol on January 6, 2021. See Information [Dkt. No. 10]. Pending before the Court are Ms. Baez's Motion to Dismiss Counts Two or Three on Multiplicity Grounds [Dkt. No. 27] and her Motion to Dismiss the Information on First Amendment Grounds [Dkt. No. 28].[1] The Court has carefully considered the parties' written submissions and the applicable authorities. For the following reasons, the Court concludes that Counts Two and Three are not multiplicitous and that none of the statutes that form the bases for the charges in the Information are unconstitutional under the First Amendment. The Court therefore will deny both of Ms. Baez's motions.

---

[1] The Court has reviewed the following documents: the Information [Dkt. No. 10]; Ms. Baez's Motion to Dismiss Counts Two or Three on Multiplicity Grounds ("Multiplicity Mot.") [Dkt. No. 27]; Ms. Baez's Motion to Dismiss the Information on First Amendment Grounds ("First Amend. Mot.") [Dkt. No. 28]; United States' Opposition to Defendant's Motion to Dismiss Counts Two or Three on Multiplicity Grounds ("Multiplicity Opp.") [Dkt. No. 30]; and United States' Opposition to Defendant's Motion to Dismiss on First Amendment Grounds ("First Amend. Opp.") [Dkt. No. 31]. Ms. Baez did not file any replies in support of her motions.

I.  BACKGROUND

The events of January 6, 2021 are summarized in the Court's opinion in United States v. Puma. See United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022). The factual summary in this section is "for background purposes only," and these facts "do not inform the Court's analysis of [Ms. Baez's] motion[s] to dismiss, which must be limited to 'the four corners of the [information].'" United States v. Montgomery, 578 F. Supp. 3d 54, 59 n.1 (D.D.C. 2021) (quoting United States v. Safavian, 429 F. Supp. 2d 156, 161 n.2 (D.D.C. 2006)).

The United States alleges that Ms. Baez was a member of the crowd that entered the Capitol building on January 6, 2021 and engaged in certain activities while there. See Information. The Statement of Facts accompanying the criminal complaint describes video footage that depicts Ms. Baez inside the Capitol building – including the Crypt of the Capitol and other locations – on January 6. See Statement of Facts [Dkt. No. 1-1] at 3. The video footage shows Ms. Baez walking around the Capitol and holding a cell phone. See id. at 3-4. According to the government, Ms. Baez entered the Capitol building twice – the first time, she entered at approximately 2:56 p.m., exiting at approximately 3:01 p.m., and the second time, she entered at approximately 3:07 p.m., exiting at approximately 3:24 p.m. See First. Amend. Opp. at 2-3. On April 27, 2021, an FBI agent interviewed Ms. Baez, and Ms. Baez admitted during the interview that she entered the Capitol building on January 6. See Statement of Facts at 6-7. The Statement of Facts also describes Instagram messages that Ms. Baez sent on January 6, some of which stated that she witnessed "tear gas," broken glass," and individuals "pushing back cops" in the Capitol. See id. at 8.

On June 4, 2021, Ms. Baez was arrested in Alabama. See Executed Arrest Warrant [Dkt. No. 5]. On August 4, 2021, the government charged Ms. Baez by information

with four misdemeanor offenses: Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). See Information. She moves to dismiss all four counts of the Information.

## II. DISCUSSION

### A. Motion to Dismiss Count Two or Count Three on Multiplicity Grounds

#### 1. Legal Standard

A defendant in a criminal case may move to dismiss an indictment or information before trial on grounds that the document charges the same offense in more than one count, giving rise to multiplicitous counts. See FED. R. CRIM. P. 12(b)(3)(B)(ii). "Whether conduct can give rise to multiple convictions in a single trial is essentially a question of statutory construction, but it is statutory construction with constitutional implications." United States v. McLaughlin, 164 F.3d 1, 7-8 (D.C. Cir. 1998). The Double Jeopardy Clause of the U.S. Constitution "protects against multiple punishments for the same offense," and "analysis of prosecutions under multiple statutes under the Double Jeopardy Clause is limited to considering whether the legislature intended to allow simultaneous convictions." Id. at 8 (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). "If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy." Id.

In Blockburger v. United States, the Supreme Court set forth a test for determining whether the legislature intended to impose multiple punishments. See Blockburger v. United States, 284 U.S. 299 (1932). "The applicable rule is that, where the same act or

3

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Id. (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)).

