UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  | : |  |
|---|---|---|
| UNITED STATES OF AMERICA | : |  |
|  | : | CASE NO. 1:21-CR-505 (PLF) |
| v. | : |  |
|  | : |  |
| STEPHANIE BAEZ, | : |  |
|  | : |  |
| Defendant. | : |  |

_____

## DEFENDANT'S OPPOSITION TO
## GOVERNMENT'S MOTION IN LIMINE

Defendant Stephanie Baez, by counsel, hereby files this Opposition to the

Motion in Limine of the Government that is docketed at ECF Dkt. # 54, filed on

August 4, 2023, and responds as follows:

The United States is seeking to have certain evidence that the Defendant,

Stephanie Baez, is relying on to make her case of innocence excluded from the

jury. However, the defendant has a constitutional right to present her case and

confront those wrongfully accusing her of a crime. By allowing the excluding of

such evidence, this court would be infringing upon the defendants' rights.

In some other topics, the Government is seeking to oppose arguments,

claims or evidence that not only Baez but no or few other January 6 Defendants are

suggesting.  Therefore, those topics are not relevant.

In some topics, the Government casts certain issues in terms that are so unfamiliar from what January 6 Defendants are arguing that the Government's Motion in Limine is merely confusing.

The Government's recent Motion in Limine is moving to preclude the defendant from introducing and making several key arguments including; 1) the specific location of the security cameras in the U.S. Capitol; 2) relevant information regarding the Secret Service tactics and emergency operations; 3) that her conduct was specifically authorized by former Present Trump or other officers and officials; 4) that any inaction by law enforcement permitted her conduct; 5) that the First Amendment permitted her conduct; 6) jury nullification; 7) that she defended herself or other on January 6, 2021; 8) her goods acts or culpability relative to other actors of January 6, 2021; and 9) On the actions of other rioters or their charges and disposition.

The government attempting to get all nine of these arguments excluded is an overbroad attempt at stifling justice.

Pursuant to Fed. R. Evid. 401, and 402, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Relevant

evidence is admissible…" Currently each item that the United States is attempting to exclude is relevant to the defendant case in proving her innonce.

## A. LOCATION OF SECURITY CAMERAS IN THE U.S. CAPITOL

While the U.S. Congress spends trillions of dollars each year, it has not been as lavish with its statutory security force, the U.S. Capitol Police.  The Government has persisted in claiming the security systems installed throughout the U.S. Capitol building are somehow unique.  The concept and implementation of security cameras is a very old technology within the digital age, used in every department store, shopping center, hotel, convenience store, etc.  There is nothing unusual about the Capitol's pedestrian use of ordinary and routine security cameras.

The locations of these cameras are obvious, not secret.

In fact, the location of security cameras is both relevant and serious.  Oath Keepers Defendants offer smart phone ("civilian video") recordings of the Oath Keepers defending USCP Officer Harry Dunn against a violent group of demonstrators near a large sweeping stairway a short distance from the central Rotunda.  Yet video of this same scene from the building's security cameras is apparently missing.  The location of cameras may make the difference between conviction or acquittal or even resolve concerns about the disappearance of evidence.

The specific location of the security cameras in the U.S. Capitol is relevant as it shows which "protected areas" the defendant was actually present or not during the time of her alleged crime. By not allowing introduction of this evidence or it prohibits the defendant from making her case. The government has alleged that the defendant "…was in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was…"

In order to prove this the government should be allowed to answer questions about exactly where the security cameras are located in the U.S. Capitol. By allowing inquiry into the specifics, it will allow the jury to get a better understanding if the accused, Stephanie Baez, actually committed a crime. This is key in proving the elements necessary to charge her with violation of Title 18, United States Code, Section 1752(a)(2)).

## B. SPECIFIC SECRET SERVICE TACTICS

The Government is asking the court to limit the defendant cross-examination of any United States Secret Service ("Secret Service") witnesses on their specific tactics and emergency operations.  This sounds protective of the Secret Service's important work, until one thinks a little more about this.

