UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-CR-507 (PLF) |
| | : | |
| STEPHANIE BAEZ, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MOTION TO FILE REPLY BRIEF ON SEPTEMBER 5, 2023**

As explained via email to both the Court and counsel, the government intended to file a reply brief on the scheduled deadline of September 4, 2023. Unfortunately, on the evening of September 4, the electronic filing system, PACER, was not functioning properly and would not allow government counsel to access the system or file anything. In light of this unexpected technical malfunction, defense counsel for the defendant, Stephanie Baez, has communicated with the Court and government counsel that he does not oppose the government filing the attached reply brief one day later, on September 5, 2023.

Respectfully submitted,

DATED: September 5, 2023

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  _____
Troy A. Edwards, Jr.
N.Y Bar No. 5453741
Assistant United States Attorney
601 D St., NW
Washington, D.C. 20001
troy.edwards@usdoj.gov
(202) 252-7081

VICTORIA A. SHEETS
Assistant United States Attorney
New York Bar No. 5548623
victoria.sheets@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-CR-507 (PLF) |
| : | |
| STEPHANIE BAEZ, : | |
| : | |
| Defendant. : | |

**UNITED STATES' REPLY TO
DEFENDANT'S OPPOSITION TO MOTIONS *IN LIMINE***

The defendant, Stephanie Baez's opposition to the government's motion *in limine* seeking to preclude improper arguments and evidence misses the mark. In short, it does not address pertinent case law or facts detailed in the government's motion. It does, however, raise a litany of unsupported claims and arguments. The government addresses each in turn.

*First*, Baez argues without explanation that the specific location of United States Capitol Police security cameras is "relevant and serious." ECF 60 at 3. In light of the misdemeanor charges at issue, however, what is relevant is where the defendant was and when. As in all January 6 cases, the defendant can still probe what the surveillance cameras show and when (and what they do not show), and their general locations without specific height and depth details or photographs of the cameras. The government's motion to preclude *specific* locations is narrow in scope and tailored to an ongoing national security concern that the Capitol and its grounds remain secure.

In her defense, Baez points to the Oath Keepers case and claims that surveillance footage that depicts those defendants' interactions with United States Capitol Police Officer Harry Dunn is "apparently missing". ECF 60 at 3. The footage is not "missing" and there are no "concerns about the disappearance of evidence," *id*.; as was made clear in one of the Oath Keepers trials, there is simply no camera in that area known as the "Small House Rotunda." *See United States v.*

2

*Sandra Parker, et al.*, 2/23/23PM Tr. at 3992 ("Q: And what is this area called in the Capitol? A: The Small House Rotunda. Q: Are there CCTV cameras in areas around it but not in it? A: Yes. Q: So can you generally describe for the jury where those are located and what you have reviewed in your investigation? A: Yes. The CCTV cameras cover the Rotunda area here. There are also CCTV cameras that cover this hallway towards the suite of offices. There are CCTV cameras that cover down here below the Small House Rotunda, down a floor in the Crypt, and then there are cameras here that cover Statuary Hall."). The government's limited restriction would not prevent the defendant from "making her case" in any respect, *id*. at 4, and it ought to be granted.

*Second*, Baez appears to concede that any cross-examination of a United States Secret Service witness will not "inquire further into Secret Service protocols." ECF 60 at 6-7. But part of her opposition appears to broaden the scope of inquiry beyond what will be relevant in this trial. Any Secret Service witness's relevance in this case revolves around the simple fact that the Capitol building and grounds were restricted on January 6, 2021, because the Vice President and his family would be and were present. *See* 18 U.S.C. § 1752(c)(1)(B) ("[T]he term 'restricted buildings or grounds' means any posted, cordoned off, or otherwise restricted area—of a building or grounds where the President or other person protected by the Secret Service *is or will be* temporarily visiting.") (emphasis added). So cross-examination into topics beyond that focus—including Secret Service emergency protocols or operational specifics—would be irrelevant and, more importantly, could compromise national security. The government's motion is not a complete bar to cross-examination as the defendant's opposition implies. *See id*. at 5 ("If there is some reason for them to be called to testify, then one starts to question what would be the problem with them being cross-examined."). As with the government's motion regarding surveillance cameras, the

3

motion regarding Secret Service cross-examination is limited in scope and intended to protect national security concerns that are not relevant to the defendant's defense.

