UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-0507 (PLF) |
| | ) | |
| STEPHANIE MARYLOU BAEZ, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Defendant Stephanie Marylou Baez is charged in a five-count indictment

("Indictment") based on conduct related to the events at the United States Capitol on

January 6, 2021.  See Second Superseding Indictment [Dkt. No. 69].  Pending before the Court

are Ms. Baez's Motion in Limine to Preclude Unseen Signage, Fencing, Announcements, or

Other Barriers [Dkt. No. 52] and the United States' Motion in Limine to Preclude Improper

Defense Arguments and Evidence [Dkt. No. 54].[1]  The Court has carefully considered the

parties' written submissions and the applicable authorities.  For the following reasons, the Court

will deny Ms. Baez's motion and grant the government's motion in part.

---

[1]     The Court has reviewed the following documents in connection with the pending
motions:  the Second Superseding Indictment ("Indictment") [Dkt. No. 69]; Ms. Baez's Motion
in Limine to Preclude Unseen Signage, Fencing, Announcements, or Other Barriers ("Baez
Mot.") [Dkt. No. 52]; the United States' Motion in Limine to Preclude Improper Defense
Arguments and Evidence ("Gov't Mot.") [Dkt. No. 54]; United States' Opposition to
Defendant's Motion in Limine to Preclude Unseen Evidence ("Gov't Opp.") [Dkt. No. 59]; Ms.
Baez's Opposition to Government's Motion in Limine ("Baez Opp.") [Dkt. No. 60]; and United
States' Reply to Defendant's Opposition to Motions in Limine ("Gov't Reply") [Dkt. No. 66].
Ms. Baez did not file a reply in support of her motion in limine.  Because Ms. Baez's opposition
to the government's motion in limine did not contain page numbers, citations to that pleading
refer to the electronic case filing page numbers.

I.  BACKGROUND

The events of January 6, 2021 are summarized in the Court's opinion in United States v. Puma.  See United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022).  The grand jury alleges that Ms. Baez was a member of the crowd that entered the Capitol building on January 6, 2021 and engaged in certain activities while there.  See Indictment.  The Statement of Facts accompanying the criminal complaint describes video footage that depicts Ms. Baez inside the Capitol building – including the Crypt of the Capitol and other locations – on January 6.  See Statement of Facts [Dkt. No. 1-1] at 3.  The video footage shows Ms. Baez walking around the Capitol and holding a cell phone.  See id. at 3-4.  The video footage also shows Ms. Baez leaving the Capitol as law enforcement officers cleared the building.  See id. at 3.  On April 27, 2021, an FBI agent interviewed Ms. Baez, and Ms. Baez admitted during the interview that she entered the Capitol building on January 6.  See id. at 6-7.  The Statement of Facts also describes Instagram messages that Ms. Baez sent on January 6, some of which stated that she witnessed "tear gas," broken glass," and individuals "pushing back cops" in the Capitol.  See id. at 8.

On June 4, 2021, Ms. Baez was arrested in Alabama.  See Executed Arrest Warrant [Dkt. No. 5].  On August 4, 2021, the government charged Ms. Baez by information with four misdemeanor offenses; on August 3, 2023, the government filed a superseding information charging the same four misdemeanor offenses; and on September 28, 2023, the government filed a superseding indictment charging Ms. Baez with the same four misdemeanor offenses and one felony offense:  Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;  Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol

Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or

Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  See Indictment;

Information [Dkt. No. 10]; Superseding Information [Dkt. No. 55].

## II.  LEGAL STANDARD

Courts evaluate the admissibility of evidence on a pretrial motion in limine

according to the framework established by Rules 401 and 402 of the Federal Rules of Evidence.

See Daniels v. District of Columbia, 15 F. Supp. 3d 62, 66-67 (D.D.C. 2014); see also United

States v. Sutton, 636 F. Supp. 3d 179, 190 (D.D.C. 2022); Democracy Partners, LLC v. Project

Veritas Action Fund, Civil Action No. 17-1047, 2022 WL 3334689, at *3 (D.D.C.

Aug. 12, 2022).  First, "the Court must assess whether the evidence is relevant."  Id. at 66.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action."

FED. R. EVID. 401.  "Relevant evidence is admissible" unless an applicable authority provides

otherwise, whereas "[i]rrelevant evidence is not admissible."  FED. R. EVID. 402.  The proponent

of admitting an item of evidence has the initial burden of establishing relevance.  See Dowling v.

United States, 493 U.S. 342, 351 n.3 (1990); United States v. Oseguera Gonzalez, 507 F.

Supp. 3d 137, 147 (D.D.C. 2020).