2. Analysis

Ms. Baez moves to dismiss either Count Two or Count Three of the Information on multiplicity grounds. See Multiplicity Mot. at 1 (page number citations refer to electronic case filing numbers). Count Two charges Ms. Baez with Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2). That statute provides:

> (a) Whoever—
>
>> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; . . .
>
> or attempts or conspires to do so, shall be punished as provided in subsection (b). . . .
>
> (c) In this section—
>
>> (1) the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area—
>>
>>> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;

4

> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>
> (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance[.]

18 U.S.C. § 1752(a), (c).

Count Three charges Ms. Baez with Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). That statute provides:

> (2) Violent entry and disorderly conduct.—An individual or group of individuals may not willfully and knowingly—
>
> > (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress[.]

40 U.S.C. § 5104(e)(2)(D).[2]

Ms. Baez argues that Count Two and Count Three allege the same conduct "with no significant distinctions." Multiplicity Mot. at 2. She acknowledges that Count Two pertains broadly to any "'disorderly conduct' which disrupts 'Government business'" and that Count Three pertains more narrowly to "crimes at the Capitol," but she argues that "the two charges are

---

[2] Count Three of the Information mirrors the heading of 40 U.S.C. § 5104(e)(2) and charges Ms. Baez with "Violent Entry and Disorderly Conduct in a Capitol Building" in violation of subsection (e)(2)(D). See Information at 2. Subsection (e)(2)(D), however, does not criminalize "violent entry." See 40 U.S.C. § 5104(e)(2)(D). Moreover, the paragraph in the Information describing Ms. Baez's conduct under Count Three states only that she "did willfully and knowingly engage in disorderly and disruptive conduct" at the Capitol, but it does not describe any alleged violent entry. See Information at 2. The Court assumes that the reference to "violent entry" under Count Three is an error. The government may wish to file a superseding information to correct the error.

5

essentially one." Id. She contends that the multiplicity of counts will "prejudice a judge or jury" against her at trial and expose her to double jeopardy for the same alleged act. Id. at 2-3. In response, the government argues that Count Two and Count Three are not multiplicitous because the offense charged in each count "requires proof of a fact which the other does not." Multiplicity Opp. at 3 (citing Blockburger v. United States, 284 U.S. at 304). The Court agrees with the government. "[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is [the Blockburger test of] whether the statutory elements of the two offenses are the same." United States v. Manafort, 313 F. Supp. 3d 311, 314 (D.D.C. 2018).

Applying the Blockburger test, the Court concludes that the offense charged in Count Two and the offense charged in Count Three each require proof of facts that the other does not require. First, to convict a defendant under 18 U.S.C. § 1752(a)(2) – the statute charged in Count Two – the government must prove that the defendant engaged in disorderly or disruptive conduct in or near a "restricted building or grounds," which, as relevant to this case, is defined in Section 1752(c) as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where . . . [a] person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c). 40 U.S.C. § 5104(e)(2)(D) – charged in Count Three – does not require proof of this fact. Second, Section 1752(a)(2) also requires the government to prove that a defendant's conduct in fact impeded or disrupted the orderly conduct of government business or official functions. Section 5104(e)(2)(D) has no such requirement. Conversely, to convict a defendant under Section 5104(e)(2)(D), the government must prove that the defendant engaged in disorderly or disruptive conduct in a United States Capitol building or on the Capitol grounds. Section 1752(a)(2) does not require proof of this fact. And finally, Section 5104(e)(2)(D) requires proof that the defendant acted "willfully," which Section 1752(a)(2) does not require.

6

Because the offense charged in Count Two and the one charged in Count Three each require proof of facts that the other does not, the counts are not multiplicitous. See Blockburger v. United States, 284 U.S. at 304.

In the alternative, Ms. Baez requests the Court to combine Count Two and Count Three into a single count, arguing that the offense charged in each count is a lesser-included offense of the other. See Multiplicity Mot. at 1. The Court disagrees. If the offense charged in each count "requires proof of a fact which the other does not," then "neither is a lesser included offense of the other." United States v. Wheeler, 753 F.3d 200, 209 (D.C. Cir. 2014) (internal quotations and citation omitted); see Schmuck v. United States, 489 U.S. 705, 716 (1989) ("One offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense."). As the government points out, because each count requires "proof of a fact that the other count does not require, neither count can be a lesser-included offense of the other." Multiplicity Opp. at 5.