Such questioning should be allowed. Specifically, what is the purpose of the Secret Service agent(s) testifying?  If there is some reason for them to be called to testify, then one starts to question what would be the problem with them being cross-examined.

The Government's position here as on other topics is very obviously seeking "a sword not a shield" as the law has often put it.  Why call these witnesses?  Why ask the Court to allow them to wield a sword but then not have to explain it.

One assumes that the reason to call Secret Service agents would be limited to the presence of a Secret Service protectee so as to make 18 U.S.C. 1752(a)(1) applicable.   Recall that a "restricted space" can only apply where there is a Secret Service protectee.  The restriction revolves around the protectee, not the location. A location can be unrestricted on Monday, restricted on Tuesday due to a protectee's presence, and then unrestricted again on Wednesday.  It is the protectee, not the location that counts.  If a person broke into the Capitol at 3 AM when it is closed due to night-time, 18 U.S.C. 1752 cannot be used to prosecute that misdeed.  If the Capitol were closed for repairs – or for COVID – 18 U.S.C. 1752 does not apply and there is no violation under 18 U.S.C. 1752 for sneaking in without permission.

The Government has charged the defendant with violating 18 U.S.C. §§ 1752(a)(1) and (2) by knowingly entering or remaining in a restricted building or grounds without lawful authority and engaging in disorderly or disruptive conduct while in that restricted area. In order to prove these crimes, the government must be required to answer questions regarding what role the secret service played in protecting Vice President Michael R. Pence, who was present at the Capitol at the time of the alleged crimes.

This does raise questions about whether the Secret Service declared a restricted area or its boundaries – apparently it never did – whether the U.S. Capitol Police Board ever coordinated with the Secret Service in purporting to restrict any grounds or building – apparently it never did.

This also raises questions about whether the restricted area was excessive or reasonably related to the presence of a Secret Service protectee.

In other words, asking a Secret Service witness – that is someone chosen to testify for some discernible, actual reason – to explain these issues is merely obtaining a full understanding of the witness' testimony and its significance.

The Government's argument that further inquiry might be made and should be excluded is irrelevant because Defendant knows of no reason why the

Government should expect the defendant to inquire further into Secret Service

protocols.[1]

## C. ENTRAPMENT BY ESTOPPEL

The Government has in almost every January 6 prosecution worried about

the possibility of a defense of "entrapment by estoppel."  But with few possible

exceptions, nobody is arguing this term and its meaning.  Because no one has

asserted "entrapment by estoppel" to counsel's knowledge, this objection by the

Government has served only to confuse the discussion.  Worse, the Government

has usually asserted a very specific defense but then wandered off in the discussion

onto other issues.

It is a fact that officials can authorize conduct that without such

authorization would be illegal.  18 U.S.C. 1752 prohibits "knowingly" entering a

restricted area "without lawful authority to do so."  The statute itself makes

unmistakably clear that one can be granted "lawful authority to do so."  It's in the

statutory language.

Can an official transform otherwise illegal conduct into legal conduct.  Of

course.  Obviously.

---

[1]    Some Defendants have raised questions about whether the Vice President had left Capitol
Hill making 18 U.S.C. 1752 inapplicable after that departure.  But Defendant does not see that
question, even if Defendant chooses to ask it, as beyond the scope of the reason why the
Government apparently wants to call a Secret Service witness or witnesses.

For example, driving through Manhattan at rush hour, police officers will demandingly gesture to drivers to disregard the red lights and rush through the city as the police officer's direction by stern, severe hand gestures. Yes, police officers **_can_** transform otherwise unlawful conduct into lawful conduct. Or suppose the President's motorcade is barreling through Washington, D.C., and police sternly gesture for drivers to clear the road by turning illegally, rolling up on the sidewalk, or running through red lights to exit the area. Or suppose this Judge now instructed counsel to come back to (private) chambers to discuss an element of the case confidentially. The invitation (even instruction) of the Judge for counsel to enter private offices would transform what would otherwise be unlawful to lawful. On the other hand, if someone were found in the Judge's office wandering around without being invited, that would be some species of trespass, at the least.