*Third*, Baez confusingly argues both that "nobody is arguing" entrapment by estoppel, ECF 60 at 7, and that "[t]his is a clear example of entrapment by estoppel," *id*. at 9. Regardless, the government submits that the defendant's opposition does not address any of the caselaw or requirements set out in the government's omnibus motion, ECF 54 at 7-11. Fundamentally, there is no available entrapment-by-estoppel defense, because the defendant cannot point to a government interpretation of the statutes she is charged with violating on which she reasonably relied. Instead, she simply asserts that the Supreme Court's decision in *Cox v. Louisiana*, 379 U.S. 559 (1965), requires a ruling in her favor. Not so.

*Cox* reversed the conviction of a protester who had led a group of 2,000 in a civil rights march across the street from a courthouse and was later prosecuted for violating an anti-picketing statute prohibiting demonstrations "near" a courthouse. *Id*. at 560, 564-65. The statute did not define that term. *Id.* at 560. The protesters had been "affirmatively told" by "the highest police officials of the city, in the presence of the Sheriff and Mayor," that protesting across the street from the courthouse was lawful under that statute. *Id.* at 571. The Court determined that the statute's ambiguous term "near" necessarily "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," and thus found that the demonstrators "would justifiably tend to rely on [the police's] administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id.* at 568-69. The Court concluded that the local officials' interpretation of "near" was a "limited administrative regulation of traffic" that the protesters reasonably relied on. *Id.* at 569. But it also

made clear that a defendant cannot reasonably rely on a law enforcement official's attempt to provide "a waiver of law," which the Court described as "beyond the power of the police." *Id.*

Here, the defendant has not and cannot point to any similar statement of law that she relied on in committing her crimes on January 6. She was not actively misled. Neither in his speech that day nor beforehand did President Trump or any other government actor (including law enforcement officers) purport to interpret the scope of the statutes the defendant is charged with violating. Said another way, President Trump did not "affirmatively assure[] the defendant[s] that certain conduct [was] legal." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually legal"). As Chief Judge Howell observed last year, an entrapment-by-estoppel defense by a January 6 rioter:

> would not be premised . . . on a defendant's confusion about the state of the law and a government official's clarifying, if inaccurate, representations. It would instead rely on the premise that a defendant, though aware that his intended conduct was illegal, acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 32; *see also United States v. North*, 910 F.2d 843 (D.C. Circuit 1990) (noting that "North does not even claim that he relied on *any* 'conclusion or statement of *law*'"); *United States v. Smith*, 940 F.2d 710, 715 (1st Cir. 1991) (rejecting entrapment-by-estoppel defense because federal agent allegedly encouraged defendant to keep firearms to assist with undercover operation, but never was alleged "to have represented that keeping the guns was, in fact, *legal*"). The defendant's claim that "Capitol Police temporarily lifted standard limitations as a gesture of acknowledgement towards the crowd's high spirits" is both patently false and, in any event, contrary to the Supreme Court's explicit warning in *Cox* about "waiver[s] of law" which are "beyond the power of police." 379 U.S. at 569. Absent any

government statement upon which the defendants could have arguably relied, any effort by the defendant to make an entrapment by estoppel argument should be rejected.

Relatedly, she appears to claim that police *inaction* somehow rose to the level of "implied permission" for the defendant to breach the Capitol twice, amidst hundreds of other rioters, tear gas, shattered glass, and broken doors and windows. *See* ECF 60 at 9-12. That is both legally and factually incorrect. "Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." *United States v. Williams*, No. 21-cr-377, ECF 87, at 3-4 (D.D.C. June 8, 2022) (then-C.J. Howell). And the government intends to present evidence of law enforcement officers around Baez acting repeatedly to remove the defendant and others from the building, presenting the opposite of "implied consent": explicit rejection. Thus, any testimony or evidence of alleged law enforcement inaction without evidence that the defendant observed it is irrelevant and should be excluded.