Even if the proponent of an item of evidence can demonstrate its relevance,

however, a court may still conclude that it is inadmissible if "the United States Constitution; a

federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court"

provide for its exclusion.  FED. R. EVID. 402.  Rule 403 of the Federal Rules of Evidence states

that a court may "exclude relevant evidence if its probative value is substantially outweighed by

a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Limiting the scope of cross-examination is within the discretion of a trial court and does not necessarily conflict with the Sixth Amendment's Confrontation Clause, which enshrines the defendant's right "to be confronted with the witnesses against him." U.S. CONST. AMEND. VI; see, e.g., United States v. Machado-Erazo, 951 F. Supp. 2d 148, 158 (D.D.C. 2013) ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (citing Delaware v. Fensterer, 474 U.S. 15, 20 (1985)); United States v. Miller, 738 F.3d 361, 375 (D.C. Cir. 2013) ("Although the Confrontation Clause guarantees an opportunity for effective cross-examination, 'trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination.'") (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

### III. DISCUSSION

#### A.  Ms. Baez's Motion in Limine

Pursuant to Rules 401 and 403, Ms. Baez moves the Court to preclude the government from introducing at trial "any evidence, discussion, or argument regarding signs, fencing, dispersal announcements, barricades or other barriers unless the offering party first lays a foundation that defendant actually was in a place to witness such features." Baez Mot. at 1. Ms. Baez argues that evidence of any of these features that she "could not have seen or heard herself at her location(s)" is not relevant or probative of whether she knew she was in "an unauthorized area" and therefore should be precluded. Id. at 1-2.

The government responds that in both Count Two, charging a violation of 18 U.S.C. § 1752(a)(1), and Count Three, charging a violation of 18 U.S.C. § 1752(a)(2), the

government must prove "the <u>objective existence</u> of a restricted building or grounds." Gov't Opp.
at 2.  Section 1752(a) provides:

> (a) Whoever—
>
>> (1)  knowingly enters or remains in any restricted building
>> or grounds without lawful authority to do so;
>>
>> (2)  knowingly, and with intent to impede or disrupt the
>> orderly conduct of Government business or official
>> functions, engages in disorderly or disruptive conduct in, or
>> within such proximity to, any restricted building or grounds
>> when, or so that, such conduct, in fact, impedes or disrupts
>> the orderly conduct of Government business or official
>> functions; . . .
>
> or attempts or conspires to do so, shall be punished as provided in
> subsection (b) . . . .

18 U.S.C. § 1752(a).

Under Count Two, the government must prove that Ms. Baez "enter[ed] or
remain[ed] in a[] restricted building or grounds."  18 U.S.C. § 1752(a)(1).  Under Count Three,
the government must prove that Ms. Baez "engage[d] in disorderly or disruptive conduct in, or
within such proximity to, any restricted building or grounds."  18 U.S.C. § 1752(a)(2).
Section 1752 defines the term "restricted buildings or grounds" as "any posted, cordoned off, or
otherwise restricted area . . . of a building or grounds where the President or other person
protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).
According to the government, to prevail at trial on Count Two and Count Three, it must prove
that Ms. Baez's conduct occurred in an area that was "posted, cordoned off, or otherwise
restricted," regardless of whether Ms. Baez saw any evidence of signs, barriers, or other such
features.  <u>See</u> Gov't Opp. at 2.

The Court agrees with the government.  Because the government must prove the objective existence of an area that was "posted, cordoned off, or otherwise restricted," 18 U.S.C. § 1752(c)(1)(B), evidence of signs, fencing, dispersal announcements, barricades, or other barriers – regardless of whether Ms. Baez saw these features or not – are relevant to the government's case and highly probative of the "restricted" nature of the building or grounds.  As the government points out, the requirement that the government must prove in both Count Two and Count Three that Ms. Baez acted knowingly "does not negate the government's obligations to prove the restricted area objectively."  Gov't Opp. at 3.

In addition, with respect to Count Three, the government must prove that Ms. Baez engaged in "disorderly or disruptive conduct" in a restricted area knowingly and with the intent to impede or disrupt the orderly conduct of government business or official functions.  See 18 U.S.C. § 1752(a)(2).  Ms. Baez's "actions in joining a mob of others bears on [this] mens rea" and evidence of "the mob's actions in breaching the Capitol, including around barriers, fences, and signs around the Capitol" is relevant and highly probative to prove this mens rea.  Gov't Opp. at 4; see, e.g., United States v. Grider, Crim. No. 21-0022, 2022 WL 17829149, at *12 (D.D.C. Dec. 21, 2022) ("Membership in a mass of rioters is particularly likely to disrupt Congressional business.  Even a peaceful crowd standing on the Floor of Congress is likely to shut down Congressional proceedings.").  Accordingly, the Court will deny Ms. Baez's motion in limine.