### B. Motion to Dismiss Information on First Amendment Grounds

#### 1. Legal Standard

A defendant in a criminal case may move to dismiss an indictment or information before trial for "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). A charging document may fail to state an offense if the statutory provision at issue does not apply to the charged conduct or if the statutory provision at issue is unconstitutional. See, e.g., United States v. Eshetu, 863 F.3d 946, 952 (D.C. Cir. 2017) ("The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." (citation omitted)), vacated on other grounds, 898 F.3d 36 (D.C. Cir. 2018). In considering a

motion to dismiss, a court must accept the allegations in the indictment or information as true. See United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015).

An indictment or information "need only contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" United States v. Ballestas, 795 F.3d at 149 (quoting FED. R. CRIM. P. 7(c)(1)). A charging document "is sufficiently specific where it (1) contains the elements of the offense charged and fairly informs the defendant of those charges so that he may defend against them, and (2) enables him to plead acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Safavian, 429 F. Supp. 2d at 158 (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the [charging document] and, more specifically, the language used to charge the crimes." United States v. Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).

With respect to a constitutional challenge to statutes charged in an indictment or information, a defendant may challenge a statute as unconstitutional on its face or as unconstitutional as applied to his or her conduct. See United States v. Caputo, 201 F. Supp. 3d 65, 71 (D.D.C. 2016) (citing United States v. O'Brien, 391 U.S. 367, 376 (1968)). A statute is facially overbroad under the First Amendment if it "prohibits a substantial amount of protected speech," judged in relation to "the statute's plainly legitimate sweep." United States v. Williams, 553 U.S. 285, 292 (2008) (citing Virginia v. Hicks, 539 U.S. 113, 119-20 (2003)). "The scope of that 'legitimate sweep' depends on an inquiry into [the nature of the] 'forum'[] where the speech regulation applies." United States v. Rhine, Crim. No. 21-0687, 2023 WL 372044, at *14 (D.D.C. Jan. 24, 2023); see also id. at *10 n.6 (citing Initiative and Referendum Inst. v. U.S. Postal Serv., 417 F.3d 1299, 1313 (D.C. Cir. 2005)). In public

8

fora – "which by long tradition or by government fiat have been devoted to assembly and debate" – the government's ability "to limit expressive activity [is] sharply circumscribed." Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 45 (1983). In contrast, in nonpublic fora, "which is not by tradition or designation a forum for public communication," the government "may reserve the forum for its intended purposes, communicative or otherwise" and may impose "time, place, and manner regulations" on speech as long as the regulations are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. at 46.

For an as-applied First Amendment challenge, a statute is unconstitutional if the defendant's conduct "is, in fact, expressive" and if the statute is "related to the suppression of free expression." United States v. Caputo, 201 F. Supp. 3d at 71 (internal quotations omitted).

2. Analysis

Ms. Baez moves to dismiss all four counts of the Information on First Amendment grounds. See First Amend. Mot. at 1 (page number citations refer to electronic case filing numbers). The Court addresses in turn her arguments with respect to each count.

a. Count One

Ms. Baez moves to dismiss Count One, charging her pursuant to 18 U.S.C. § 1752(a)(1), for failure to state an offense. See First Amend. Mot. at 4. That statute provides:

> (a) Whoever—
>
> > (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so; . . .
>
> or attempts or conspires to do so, shall be punished as provided in subsection (b). . . .

9

>   (c) In this section—
>
>> (1) the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area—
>>
>>> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>>>
>>> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>>>
>>> (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance[.]

18 U.S.C. § 1752(a), (c).

Ms. Baez makes a number of sweeping generalizations, arguing that Section 1752(a)(1) restricts her First Amendment rights and that she had the right to enter the Capitol building on January 6, 2021. She first contends – without any support – that Congress could not "lawfully restrict the Capitol" under Section 1752(a)(1) because that would infringe on her First Amendment rights of speech, assembly, and petition. See First Amend. Mot. at 2. Second, she makes conflicting statements arguing that although her "right and duty to watch and monitor doings inside the Capitol may be subject to reasonable time, place, and manner restrictions," her "right to enter the Capitol is not subject to the permission, will, or discretion of the government." Id. at 4.