Unmistakably, an invitee is lawfully authorized to enter any building or area into which he or she has been invited. For example, there were six (6) permits issued by the USCP for lawfully-authorized demonstrations to be held on the Capitol Grounds on the afternoon of January 6, 2021. These were mostly on the East side, but poorly marked leaving people trying to find those events unable to find them.

Presently, this case is nearly identical to *Cox v. Louisiana* and the court should apply those principles presently. In the case of *Cox v. Louisiana*, 379 U.S.

559 (1965), it revolved around a demonstrator who guided a gathering of 2,000 civil rights marchers in the vicinity of a courthouse. Cox was found guilty of breaching a law against picketing by conducting a protest in close proximity to the courthouse (379 U.S. at 564-65). The Supreme Court ruled that the conviction of the defendant was not permissible under the Due Process Clause, as the authorities on-site had authorized Cox to conduct the demonstration on the opposite side of the street. Presently, the defendant is alleged to have entered an incorrect location and traversed the incorrect corridors—falling under the purview of "administrative traffic regulation" wherein the on-duty Capitol Police temporarily lifted standard limitations as a gesture of acknowledgment towards the crowd's high spirits. This is a clear example of entrapment by estoppel, thus the Government's argument that it should be precluded should fail.

## D. INACTION BY LAW ENFORCEMENT

The Government asking the Court to preclude law enforcements inaction on January 6, 2021 would ask the court to infringe on Beaz's right to present her defense. Baez is entitled to "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The United States may not

impede Baez's right to put on a defense by "imposing mechanistic ... or arbitrary ... rules of evidence," *LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998).[2]

Did law enforcement officers communicate permission for demonstrators to enter the Capitol Grounds or the U.S. Capitol?  Unmistakably, this is viewed from the perspective of the purported invitee.  The extreme consternation about this topic turns on two issues:  (1) What are the actual facts?  Was the police officer's inaction in context in the setting such that a reasonable observer – that is, one unfamiliar with Capitol Hill and Washington, D.C., visiting from other parts of the nation – would believe that entry into grounds or building was not prohibited?  This is for the jury to decide.  People are very disturbed about this because they view the police officer's inactivity as being too ambiguous to constitute an invitation or implied or expressed permission.  But as much as that bothers people, that is a question of fact, not of law.  Communicating that entry is permitted is certainly right on the line when it is expressed by inaction.  But given all of the circumstances and context the question is decided as a jury question, one of fact.

---

[2]     Sometimes seemingly-intractable disputes develop because the question is phrased inaccurately.  The controversy is not about whether officers can give permission but what constitutes sufficiently-clear permission to support or justify a Defendant's actions?  The real dispute is about whether an officer's explicit or implicit approval is sufficiently unambiguous. Those objecting to the idea that demonstrators could be authorized to enter an otherwise restricted area are really objecting to scenarios where they see officer's expressions or actions as ambiguous, indistinct, or unclear.

Illustrating the error of the Government's concern, police officers are ubiquitously posted in various places and at various events. There are places or events where there are always police officers standing inert "just in case" they might be needed. The presence or sight of law enforcement officers almost never means that the area is restricted or prohibited. Indeed, community policing emphasizes officers to get out and walk around in the community.

Thus, the question of whether a reasonable person would believe that officers standing calmly and at ease implies that his or her presence is not a problem can only be a fact question reserved for the jury.

(2)  The Government and those arguing on its side of this question confuse the fact that trespass or anything like it must be from the standpoint of the accused trespasser.   If the behavior of officers reasonably leads the person to believe that he or she is allowed to be there, the private, secret, unexpressed thoughts of the officer(s) is/are irrelevant. That is precisely the problem with inaction. An unexpressed objection is no objection at all.