*Fourth*, Baez asserts she both had a First Amendment right to participate in a riot, and that the government ought to be restricted from using her speech as evidence of her crimes. ECF 60 at 12-14. Neither is accurate. As detailed in the government's omnibus motion, ECF 54 at 13, no one has a First Amendment right to protest in a restricted area or, more to the point, join a riot in the Capitol building. So any defense to the contrary should be barred from reaching the jury.

And the government does not intend to use Baez's speech "to inflame the jury with passion not principle," as she claims. ECF 60 at 12. Rather, Baez's statements, coupled with her actions on January 6, are valid, admissible evidence of her criminal wrongdoing and intent. The First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). Indeed, "[e]vidence of a defendant's previous declarations or statements is commonly admitted in criminal

6

trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*. Moreover, many other judges in the District of Columbia have explicitly recognized that prosecutions arising from January 6 are not directed at First Amendment activity, rather they are directed at the defendants' underlying conduct and intent. *See United States v. Caldwell*, Case Nos. 22-cr-15 & 21-cr-28-APM, ECF No. 558 at 48-49 (denying Rule 12 motion to dismiss § 1512(c)(2) charge on First Amendment grounds because "the indictment here reflects that the government is not prosecuting protected speech," rather it charges the defendants with a criminal conspiracy; "[i]f the government can carry its burden of proof at trial, a conviction of [the defendants] premised on such activities would not violate the First Amendment"); *United States v. Mostofsky*, Case No. 21-138-JEB, ECF No. 88 at 25 (explaining that the defendant "is not being charged for his views or his expression of them; rather, it is his actions in entering a restricted area in an alleged effort to impede the Electoral College certification"); *United States v. Nordean, et al*, Case No. 21-cr-175-TJK, ECF No 263 at 28-29 ("easily" concluding that the indictment does not target First Amendment activity, elaborating: "[The defendants] are charged with conduct involving acts of trespass, depredation of property, and interference with law enforcement, all intended to obstruct Congress' performance of its constitutional duties.  No matter Defendants' political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment."). The same is true here.

  *Fifth*, Baez argues that she does not intend to rely on jury nullification because she is not guilty and is subject to selective prosecution. She includes no case law or facts, but cites to "Cyber Men," "Dr. Who," "10,000 [other] demonstrators," "left-wing demonstrators [] let go without punishment" and accusations that the government believes "they are all guilty because we want to pretend they are," ECF 60 at 14-16. It is precisely these kinds of arguments that give rise to the

government's motion. Any arguments encouraging jury nullification or relying on selective prosecution or the investigation and punishment of other rioters on January 6 and elsewhere should be prohibited as irrelevant to the question of *this* defendant's guilt.

*Sixth*, Baez claims there is "sufficient evidence of the affirmative defense of self-defense or defense of others." ECF 60 at 17. She alleges, in part, that "it is undisputed that the crush of the crowds prevented people from leaving, the police offered no warnings for people to leave and paid no attention to their inability to leave." *Id*. In fact, these claims are very much disputed. Regardless, her arguments are irrelevant, because she is charged with a gamut of misdemeanors—none of which are explained away by a desire to defend herself or others. Beyond not satisfying the affirmative defense, it is inapplicable and would risk confusing the jury.

*Seventh*, and finally, Baez argues "[g]ood acts are important where they tell us that the Defendant did not have the intent that the Government imagines." ECF 60 at 19. But the defendant has never noticed any "good acts" and does not illustrate what acts she alleges reveal an intent other than that charged. Without more, the government (and the Court) are left to guess as to relevance and any probative nature of alleged "good acts." Because the defendant's character or character traits are not at issue, such evidence should be precluded. *See* Fed. R. Crim. P. 405(b).

**CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court grant the government's omnibus motion *in limine* seeking to preclude various improper defense arguments and evidence (ECF 54).

Respectfully submitted,

DATED: September 5, 2023

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  _____
Troy A. Edwards, Jr.
N.Y Bar No. 5453741
Assistant United States Attorney
601 D St., NW
Washington, D.C. 20001
troy.edwards@usdoj.gov
(202) 252-7081

VICTORIA A. SHEETS
Assistant United States Attorney
New York Bar No. 5548623
victoria.sheets@usdoj.gov