## B.  Government's Omnibus Motion in Limine

Pursuant to Rules 401, 403, and 611(b) of the Federal Rules of Evidence, the government moves to preclude Ms. Baez from introducing evidence relating to a variety topics.

For the following reasons, the Court will grant the government's motion in part and deny it in part.  The Court discusses the government's arguments in turn.

       1.    Specific Locations of Security Cameras in U.S. Capitol

The government asks the Court to preclude Ms. Baez from eliciting testimony about the specific locations of U.S. Capitol Police surveillance cameras inside the Capitol building and on its grounds.  See Gov't Mot. at 3.  Due to the sensitive nature of this information, the government seeks to limit Ms. Baez from "probing, during, cross-examination, the exact locations of [U.S. Capitol Police] surveillance cameras or from using [certain] maps, which show each camera's physical location, as an exhibit at trial."  Id. at 4.  The government argues that this information has limited probative value and that any probative value is substantially outweighed by the danger to national security posed by making this information public at trial.  See id. at 4-5.

In response, Ms. Baez argues that the location of U.S. Capitol Police security cameras is relevant because it shows the "'protected areas' [where] the defendant was actually present or not during the time of her alleged crime."  Baez Opp. at 4.  According to Ms. Baez, inquiry into the specifics of "exactly where the security cameras are located in the U.S. Capitol," would allow the jury to have "a better understanding" of whether Ms. Baez violated 18 U.S.C. § 1752(a)(2), disorderly and disruptive conduct in a restricted building or grounds.  Id.  She also asserts that in another January 6 prosecution against defendants affiliated with the Oath Keepers, the defense offered cellphone footage of the "Oath Keepers defending [U.S. Capitol Police] Officer Harry Dunn against a violent group of demonstrators near a large sweeping stairway a short distance from the central Rotunda" of the Capitol, but "video of this same scene from the building's security cameras is apparently missing."  Id. at 3.  She argues that "the location of

[security] cameras may make the difference between conviction or acquittal or even resolve concerns about the disappearance of evidence."  Id.[2]

In United States v. GossJankowski, Crim. No. 21-0123, the Court considered an identical request from the prosecution to limit evidence of the specific locations of U.S. Capitol Police surveillance cameras.  See Transcript of Final Pretrial Conference ("GossJankowski Tr."), United States v. GossJankowski, Crim. No. 21-0123 (D.D.C. Feb. 27, 2023) [Dkt. No. 170] at 112:13-17.  In that case, the defendant stated before trial that he did not plan on introducing or eliciting evidence about the specific location of the surveillance cameras unless the government opened the door for that kind of evidence.  See id. at 113:11-114:5.  The Court granted the government's request and noted:  "[T]here's a lot of good reasons to keep this kind of material protected in terms of danger to the Capitol in the future."  Id. at 114:13-15; see March 2, 2023 Order [Dkt. No. 149].

Here, too, the Court agrees with the government that evidence of the specific locations of surveillance cameras within the Capitol building and its grounds – including any witness testimony and maps of each camera's location – is irrelevant under Rule 401.  Contrary to Ms. Baez's assertion, the specific locations of the surveillance cameras are not relevant to her defense with respect to Count Two, charging her with entering and remaining in a restricted building and grounds in violation of 18 U.S.C. § 1752(a)(1), or Count Three, charging her with disorderly and disruptive conduct in a restricted building and grounds in violation of 18 U.S.C. §§ 1752(a)(2).  Only the camera footage depicting the events of January 6 is relevant to the issue of whether Ms. Baez was in a restricted area within the meaning of those statutes.  Based on that

---

[2]     The government, citing testimony from an Oath Keepers trial, contends that this footage is not "missing" because there is no camera in that area of the Capitol building.  See Gov't Reply at 2-3.

camera footage, it will be clear where the cameras are located generally – in the Crypt of the Capitol building, for example, or the Rotunda – but the specific locations of the cameras themselves are irrelevant in this case. Moreover, Ms. Baez's argument about allegedly "disappearing evidence" in the Oath Keepers case, see Baez Opp. at 3, has no bearing on the issues here; Ms. Baez has not asserted that any evidence has "disappeared." Ms. Baez is therefore prohibited from introducing or eliciting evidence on the specific locations of surveillance cameras within the Capitol building and its grounds.