Both of these arguments fail. Although Ms. Baez does not articulate whether she is challenging Section 1752(a)(1) as facially unconstitutional or as unconstitutional as applied to her conduct, the Court concludes that she does not prevail under either challenge. First, a statute is facially overbroad under the First Amendment if it "prohibits a substantial amount of protected speech," judged in relation to "the statute's plainly legitimate sweep." United States v. Williams, 553 U.S. at 292. Facial challenges are allowed "for the benefit of society – to prevent

the statute from chilling the First Amendment rights" of others, not just the parties particular to the case. Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 958 (1984). Here, a facial challenge fails because the plain text of Section 1752(a)(1) clearly punishes conduct – unlawfully entering and remaining – and therefore does not reach "a substantial amount of protected speech." United States v. Williams, 553 U.S. at 292; see id. at 293 ("The first step in overbreadth analysis is to construe the challenged statute."). See also Virginia v. Hicks, 539 U.S. at 124 ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)."); United States v. Rhine, 2023 WL 372044, at *11 (holding that Section 1752(a)(1) does not punish a substantial amount of protected speech).

   Second, for an as-applied challenge, a court "must first assess whether [the particular defendant's] conduct is, in fact, expressive, and then determine whether the challenged statute 'is related to the suppression of free expression.'" United States v. Caputo, 201 F. Supp. 3d at 71 (citation omitted). Here, an as-applied challenge is premature. On a motion to dismiss the Information, the Court is limited to considering only allegations within the four corners of the Information. See United States v. Safavian, 429 F. Supp. 2d at 161 n.2; see also United States v. Sutton, Crim. No. 21-0598, 2022 WL 1202741, at *9 (D.D.C. Apr. 22, 2022) (citing United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012)). But to determine whether Ms. Baez's conduct is expressive, the Court must necessarily consider facts outside of the Information. Although the Statement of Facts accompanying the criminal complaint and the government's responsive brief to Ms. Baez's motion contain background information about the facts of this case, the Court may not consider such allegations when deciding a motion to dismiss. See United States v. Andries, Crim. No. 21-0093, 2022

WL 768684, at *8 (D.D.C. Mar. 14, 2022) (concluding that the facts set forth in the indictment were insufficient to resolve the defendant's as-applied vagueness challenge on a motion to dismiss and that the court could not consider unsupported allegations in a brief). The Court may not find facts on a motion to dismiss. The Court may consider Ms. Baez's as-applied challenge to Section 1752(a)(1) on a motion during trial under Rule 29 of the Federal Rules of Criminal Procedure, if appropriate, or – if the case is tried without a jury – at the conclusion of the trial.

Ms. Baez also argues that she cannot be convicted of violating Section 1752(a)(1) because the Capitol building is open to the public during normal business hours and she had a First Amendment right to be inside the building on January 6, 2021. See First Amend. Mot. at 2, 4. Citing an undated screen capture of the "Visitor Hours & Info" page of the U.S. Capitol Visitor Center website, she maintains that this website "explicitly informed visitors that 'The Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday . . .'" See id. at 2. Of course, the Court is limited to considering only information within the four corners of the Information, but even were the Court able to consider matters outside the Information, Ms. Baez's argument would still fail. See United States v. Safavian, 429 F. Supp. 2d at 161 n.2. As an initial matter, the Capitol Visitor Center does not encompass the entirety of the Capitol building and its grounds. Furthermore, according to the government, neither the Capitol nor the Capitol Visitor Center were open to the public on January 6. During the period around January 6, the U.S. Capitol Visitor Center website displayed a large "COVID-19 (coronavirus) Update" notice informing the public that the Capitol Visitor Center was closed and that all tours were cancelled. First Amend. Opp. at 9.