Note that this is of course different from an officer doing nothing where it would not be expected. The crux of this issue is obviously law enforcement officers not reacting when some reaction would be expected. It is the circumstance

and context where officers would be expected to direct people not to approach –

yet they don't – that creates the implied permission.

### E. FIRST AMENDMENT

It is well established that violence is not protected under the First

Amendment. However, the Government persists in confusing this topic.  If a

person reciting the Declaration of Independence were to punch another person, the

issue is that they punched them.  What they were saying is irrelevant.  There is no

one arguing otherwise.  The Government is engaging in a one-sided debate with

itself.

Yet the Government is not actually asserting that. The Government is

parading pure speech around like a bloody shirt before the jury, hoping to inflame

the jury with passion not principle.   The Government is not using speech as

evidence of actions, despite claiming that it is.  The Government is persistently

asserting the content of January 6 Defendants' First Amendment expressions as

being unpopular, unapproved, or undesirable thought crimes.

The courts have found that on occasion that actions can be First Amendment

activity.  For example, classically the U.S. Supreme Court has held that burning the

American flag can be speech protected by the First Amendment.[3]   Some of those

precedents involve trespass. This case is parallel to *People v. Millhollen*, 5 Misc.

3d 810, 786 N.Y.S.2d 703, 194 Ed. Law Rep. 395 (N.Y. City Ct. 2004), a court

determined that a university student who ascended a tree on campus and remained

there despite orders from a police officer and a university official was not culpable

for trespassing, unless it could be proven that the student's presence in the tree

disrupted the university's regular activities.

The government argues that the multitude of individuals present on Capitol

Grounds on January 6 lacks First Amendment protection. None whatsoever.

However, considering established legal precedent designating the Capitol grounds

as a public forum for free speech, the government's assertions of complete

restrictions on the grounds for January 6 must endure a rigorous examination

through the lens of strict scrutiny analysis. Furthermore, failing to subject the

defendant's demonstration to any scrutiny under the First Amendment could

potentially lead to the criminalization of fundamental free speech activities,

including the act of criticizing a politician. See *Animal Legal Def. Fund v. Herbert*,

263 F. Supp. 3d 1193, 1209 (D. Utah 2017) (observing "[i]f a persons First

Amendment rights were extinguished the moment she stepped foot on [a given

---

[3]        Unless of course, the person burning the banner or flag is a Black man from Cuba Enrique Tarrio and the Black leader of the Proud Boys is burning a Black Lives Matter banner.  In that case, the Black offender was sentenced to 6 months in jail for burning a Black Lives Matter banner.

property], the State could, for example, criminalize any criticism of the Governor, or any discussion about the opposition party, or any talk of politics whatsoever, if done on [a given] property."). By accepting the government's motion, you would effectively overlook the defendant's constitutional rights and hinder the proper progression of her right to a fair trial. It is crucial for her to have the opportunity to present this evidence of her First Amendment.

## F. JURY NULLIFICATION

The Government's other concerns reflect a profound misunderstanding of the January 6 prosecutions.  There were an estimated 10,000 demonstrators on Capitol Hill, out of estimates throughout Washington DC of demonstrators ranging from a few hundred thousand to as many as 1 million.

Some of those 10,000 people broke the law.  Most did not.

Yet the Government's thinking on these issues is that "Of course they are all guilty because we want to pretend they are."

The Government is intensely fixated on the idea that everyone did exactly the same thing at exactly the same time, like a hive mind or the armies of "Cyber Men" marching in unison in the science fiction series "Dr. Who."

This Defendant is not guilty.

Most January 6 Defendants are not guilty.

Some people who were on Capitol Hill that day are guilty.

But not all.

Holding the Government to its burden of proof of proving every element of a crime charged (considering each Count independently) is not "jury nullification."