### 2.   Secret Service Tactics and Emergency Operations

The government states that it intends to call at trial a witness from the U.S. Secret Service, and the government argues that the Court should limit Ms. Baez's cross-examination of the Secret Service witness on the Secret Service's specific tactics and emergency operations. See Gov't Mot. at 5. As mentioned, in Count Two and Count Three, Ms. Baez is charged with entering and remaining in a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(1), and disorderly and disruptive conduct in a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(2), respectively. See Superseding Information at 1-2. Under Section 1752, a "restricted building or grounds" may mean a "building or grounds where . . . [a] person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). To meet its burden of proof at trial, the government states that it will "call a witness from the Secret Service to testify that, at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Michael R. Pence and his two immediate family members – all of whom were present at the Capitol." Gov't Mot. at 5. Specifically, the government seeks to limit Ms. Baez's cross-examination of the Secret Service witness on the following topics:

    1.  Secret Service protocols for when emergencies occur, including those related to the locations where protectees or their motorcades are taken at the Capitol; and

    2.  Operational specifics about Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

Id. at 6.  The government argues that cross-examination on these topics would go beyond the scope of direct examination and should be excluded as irrelevant and unduly prejudicial.  See id.

Ms. Baez responds that "such questioning should be allowed."  Baez Opp. at 5. Ms. Baez agrees with the government that it is appropriate for the Secret Service witness to testify about the presence of former Vice President Pence at the Capitol in order to establish the existence of a restricted area under 18 U.S.C. §§ 1752(a)(1) and (a)(2).  Id.  But Ms. Baez opposes the government's requested limitation on cross-examination of the Secret Service witness.  She argues that the Secret Service witness "must be required to answer questions regarding what role the [S]ecret [S]ervice played in protecting Vice President Michael R. Pence, who was present at the Capitol at the time of the alleged crimes."  Id. at 6.

The Court considered an identical request from the prosecution to limit cross-examination in United States v. GossJankowski, Crim. No. 21-0123.  In that case, the defendant proffered that he did not plan on eliciting the two specific topics that the prosecution sought to preclude.  See GossJankowski Tr. at 127:3-7.  The Court noted:  "I understand the need for some protection for [the Secret Service's] protocols, the number of people on a detail, things like that." Id. at 127:8-10.  The Court granted the government's motion without prejudice.  See id. at 127:10-11.

Here, too, the Court agrees with the government that Ms. Baez's cross-examination of Secret Service witnesses should exclude questions as to both (1) Secret

Service protocols for when emergencies occur, including protocols related to the locations where

protectees or their motorcades are taken at the Capitol; and (2) operational specifics about Secret

Service protective details, such as the number and type of agents the Secret Service assigns to

protectees.  These topics are irrelevant and "would be inappropriate and immaterial to the

question of guilt, or to the credibility of the Secret Service witness[es]," and questioning on these

topics may create a security risk.  United States v. Griffin, Crim. No. 21-0092, Memorandum

Order (D.D.C. Mar. 18, 2022) [Dkt. No. 92] at 4 (granting government's motion to limit

January 6 defendant's cross-examination of a Secret Service witness); see also United States v.

Barnett, Crim. No. 21-0038, Minute Entry (D.D.C. Jan. 4, 2023) (same); United States v. Reffitt,

Crim. No. 21-0032, Minute Order (D.D.C. Jan. 20, 2022) (same).

   In addition, the Court will not permit Ms. Baez to elicit testimony about "whether

the Secret Service declared a restricted area or its boundaries"; "whether the U.S. Capitol Police

Board ever coordinated with the Secret Service in purporting to restrict any grounds or building";

or "whether the restricted area was excessive or reasonably related to the presence of a Secret

Service protectee," Baez Opp. at 6, because these topics are not relevant under Rule 401.  As a

matter of law, there is no requirement for Secret Service agents to restrict an area in order for it

to be a "restricted building or grounds" within the meaning of 18 U.S.C. § 1752(a).  See United

States v. Puma, 596 F. Supp. 3d 90, 109-12 (D.D.C. 2022); United States v. GossJankowski,

Crim. No. 21-0123, 2023 WL 130817, at *4-5 (D.D.C. Jan. 9, 2023).  Nor is there any

requirement for the restricted area to be "reasonably related" to the presence of a Secret Service

protectee.  See 18 U.S.C. § 1752; United States v. Griffin, 549 F. Supp. 3d 49, 54 (D.D.C. 2021)

("The statute focuses on perpetrators who knowingly enter a restricted area around a protectee,

not on how it is restricted or who does the restricting."); United States v. Puma, 596 F. Supp. 3d

at 109-110 (same).  Ms. Baez therefore is precluded from eliciting testimony on these topics.