Finally, Ms. Baez asserts that "there is no law of Congress which makes the Capitol a restricted building" and that "Section 1752(a) does not proclaim that the Capitol is a

'restricted' building." First Amend. Mot. at 2. That is incorrect. Section 1752(c)(1)(B) defines the term "restricted building or grounds" in Section 1752(a)(1) to mean "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where . . . [a] person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). As the undersigned and many other judges of this court have concluded, the U.S. Capitol was clearly covered by the definition of "restricted buildings or grounds" on January 6, 2021. See United States v. Puma, 596 F. Supp. 3d at 114; United States v. GossJankowski, Crim. No. 21-0123, 2023 WL 130817, at *7 (D.D.C. Jan. 9, 2023); see also, e.g., United States v. Griffin, 549 F. Supp. 3d 49, 52-58 (D.D.C. 2021); United States v. Mostofsky, 579 F. Supp. 3d 9, 15-28 (D.D.C. 2021); United States v. Nordean, 579 F. Supp. 3d 28, 41-61 (D.D.C. 2021).

For the foregoing reasons, the Court concludes that 18 U.S.C. § 1752(a)(1) is constitutional and that Count One adequately states an offense against Ms. Baez.

### b. Count Two and Count Three

Ms. Baez moves to dismiss Count Two, charging a violation of Section 1752(a)(2), and Count Three, charging a violation of Section 5104(e)(2)(D), for failure to state an offense because "they conflict with [her] rights and duties under the 1st amendment to speak freely, assemble with others, and petition for redress of grievances at the U.S. Capitol." First Amend. Mot. at 5; see also Section II.A.2, supra (quoting statutory language of Section 1752(a)(2) and Section 5104(e)(2)(D)). As with Count One, Ms. Baez again makes sweeping assertions about her First Amendment rights but fails to "frame the legal issue or advance her claims thereupon." First Amend. Opp. at 11. Ms. Baez appears to cite Brandenburg v. Ohio, 395 U.S. 444 (1969), White v. Lee, 227 F.3d 1214 (9th Cir. 2000), and other First

Amendment cases for the proposition that she has a nearly unlimited right to "advocacy" except where the advocacy is directed at producing imminent lawless action. See First Amend. Mot. at 5-6. She argues that even if she "knowingly intended 'to impede and disrupt the orderly conduct of Government business and official functions' at the Capitol, she had a right to walk inside the Capitol, express her opinions and communicate her grievances." Id. at 6. The Court is unpersuaded by Ms. Baez's First Amendment argument.

        Ms. Baez does not expressly present her First Amendment argument as a facial overbreadth challenge to Section 1752(a)(2) and Section 5104(e)(2)(D), but the Court interprets the arguments in her motion to be such a challenge. As previously discussed, a statute is facially overbroad under the First Amendment if it "prohibits a substantial amount of protected speech," judged in relation to "the statute's plainly legitimate sweep." United States v. Williams, 553 U.S. at 292. With respect to Section 1752(a)(2), the plain text of the statute punishes conduct and not speech or expressive conduct. See, e.g., United States v. Rhine, 2023 WL 372044, at *11. In addition, the statute contains "several limiting provisions that narrow its applicability," including the requirements that there must be intent to impede or disrupt; that government business or official functions are in fact impeded; and that the disorderly or disruptive conduct occur near a restricted building or grounds. Id. These provisions "substantially limit[] the amount of potentially protected expression" that the statute reaches. Id. The Court agrees with Judge Contreras's conclusion in United States v. Rhine that Section 1752(a)(2) "does not restrict a substantial amount of protected expressive activity in relation to its 'core' of legitimate applications." Id. The Court therefore concludes that Section 1752(a)(2) is not facially unconstitutional.

Section 5104(e)(2)(D) applies to conduct both within the Capitol building – which this Court has held is a nonpublic forum, see Bynum v. U.S. Capitol Police Bd., 93 F. Supp. 2d 50, 56 (D.D.C. 2000) – and on the grounds of the Capitol, which the D.C. Circuit has held is a public forum. See Hodge v. Talkin, 799 F.3d 1145, 1161 (D.C. Cir. 2015). In a public forum, content-neutral time, place, and manner regulations are permissible as long as they are "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels of communication." Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. at 45; see Initiative and Referendum Inst. v. U.S. Postal Serv., 685 F.3d 1066, 1070 (D.C. Cir. 2012). Content-neutral regulations are "agnostic as to content," City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC, 142 S. Ct. 1464, 1471 (2022), while content-based regulations "appl[y] to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015). Although "on its face subparagraph (e)(2)(D) is directed at speech" because it prohibits "utter[ing] loud, threatening or abusive language," United States v. Rhine, 2023 WL 372044, at *14, the Court concludes that Section 5104(e)(2)(D) is content-neutral in its regulation of speech as it prohibits any loud, threatening, or abusive language without regard to the content of that language. See id. at *15 ("§ 5104(e)(2)(D) is content-neutral, as its prohibitions on 'loud, threatening, or abusive language' and 'disorderly or disruptive conduct' are plainly 'agnostic as to content.'" (citation omitted)).