Proving to the jury that the Defendant did not commit the crime of which she is charged is not "jury nullification."  It is proving the prosecution wrong.

But the Government in these cases seems unable to wrap its head around the possibility that some or most of the people at Capitol Hill on January 6, 2021, simply did not commit any crime, or certainly did not commit _every_ crime of which they have been charged.

If the Government cannot meet its burden of proof, that has nothing to do with jury nullification.

## G. SELECTIVE PROSECUTION

As presented by the Government selective prosecution is a legal objection which certainly applies and which certainly invalidates most or all of this and most January 6 related prosecutions.  The Court should dismiss the case.

However, the Government expands on that far beyond the legal doctrine. Defendants have been charged with several counts, sometimes many counts. Most of these charges depend crucially on intent.

The fact that left-wing demonstrators are let go without punishment, given a slap on the wrist, or even awarded millions of dollars in civil lawsuits is entirely relevant to the intent and motivation of the Defendant. Assuming a malevolent intent for a Defendant doing the exact same thing that the Government tolerates if it likes the message of the demonstrators undercuts the credibility of the Government's attempt to read the Defendant's mind and guess it her intent.

## H. STATEMENTS REGARDING POTENTIAL PUNISHMENT

Defendant by counsel is not aware of any thought of ignoring the longstanding rule that the jury is to be instructed on the law and provided with reliable and admissible facts but not informed of the potential penalties for convictions on the different counts.

## I. ARGUING SELF DEFENSE OR THE DEFENSE OF OTHERS

Almost all of the crimes charged in reference to January 6 depend very profoundly and sensitively on intent. Furthermore, the Government has the burden of proving that intent.

The Government's motion here is premised upon "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." United States v. Cramer, 532 Fed. Appx. 789, 791 (9th Cir. 2013) (citing United States v. Bailey, 444 U.S. 394, 415 (1980))."

But that is a very, very big "IF."

The problem is that the Government has no evidence for almost any of the elements of any of the crimes charged.  But let's analyze this as if the Government could actually prove any of the Counts brought against the Defendant.

If the Defendant had actually done any of the things charged, then there would be sufficient evidence of the affirmative defense of self-defense or defense of others.  It is undisputed that the crush of the crowds prevented people from leaving, the police offered no warnings for people to leave and paid no attention to their inability to leave.  Meanwhile the police fired on the crowds, blew half the faces off of some people, and pelted demonstrators with dangerous objects, even if not classical bullets.

This is a fact dependent question.

## J. COMPARATIVE CULPABILITY RELATIVE TO OTHER "RIOTERS"

Here again we have the Government's blind spot:

The Defendant is not guilty.

Asserting and proving her innocence is not arguing that she is "less guilty" than others, unless one considers zero to be less than others.

However, nevertheless, she may prove that she is not guilty of some of the counts charged.  She is not guilty at all.  But the defense presentation can attack each of the counts to show that she is at a minimum less guilty in terms of maybe violating one count but not the others.

The fact that the Government cannot prove guilt under its burden has nothing to do with comparative culpability.

Some people violated the law on Capitol Hill on January 6.  Most did not.

The Government also argues that "allegedly helpful acts negate the criminal conduct for which she is charged. See United States v. Camejo, 929 F.2d 610, 612-13 (11th Cir. 1991)."

This is entirely false, because again we are basing all of this on many different issues of intent.  A finder of fact is entitled to, and should be charged with, evaluating the Defendant's behavior.  A person intent upon burning down a store would not come to the aid of firefighters and help them put out the fire.

Good acts are important where they tell us that the Defendant did not have the intent that the Government imagines.

## CONCLUSION

For the foregoing reasons, the government's Motion in limine should be denied.

August 23, 2023

**RESPECTFULLY SUBMITED,**
John M. Pierce, Esq.
*Counsel for Defendant*

_____*/s/ John Pierce*_____

JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By Assistant U.S. Attorneys

_____*/s/ John Pierce*_____
John M. Pierce