     3.    Entrapment by Estoppel, Public Authority Defense, and Purported Inaction by
           Law Enforcement

          The government argues that the Court should preclude Ms. Baez from making

arguments at trial relating to the "entrapment by estoppel" or "public authority" defenses.  See

Gov't Mot. at 7.  Both the entrapment-by-estoppel and public authority defenses stem from a

constitutional prohibition against "convicting a citizen for exercising a privilege which the State

had clearly told him was available to him."  United States v. Sheppard, Crim. No. 21-0203, 2022

WL 17978837, at *7 (D.D.C. Dec. 28, 2022) (quoting Cox v. Louisiana, 379 U.S. 559, 571

(1965)).  "[T]he state of the public authority defense (and its close cousin,

entrapment-by-estoppel) in the D.C. Circuit remains somewhat unsettled."  Id. at *8.  In United

States v. Chrestman, Judge Howell adopted the Tenth Circuit's framework, under which, in order

to successfully argue an entrapment-by-estoppel defense, a defendant must prove:

> (1)  that a government agent actively misled him about the state of
> the law defining the offense;
>
> (2)  that the government agent was responsible for interpreting,
> administering, or enforcing the law defining the offense;
>
> (3)  that the defendant actually relied on the agent's misleading
> pronouncement in committing the offense; and
>
> (4)  that the defendant's reliance was reasonable in light of the
> identity of the agent, the point of law misrepresented, and the
> substance of the misrepresentation.

United States v. Chrestman, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (quoting United States v.

Cox, 906 F.3d 1170, 1191 (10th Cir. 2018)).  According to the government, common to both the

entrapment-by-estoppel and public authority defenses is the requirement that a government

official must offer a statement of the law.  See Gov't Mot. at 8.  The government argues that

Ms. Baez "has not, and cannot, argue that, in urging his supporters towards the Capitol,

then-President Trump made a 'statement' of law."  Id.

Relatedly, and relying on the same standard articulated in United States v.

Chrestman, the government argues that the Court should preclude Ms. Baez from "arguing [to

the jury] that any failure of law enforcement to act rendered [her] conduct legal."  Gov't Mot.

at 11.  The government asserts that a law enforcement officer cannot "unilaterally abrogate

criminal laws duly enacted by Congress" through his or her purported inaction.  Id. (quoting

United States v. Chrestman, 525 F. Supp. 3d at 32).

Ms. Baez does not address the government's arguments with respect to former

President Trump's statements,  but she contends that "an official [can] transform otherwise

illegal conduct into legal conduct" and that it was law enforcement officers – specifically, the

U.S. Capitol Police – who misled her about the law on January 6.  See Baez Opp. at 9.  Ms. Baez

asserts that "an invitee is lawfully authorized to enter any building or area into which he or she

has been invited."  Id. at 8.  She argues that she "entered an incorrect location [into the Capitol

building] and traversed the incorrect corridors," and that "Capitol Police temporarily lifted

standard limitations as a gesture of acknowledgment towards the crowd's high spirits."  Id. at 9.

This, she says, "is a clear example of entrapment by estoppel."  Id.  She cites as support for her

argument the Supreme Court's decision in Cox v. Louisiana, where the Court concluded that the

appellant's conviction for demonstrating across from a courthouse could not stand because police

officials informed the appellant that he could demonstrate at that location.  See id. at 7-9 (citing

Cox v. Louisiana, 379 U.S. at 568-71).

As several judges of this court have made clear, both the entrapment-by-estoppel and public authority defenses are available "only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." United States v. Sheppard, 2022 WL 17978837, at *9.  First, with respect to statements made by former President Trump, there is no suggestion that any of his statements clearly indicated that Ms. Baez's actions on January 6 were lawful.  See id. ("President Trump neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building or impeding the certification of the electoral vote was lawful."); see also United States v. Grider, Crim. No. 21-0022, 2022 WL 3030974, at *3 (D.D.C. Aug. 1, 2022) ("[F]ormer President Trump's statements did not in any way address the legality of the actions he urged his supporters to take.").  His words "only encourage[d] those at the rally to march to the Capitol – nothing more – and do not address legality at all." United States v. Sheppard, 2022 WL 17978837, at *9.  And as Judge Howell has explained, the Supreme Court in Cox "unambiguously foreclose[d] the availability of the[se] defense[s] in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." United States v. Chrestman, 525 F. Supp. 3d at 32 (citing Cox v. Louisiana, 379 U.S. at 569).  "No American President holds the power to sanction unlawful actions because this would make a farce of the rule of law," and "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters." Id.  Ms. Baez is precluded from relying on former President Trump's statements to assert the entrapment by estoppel or public authority defenses.[3]