Content-neutral regulations are subject to intermediate scrutiny, not strict scrutiny. See United States v. Popa, 187 F.3d 672, 676 (D.C. Cir. 1999); Democracy Partners v. Project Veritas Action Fund, 453 F. Supp. 3d 261, 288-89 (D.D.C. 2020). Under this standard, a statute is constitutional if (1) "it is within the constitutional power of the Government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is

15

unrelated to the suppression of free expression"; (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest," United States v. O'Brien, 391 U.S. at 377; and (5) "[it] leave[s] open ample alternative channels for communication." Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984). Section 5104(e)(2)(D) satisfies all of these requirements.

With respect to the first and second O'Brien requirements, it is within the constitutional power of the government to regulate conduct at the Capitol, and "ensuring public safety and order" is a substantial government interest, one that is "amplified near the Capitol . . . where prominent public officials are present and conducting official government business." Mahoney v. U.S. Capitol Police Bd., 566 F. Supp. 3d 1, 9 (D.D.C. 2022) (quoting United States v. Mahoney, 247 F.3d 279, 286 (D.C. Cir. 2001)). With respect to the third and fourth requirements – and Ms. Baez's reliance on the D.C. Circuit's opinion in Lederman v. United States, 291 F.3d 36 (D.C. Cir. 2002) – Section 5104(e)(2)(D) is unrelated to the suppression of free expression and is narrowly tailored to achieve the government interest. In Lederman, the D.C. Circuit concluded that the sidewalk around the Capitol building is a public forum and reasoned that the Capitol Police Board's regulation restricting "demonstration activity" near the Capitol was a "virtually per se" ban on expressive activity. Lederman v. United States, 291 F.3d at 44-45. The D.C. Circuit held that this regulation was not narrowly tailored and thus was unconstitutional. See id. at 46. Contrary to Ms. Baez's argument, however, the statute at issue here – Section 5104(e)(2)(D) – is wholly different from the "virtually per se ban on expressive activity" at issue in Lederman. Id. at 45. As Judge Contreras reasoned in Rhine:

> [Section] 5104(e)(2)(D)'s prohibition on expressive activity is tethered to a requirement that the individual have the intent to "impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building" of congressional committees. Indeed, the Lederman court explicitly cited the predecessor statute to § 5104(e)(2)(D), which is substantively identical to the present version, as an example of a "substantially less restrictive alternative[ ] that would equally effectively promote safety."

United States v. Rhine, 2023 WL 372044, at *16 (quoting Lederman v. United States, 291 F.3d at 45). Finally, with respect to the fifth requirement under the intermediate scrutiny standard, Section 5104(e)(2)(D) leaves open ample alternative channels for communication – under this statute, individuals are still "free to engage in a rich variety of expressive activities," Mahoney v. U.S. Capitol Police Bd., 566 F. Supp. 3d at 11 (internal quotations omitted), as long as they are not "loud, threatening, or abusive" or "disorderly or disruptive." 40 U.S.C. § 5104(e)(2)(D). The Court concludes that Section 5104(e)(2)(D) is not facially unconstitutional.

Separately, Ms. Baez argues that "[w]ithout some specific allegation of violent or lawless conduct by Baez, the government's allegations in Count 2 fail to state a constitutional allegation." First Amend. Mot. at 7. The Court disagrees. The Court has concluded that Section 1752(a)(2) is not unconstitutional. See supra at 13-14. To sufficiently state an offense under the statute, the government is required only to describe "the essential facts constituting the offense charged." United States v. Ballestas, 795 F.3d at 149 (quoting FED. R. CRIM. P. 7(c)(1)). The government has sufficiently done so in Count Two by stating that "Stephanie Marylou Baez knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engaged in disorderly and disruptive conduct in, and within such proximity to the United States Capitol, a restricted building . . . ." Information at 1.

For the foregoing reasons, the Court concludes that 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D) are constitutional and that Counts Two and Three adequately state offenses against Ms. Baez.