---

[3]      Ms. Baez also does not appear to have properly raised the public authority defense under the Federal Rules of Criminal Procedure.  Under Rule 12.3, "[i]f a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk

Second, with respect to law enforcement officers' alleged inaction on January 6, Ms. Baez cannot argue to the jury that their purported inaction rendered her conduct legal. "[T]he logic in Chrestman that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." United States v. Williams, Crim. No. 21-0377, Memorandum Opinion and Order (D.D.C. June 8, 2022) [Dkt. No. 87] at 2.  As Judge Howell noted in Williams, "[s]ettled caselaw makes clear that law officer inaction – whatever the reason for the inaction – cannot sanction unlawful conduct." Id. at 3 (citing Cox v. Louisiana, 379 U.S. at 569-70; United States v. Gutierrez-Gonzalez, 184 F.3d 1160, 1168-69 (10th Cir. 1999); Garcia v. Does, 779 F.3d 84, 95 (2d Cir. 2015) (en banc)).  Ms. Baez therefore is precluded from relying on law enforcement officers' purported inaction to assert the entrapment by estoppel or public authority defenses.

Finally, the Court notes that the government and Ms. Baez appear to agree that the purported inaction of law enforcement officers may be relevant to her state of mind on January 6. The Court therefore will not prohibit Ms. Baez from making this argument, as long as she can establish that she was aware of this alleged inaction.  See United States v. Williams, Crim. No. 21-0377 [Dkt. No. 87] at 3 ("As a logical matter . . . any action or inaction of which defendant was not aware cannot possibly have had any effect on his state-of-mind and is inadmissible as irrelevant under Federal Rule of Evidence 401.").

---

within the time provided for filing a pretrial motion." FED. R. CRIM. P. 12.3(a)(1).  The Court has seen no such notice of intent to assert the public authority defense.

4.   First Amendment

The government argues that Ms. Baez should be prohibited from asserting that she enjoyed a First Amendment right to protest inside the restricted area around the Capitol or inside the Capitol building itself. <u>See</u> Gov't Mot. at 13.  Ms. Baez responds that "considering established legal precedent designating the Capitol grounds as a public forum for free speech, the government's assertions of complete restrictions on the grounds [on] January 6 must endure a rigorous examination."  Baez Opp. at 13.

The Court agrees with the government.  As explained at some length in the Court's June 2, 2023 Opinion resolving Ms. Baez's pretrial motion to dismiss the information on First Amendment grounds, none of the statutes under which Ms. Baez is charged are facially unconstitutional under the First Amendment.  <u>See</u> <u>United States v. Baez</u>, Crim. No. 21-0507, 2023 WL 3846169, at *5-10 (D.D.C. June 2, 2023).  In the same Opinion, the Court noted that a decision on Ms. Baez's as-applied challenges to these statutes is premature at the motion to dismiss stage, but that the Court "may consider Ms. Baez's as-applied challenge . . . on a motion during trial under Rule 29 of the Federal Rules of Criminal Procedure, if appropriate."  <u>Id</u>. at *6. The Court reiterates that Ms. Baez may raise as-applied First Amendment arguments at the appropriate time on a motion under Rule 29.  <u>See</u>, <u>e.g.</u>, <u>United States v. Bru</u>, Crim. No. 21-0352, 2023 WL 4174293, at *3 (D.D.C. June 26, 2023).  But the Court will not permit Ms. Baez to make arguments to the jury about whether she had a First Amendment right to protest inside the restricted area around the Capitol or inside the Capitol building itself.

"[I]ssues of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged" are inappropriate to present to the jury.  <u>United States v. Washington</u>, 705 F.2d 489, 495 (D.C. Cir. 1983).  As this Court has

stated, "testimony consisting of legal conclusions is impermissible because such testimony may improperly influence the decisions of the trier of fact – the jury – and impinge upon the responsibilities of the trial court." United States v. Sutton, 642 F. Supp. 3d 57, 65 (D.D.C. 2022) (citing United States ex rel. Mossey v. Pal-Tech, Inc., 231 F. Supp. 2d 94, 98 (D.D.C. 2002) and Burkhart v. Wash. Metro. Area Transit Auth., 112 F.2d 1207, 1212-13 (D.C. Cir. 1997)).  Juries are routinely instructed that the trial judge is responsible for "rul[ing] on questions of law" and instructing jurors on "the law that applies in this case."  See, e.g., Final Jury Instructions, United States v. GossJankowski, Crim. No. 21-0123 (D.D.C. Mar. 17, 2023) [Dkt. No. 166] at 3.  It is the jury's duty to accept the law as instructed by the Court.  Id.  Allowing Ms. Baez to argue to the jury that her conduct was protected under the First Amendment – a legal question – would inappropriately shift the responsibility for making determinations of law from the Court to the jury.  Although she may raise legal arguments on a motion for judgment of acquittal under Rule 29, Ms. Baez may not make such arguments or present such evidence to the jury.