### c. Count Four

Ms. Baez moves to dismiss Count Four, charging her pursuant to 40 U.S.C. § 5104(e)(2)(G), on grounds that the statute is unconstitutional on its face and as applied to her conduct. See First Amend. Mot. at 4, 11. The statute provides:

> (2) An individual or group of individuals may not willfully and knowingly—
>
> > (G) parade, demonstrate, or picket in any of the Capitol Buildings.

40 U.S.C. § 5104(e)(2)(G).

As previously discussed, on a facial challenge to a statute, the Court determines if the statute "prohibits a substantial amount of protected speech," judged in relation to "the statute's plainly legitimate sweep." United States v. Williams, 553 U.S. at 292. For an as-applied challenge, the Court "assess[es] whether [the defendant's] conduct is, in fact, expressive, and then determine[s] whether the challenged statute 'is related to the suppression of free expression.'" United States v. Caputo, 201 F. Supp. 3d at 71 (citation omitted).

With respect to Ms. Baez's facial challenge, the Court concludes that Section 5104(e)(2)(G) reaches protected speech because it limits parading, demonstrating, or picketing within the Capitol – conduct that is "necessarily associated with speech." Virginia v. Hicks, 539 U.S. at 124; see United States v. Rhine, 2023 WL 372044, at *11. The government's ability "to limit expressive activity [is] sharply circumscribed" in public fora, but in nonpublic fora, the government may impose reasonable and viewpoint neutral "time, place, and manner

18

regulations." Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. at 45-46. Ms. Baez cites Lederman to argue that the Capitol building is a public forum and that Section 5104(e)(2)(G)'s prohibitions on this expressive activity are not narrowly tailored to serve a significant government interest. See First Amend. Mot. at 10-11. The Court disagrees. In Lederman, the D.C. Circuit concluded that the sidewalk around the Capitol is a public forum. See Lederman v. United States, 291 F.3d at 44. Lederman's holding has no bearing in this case because Section 5104(e)(2)(G) prohibits only parading, demonstrating, or picketing "in any of the Capitol Buildings," and not the Capitol grounds. 40 U.S.C. § 5104(e)(2)(G). As this Court previously held, the interior of the Capitol building is a nonpublic forum. See Bynum v. U.S. Capitol Police Bd., 93 F. Supp. 2d at 56 ("[I]ts designation as a nonpublic forum most closely conforms with Congress' intent and the forum-based approach adopted by the Supreme Court.").

In a nonpublic forum like the interior of the Capitol, the government may impose time, place, and manner regulations "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. at 46. In Bynum, the Court analyzed the same statute at issue here – 40 U.S.C. § 5104(e)(2)(G) (formerly 40 U.S.C. § 193f(b)) – and concluded that the statute is viewpoint neutral and a reasonable regulation of conduct in the Capitol building. See Bynum v. U.S. Capitol Police Bd., 93 F. Supp. 2d at 56 ("Section 193f(b) enacted by Congress is a viewpoint neutral, reasonable regulation of both conduct and expressive activity that satisfies the Supreme Court's test for nonpublic fora."). The cases Ms. Baez cites in support of her argument that the statute is too restrictive – Madsen v. Women's Health Center, 512 U.S. 753 (1994), and Blair v. City of Evansville, 361 F. Supp. 2d 846 (S.D.

Ind. 2005) – are inapposite. See First Amend. Mot. at 8-9. Both cases relate to speech restrictions in public fora; they are not relevant in this case where a nonpublic forum is at issue.

With respect to Ms. Baez's as-applied challenge to Section 5104(e)(2)(G), the Court concludes that this challenge is premature for the same reasons that her as-applied challenge to Section 1752(a)(1) is premature. See Section II.B.2.a, supra. Although the allegation in Count Four that Ms. Baez "did willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings" appears to describe expressive conduct, see Information at 2, the Court may not consider the facts at this stage of the proceedings. Ms. Baez can raise this argument at trial. The Court concludes that 40 U.S.C. § 5104(e)(2)(G) is constitutional and that Count Four adequately states an offense against Ms. Baez.

For the foregoing reasons, it is hereby ORDERED that Ms. Baez's Motion to Dismiss Counts Two or Three on Multiplicity Grounds [Dkt. No. 27] and her Motion to Dismiss the Information on First Amendment Grounds [Dkt. No. 28] are DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 6/2/23