### 5.   Jury Nullification

The government argues that the Court should preclude Ms. Baez from making arguments or introducing evidence that would encourage jury nullification, whether during voir dire or at trial.  See Gov't Mot. at 14.  Specifically, the government requests that the Court preclude Ms. Baez from arguing that she has been "unfairly singled out for prosecution because of her political views" or about "the hardships of prison or the potential effect of incarceration on her family or employment prospects."  Id. at 15-16.  With respect to the hardships of prison or the potential effect of incarceration, Ms. Baez appears to agree with the government that it is inappropriate to argue about the potential penalties for convictions before the jury, see Baez Opp. at 16, so the Court will grant the government's motion as to this issue.

With respect to arguments about the government prosecuting Ms. Baez for her political views, the government's request essentially asks the Court to prohibit Ms. Baez from presenting a selective prosecution claim to the jury.  In response, Ms. Baez asserts that she is being selectively prosecuted.  Baez Opp. at 15.  She further argues that "[t]he fact that left-wing demonstrators are let go without punishment, given a slap on the wrist, or even awarded millions of dollars in civil lawsuits is entirely relevant to the intent and motivation of the Defendant."  Id. at 16.

Ms. Baez does not provide any reasoning, facts, or law in support of her selective prosecution claim other than a conclusory statement that the alleged selective prosecution is "relevant" to Ms. Baez's "intent and motivation."  Baez Opp. at 16.  Like Ms. Baez's First Amendment claims, "the issue of selective prosecution is one to be determined by the court, as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged."  United States v. Washington, 705 F.2d at 495 (internal citations omitted); see United States v. Safavian, Crim. No. 05-0370, 2008 WL 5255534, at *1 (D.D.C. Dec. 12, 2008) ("Where issues of vindictive or selective prosecution are properly raised, they are legal matters for the Court, not theories of defense for the jury."); United States v. Sutton, 636 F. Supp. 3d 179, 209-10 (D.D.C. 2022) ("[I]ssues [of selective prosecution] are irrelevant, inappropriate for consideration by the jury, invite jury nullification, and distract from the issues at trial.").  Ms. Baez therefore is precluded under Rule 401 from making arguments to the jury about selective prosecution.

### 6.   Defense of Self or Others

The government argues that the Court should preclude Ms. Baez from arguing that her actions on January 6 were in defense of herself or others.  See Gov't Mot. at 17; Gov't

Reply at 8.  The government asserts that Ms. Baez has not proffered sufficient evidence to suggest that her allegedly criminal conduct can be explained by a need to defend herself or others.  Gov't Mot. at 17 (citing United States v. Cramer, 532 F. App'x 789, 791 (9th Cir. 2013) ("If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial.")).  Ms. Baez responds that "the crush of the crowds prevented people from leaving, the police offered no warnings for people to leave and paid no attention to their inability to leave," and that law enforcement officers assaulted members of the crowd on January 6.  Id.

The Court will preclude Ms. Baez from arguing self-defense to the jury. Ms. Baez has not proffered any evidence to suggest that her alleged criminal conduct can be explained by a need to defend herself or others.  Ms. Baez's conclusory allegations of assaults from law enforcement officers is not sufficient, especially as Ms. Baez does not assert that these assaults happened to her.  As the government points out, none of the conduct with which Ms. Baez is charged – obstruction of an official proceeding; entering and remaining in a restricted building or grounds; disorderly and disruptive conduct in a restricted building or grounds; disorderly conduct in a Capitol building or grounds; and parading, demonstrating, or picketing in a Capitol building – can be explained by a reasonable belief that self-defense was necessary.  See Gov't Reply at 8 (noting that none of the offenses with which Ms. Baez is charged "are explained away by a desire to defend herself or others" and that self-defense is "inapplicable and would risk confusing the jury").

7.    Allegedly Helpful Acts or Culpability Relative to Others on January 6

The government argues that the Court should preclude Ms. Baez from introducing evidence of her own allegedly "helpful acts" or her culpability relative to others on January 6.

See Gov't Mot. at 17.  The government contends that this evidence – which may include evidence that Ms. Baez did not injure anyone, steal property, or vandalize anything – is not relevant to whether she committed the offenses with which she has been charged, and risks confusing the issues by "inviting the jury . . . to weigh the defendant's culpability relative to other rioters." Id. at 18.  Ms. Baez argues that "[g]ood acts are important where they tell us that the Defendant did not have the intent" required under the statutes with which she is charged. Baez Opp. at 19.

The Court agrees with the government that "any argument [about] the defendant's lack of additional [or more serious] criminal actions on January 6, 2021" is irrelevant and improper.  Gov't Mot. at 18.  The Court also agrees that "inviting the Court or the jury to weigh the defendant's culpability relative to other rioters" is irrelevant and improper. Id.  Ms. Baez will not be permitted to argue to the jury that her conduct could have been worse, or that her conduct was not as bad as the conduct of those around her.

The Court disagrees with the government's assertion, however, that "[a]ny alleged specific good acts by the defendant are not connected to the issues of this case."  Gov't Mot. at 18.  How Ms. Baez chose to comport herself on January 6, 2021 is squarely at issue in this case; she is charged in Count One with  "corruptly" obstructing or impeding an official proceeding, and in Count Three and Count Four with "engag[ing] in disorderly or disruptive conduct."  See Indictment at 1-2.  Ms. Baez's conduct on January 6, 2021 – including her "allegedly helpful acts," Gov't Mot. at 17 – is directly relevant to several elements that the government must prove beyond a reasonable doubt.  The Court will not prohibit Ms. Baez from introducing relevant evidence about her specific actions on or near the Capitol grounds on January 6, 2021 solely because those actions may be characterized as "good" or "helpful."

The government alludes to the presentation of good character evidence under Rule 404(a) and Rule 405 of the Federal Rules of Evidence. See Gov't Opp. at 18; Gov't Reply at 8. Under those rules, a criminal defendant "may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." FED. R. EVID. 404(a)(2)(A); see United States v. Sutton, 636 F. Supp. 3d at 207-08. Such character evidence may be proved "by testimony about the person's reputation or by testimony in the form of an opinion," FED. R. EVID. 405(a), or, where a person's "character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." FED. R. EVID. 405(b). Should Ms. Baez seek to present character evidence about her reputation or specific instances of her prior good acts unrelated to the events at the Capitol, she may only do so in conformity with Rule 404(a) and Rule 405 of the Federal Rules of Evidence. The Court notes, however, that Ms. Baez has not suggested that her character or any of her character traits are an "essential element" of any of the charged offenses or defenses she intends to assert. See FED. R. EVID. 405(b); see United States v. Sutton, 636 F. Supp. 3d at 209 ("Rule 405(b) 'only applies to cases in which the parties have made character an ultimate issue,' including 'when character or a character trait is an operative fact which under the substantive law determines the legal rights of the parties.'") (quoting 22B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 5263, 5267 (2d ed. 2022).

The Court also disagrees with the government's suggestion that evidence of Ms. Baez's "good acts" "carries an unnecessary risk of distracting the jury by allowing it to decide based, not on whether the evidence showed that the defendant committed the charged crimes, but instead on whether the defendant performed unrelated good deeds." Gov't Mot. at 18-19. The

jury will be instructed as to the elements of the offenses with which Ms. Baez is charged, and should Ms. Baez seek to admit character evidence, the Court will provide the jury with instructions about how it may consider such evidence during deliberations. The government's concerns thus can be adequately addressed through appropriate jury instructions. See United States v. Olaitan, Crim. No. 21-0713, 2023 WL 4993525, at *7 (D.D.C. Aug. 4, 2023).

### 8.   Other January 6 Cases

The government argues that the Court should exclude evidence and arguments related to the charges and dispositions in other January 6 cases. See Gov't Mot. at 19. The government contends that this information is not relevant because it has no bearing on Ms. Baez's own alleged conduct on January 6, and it risks confusing the issue, misleading the jury, causing undue delay, and wasting time. See id. (citing FED. R. EVID. 403). Ms. Baez did not address this argument in her opposition. The Court assumes that Ms. Baez does not intend to pursue this topic at trial. In any event, the Court concludes that the charges and dispositions in other January 6 cases are not relevant to Ms. Baez's case and will exclude evidence and arguments related to this topic under Rule 401.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Ms. Baez's Motion in Limine to Preclude Unseen Signage, Fencing, Announcements, or Other Barriers [Dkt. No. 52] is DENIED; it is

FURTHER ORDERED that the United States' Motion in Limine to Preclude Improper Defense Arguments and Evidence [Dkt. No. 54] is GRANTED IN PART and DENIED IN PART; and it is

FURTHER ORDERED that the parties shall conduct themselves during trial in conformity with the rulings set forth and explained in this Opinion.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9|29|23