UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 21-cr-507 (PLF) |
| : | |
| STEPHANIE MARYLOU BAEZ, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNT I OF THE SUPERSEDING INDICTMENT
ALLEGING VIOLATION OF 18 U.S.C. § 1512(C)(2)

The defendant, Stephanie Marylou Baez ("Defendant"), moved to dismiss Count One of the Second Superseding Indictment, ECF No. 69, which charged her with violating 18 U.S.C. §§ 1512(c)(2) and 2 (obstruction of an official proceeding and aiding and abetting). Since the Defendant brought her motion, *see* ECF No. 100 (dated Aug. 28, 2024), the grand jury returned a Third Superseding Indictment, ECF No. 103, charging her more broadly with violating 18 U.S.C. § 1512(c) and 2. This Third Superseding Indictment tracks the language of § 1512(c), which is all that a charging document must do to survive a motion to dismiss under Federal Rule of Criminal Procedure 12.[1]

Furthermore, as described herein, the evidence shows that the Defendant "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Fischer v. United States*, 603 U.S. --, 144 S. Ct. 2176, 2190 (2024). Consequently, to the extent the Defendant's motion argues that the

---

[1] If the Court does not find the Defendant's motion to dismiss moot in light of the Third Superseding Indictment, then it can treat the Defendant's motion, which attacks charging language that remains included in the Third Superseding Indictment, as a motion to dismiss Count One of the Third Superseding Indictment. *See* Part I *infra*.

Supreme Court's decision interpreting § 1512(c)(2) in *Fischer* compels dismissal, the government's indictment withstands scrutiny. Put differently, even if the Court were to look beyond the language of the charging instrument, which it should not do when considering a motion to dismiss, the evidence in this case meets the standard established by the Supreme Court.

As the Defendant is forced to acknowledge, *Fischer* "did not strike down § 1512(c)(2)," ECF No. 100 ("Mot.") at 2, nor did it hold that the statute can never apply to defendants who attempted to obstruct Congress's certification of the Electoral College vote on January 6, 2021. On the contrary, *Fischer* merely clarified that the text of § 1512(c)(2) only criminalizes obstruction when "the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Fischer*, 144 S. Ct. at 2190.

The government expects to prove beyond a reasonable doubt at trial that the Defendant attempted to and did "impair[] the availability or integrity for use," *id.*, of electoral ballots on January 6, 2021. This Court should deny the Defendant's motion and proceed to trial on Count One.

## I. PROCEDURAL HISTORY

On October 12, 2021, the Defendant was charged by information with four offenses: (1) Entering and Remaining in a Restricted Building in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2); (3) Violent Entry and Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 14. Following an extensive review of search warrant returns from the Defendant's Instagram count, the government filed a second superseding indictment on September 27, 2023, adding as Count One a fifth charge: Obstruction of an Official

Proceeding, in violation of 18 U.S.C. § 1512(c)(2). ECF No. 69. Count One of the Second Superseding Indictment charged as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **STEPHANIE MARYLOU BAEZ** attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF No. 69 at 1.

On November 11, 2023, the Defendant moved to dismiss Count One, arguing that the new charge (1) had been brought vindictively; (2) was unsupported by any allegation of independently felonious conduct; and (3) was unconstitutionally vague as applied. ECF No. 78. This Court denied that motion on March 18, 2024, noting that it "finds none of Ms. Baez's arguments persuasive." ECF No. 93 at 2.

Trial was originally scheduled to proceed on all five counts on February 26, 2024, but that trial date was continued until June 10, 2024, after the Defendant suffered a medical emergency. ECF No. 90. On May 11, 2024, the Defendant notified this Court of her intent to plead guilty to the misdemeanor offenses alleged against her (Counts 2, 3, 4, and 5) without a written plea agreement with the government. ECF No. 94. The Court held a change-of-plea hearing on May 15, 2024, and accepted the Defendant's plea of guilty to the four misdemeanor counts. *See* Minute Entry (May 15, 2024). The Court scheduled sentencing on the misdemeanor counts for August 28, 2024. *See id.*

On June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. --, 144 S. Ct. 2176 (2024). On July 30, 2024, the government notified the Court that it was still evaluating *Fischer*'s impact on the instant case, and the government moved to convert the August 28 sentencing to a status hearing. ECF No. 98. The Court granted that motion, *see* Minute

3

Order (Aug. 2, 2024), and also appointed the Federal Public Defender "as amicus curiae to assist the defendant with making arguments as to the impact of [*Fischer*] on Count One," Minute Order (Aug. 5, 2024).

At the August 28 hearing, the government announced its intent to proceed to trial on Count One. The Court set a briefing schedule and scheduled a bench trial for December 3, 2024. *See* Minute Order (Aug. 28, 2024).

On September 18, 2024, the government filed a Third Superseding Indictment charging the Defendant with violation of 18 U.S.C. § 1512(c). ECF No. 103. The charging language of the Third Superseding Indictment tracks the language of the statute, *i.e.*:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **STEPHANIE MARYLOU BAEZ** attempted to, and did, corruptly ***alter, destroy, mutilate, and conceal a record, document, and other object, with the intent to impair the object's integrity or availability for use in an official proceeding, and otherwise*** obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF No. 103 at 2 (emphasis added to identify language that has been added to the Third Superseding Indictment).[2] The additional charging language serves to expand the indictment to include both subsections of § 1512(c) based on the Supreme Court's guidance that subsection (c)(2) should be read "in light of the context of subsection (c)(1)." *Fischer*, 144 S. Ct. at 2189.

## II.     LEGAL STANDARD

An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*,

---

[2] Because the Third Superseding Indictment does not separately charge the Defendant with separate counts under § 1512(c)(1) and (c)(2), the government would request a special verdict form in any future jury trial on Count One to ensure unanimity on the specific offense(s) underlying a conviction. Because the Defendant in this case has elected to proceed by bench trial, ECF No. 96, the government does not anticipate that will be necessary here.

4

418 U.S. 87, 117 (1974).  This may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). A court's supervisory powers provide the authority to dismiss an indictment; however, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015). An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).  The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

### III.   ARGUMENT

**A.   The Superseding Indictment Sufficiently Alleges an Offense.**

The legal issue properly teed up for a motion to dismiss in this case is straightforward: the Defendant contends that Count One no longer states an offense in light of the *Fischer* decision. But the *Fischer* decision did not strike down 18 U.S.C. § 1512(c)(2), nor did it rewrite the text of the statute, which is mirrored in the charging language in Count One. *Compare* 18 U.S.C. § 1512(c) *with* ECF No. 103 at 2. The Third Superseding Indictment recites the statutory language of § 1512(c), and the Court's inquiry for purposes of a motion to dismiss can stop there.

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1) (emphasis added).

5

Indeed, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). A criminal defendant may move for dismissal based only on a defect in the indictment, such as a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See United States v. Bingert*, 605 F. Supp. 3d 111, 117 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, No. 21-CR-453 (JDB), 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes") (emphasis in original, quotation marks and citation omitted). A charging document may also fail to state an offense if the statutory provision at issue does not apply to the charged conduct or if the statutory provision at issue is unconstitutional. *See, e.g.*, *United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017) ("The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." (citation omitted)), vacated on other grounds, 898 F.3d 36 (D.C. Cir. 2018). In considering a motion to dismiss, a court must accept the allegations in the indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

Here, the Third Superseding Indictment sufficiently alleges a violation of 18 U.S.C. § 1512(c), and the Supreme Court's decision in *Fischer* is no bar to a trial on the merits. The text of Count One mirrors the statutory language defining the offense. *Compare* 18 U.S.C. § 1512(c) *with* ECF No. 103 at 1.[3] Beyond this, an assessment of the Defendant's conduct, and of the government's proof, will require a trial on the merits. Accordingly, there is no basis to dismiss Count One for failure to state an offense, even after *Fischer*, and the Court should allow trial to proceed on this count. *See Fischer* at 2194 (Jackson, J., concurring) ("And it might well be that Fischer's conduct, as alleged here, involved the impairment (or the attempted impairment) of the availability or integrity of things used during the January 6 proceeding").

### B. The Impact of *Fischer* Can Be Addressed through an Updated Legal Instruction.

To the extent that the Supreme Court's decision in *Fischer* alters the legal landscape of this prosecution, the appropriate remedy to address that change is not dismissal of Count One. The Supreme Court's decision requires only an updated legal instruction that reflects the *Fischer* Court's guidance.

In *Fischer*, the Supreme Court held that "to prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Fischer*, 144 S. Ct. at 2190. Given this decision, the factfinder—in this case,

---

[3] The Second Superseding Indictment was likewise sufficient, because it materially tracked the language of 18 U.S.C. § 1512(c)(2). *Compare* 18 U.S.C. § 1512(c)(2) *with* ECF No. 69 at 1. Nevertheless, the government has sought and obtained the Third Superseding Indictment more fully parroting the statutory language for the avoidance of any doubt. Additionally, such an indictment captures not only conduct that otherwise obstructs the proceeding, consistent with *Fischer*, but also recognizes the Defendant's attempt to alter, mutilate, conceal, or destroy the certificates at the heart of the certification.

the Court—must be instructed accordingly on the elements of the offense. The government proposes the following instruction as to the elements of Count One:

*First*, the defendant committed or attempted to commit an act that:

- altered, destroyed, mutilated, or concealed a record, document, or other thing to be used in an official proceeding; or

- otherwise impaired the integrity of or rendered unavailable such thing;

*Second*, the defendant intended to:

- alter, destroy, mutilate, or conceal a record, document, or other thing; or

- otherwise impair the integrity of or render such thing unavailable for use in an official proceeding; and

*Third*, the defendant acted corruptly.[4]

This articulation of the elements incorporates the Supreme Court's holding in *Fischer*. If the Court is presented with sufficient evidence, applies the elements as articulated here, and finds the

---

[4] This instruction differs from prior jury instructions which did not focus on impairing the integrity of, or rendering unavailable, records, documents, or other things to be used in an official proceeding. The prior instruction articulated the elements as follows:

> First, the defendant attempted to or did obstruct or impede an official proceeding.
> Second, the defendant acted with the intent to obstruct or impede an official proceeding.
> Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.
> Fourth, the defendant acted corruptly.

*E.g.*, *United States v. Gunby*, 21-cr-626-PLF, ECF No. 114 at 23. The balance of the prior § 1512(c)(2) instruction is not affected by *Fischer* and need not change.

Defendant guilty, the entry of a guilty verdict would fall squarely within the limits of § 1512(c) as established by the *Fischer* Court.

      **C.**    **The Government's Proof Will Establish a Violation of Section 1512 Under the Standard Established in *Fischer*.**

As Justice Jackson suggested in her concurrence in *Fischer*, there may be January 6 cases that satisfy the standard established in that case. *Fischer*, 144 S. Ct. at 2194. The government believes this to be one of those cases. Thus, while not necessary at this stage to withstand a motion to dismiss, the government takes this opportunity to preview for the Court the evidence that demonstrates the Defendant's guilt in this case.

      1.    *Defendant Attempted to, and Did, Impair the Availability or Integrity of Electoral College Ballots.*

The government expects the evidence at trial to show beyond a reasonable doubt that Ms. Baez "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Fischer*, 144 S. Ct. at 2190. The following synopsis is not a full proffer of the evidence or arguments that the government will present at trial, but in the spirit of a trial brief, the government offers the following to orient the Court to certain of the evidence in this case.

Following the 2020 presidential election, the Defendant routinely used the social media platform Instagram to express her disappointment in the election results and discuss Congress's planned certification of the Electoral College vote on January 6, 2021. The Defendant's Instagram posts reflect a sophisticated understanding of the certification process, including the role of ballots. In fact, the Twelfth Amendment to the United States Constitution specifies, among other things, that electors shall transmit sealed certificates of the ballots to the Capitol, and "the President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates the votes shall then be counted." U.S. Const. amend. XII. The Defendant's posts reflect a

9

sophisticated understanding of the procedures dictated by the Twelfth Amendment. For example, on November 18, 2020—less than a fortnight after most media outlets called the election for Joe Biden—the Defendant commented on another Instagram user's post which read: "I am still BAFFLED at the fact that no one is talking about this! The 12th Amendment is looking more & more likely to be the solution to continued problems with our election, and it's time we did our homework." The Defendant responded: "Literally why I'm not worried, i [sic] fall asleep every night dreaming of the 12th amendment lol." Ex. 1.

In December 2020, the Defendant resolved to go to Washington, D.C. on January 6. Her Instagram posts describing those plans evinced a specific intent to interfere with the certification, including by preventing the count of the sealed certificates containing the Electoral College ballots. On December 26, she told a friend "Im [sic] so going to DC on the 6th!" When the friend asked, "What's happening on the 6th again," the Defendant responded, "They are finalizing the electoral! This when ***they can switch them for Trump***." Ex. 2 (emphasis added). On December 27, the Defendant posted an Instagram Story in which she stated, "See you in D.C. on the 6th!" alongside a re-post of Tweets from the polling company Rasmussen Reports that opened with a quote from Soviet dictator Joseph Stalin: "Those who cast the votes decide nothing. Those who count the votes decide everything." Ex. 3. The Tweets went on to state: "Come January 6, 2021, Vice President Mike Pence will be presented with the ***sealed certificates containing the ballots*** of the presidential electors. At that moment, the Presidency will be in his hands. And there is nothing stopping Pence, under the (plenary and unappealable) authority vested in him as President of the Senate, from ***declining to open and count the certificates*** from the six disputed states." *Id.* (emphases added).

10

On January 6, 2021, the Defendant put her intent into action. Defendant continued to use her Instagram account frequently throughout the day, both to consume news about the events of the day and to document her own participation in the riot at the Capitol. At 2:31 p.m., before she entered the Capitol Building, the Defendant posted images on Instagram of rioters inside the building with the text, "Protestors outside Senate chamber, have breached chamber." Ex. 4.[5] Just 25 minutes later, at 2:56 p.m., the Defendant entered the building herself for the first time, through the Parliamentarian Door on the Senate side of the building—when she knew other rioters were accessing the Senate Chamber.

At approximately 3:01 p.m., uniformed police officers pushed rioters, including the Defendant, out of that hallway and back into the Northwest Plaza of Capitol grounds. Undeterred by her expulsion, the Defendant reentered the Capitol through the Senate Wing Door at approximately 3:07 p.m. through blaring alarms. She proceeded to the Crypt, where she remained until approximately 3:34 p.m., when she was expelled from the Capitol for the second time. Just fifteen minutes later, at 3:47 p.m., she posted to her Instagram story a news post with the headline, "Protestors storm Capitol, stopping electoral vote count, House and Senate evacuated." She added her own text to the post: "Boom!" Ex. 5.

The Defendant's expression of celebration at the news that the electoral vote count had been stopped demonstrates her intent to prevent ballots from being counted. The Defendant's association between storming the Capitol and stopping the vote count reflects the Defendant's appreciation (and celebration) of the role that storming the Capitol played in interfering with the procedures called for in the Twelfth Amendment, *i.e.*, the requirement that Vice President Pence

---

[5] Rioters did not enter the Senate chambers until approximately ten minutes later, at 2:42 p.m. But Defendant's belief, however mistaken, that they had breached the chamber at that point informs her intent to facilitate those rioters' efforts to impair ballots or other documents.

11

open and count the certificates. Moreover, the Defendant specifically believed—prior to her entry into the Capitol—that rioters had breached the Senate Chamber. A factfinder can readily conclude that the Defendant, based on her knowledge and expressions of intent, expected that her and other rioters' rampaging through the Capitol building on January 6 would enable the Defendant or aid and abet other rioters who accessed the chamber to destroy, alter, or remove ballots, and paving the way for the introduction of substitute—false—ballots for Trump. Moreover, the Defendant's social media posts on the evening of January 6 and in the wee hours of January 7 show that she understood that her presence in the building had successfully, if temporarily, prevented the count of ballots. *See* Ex. 6 ("We will do all we have, to keep delaying this FAKE certification!"); Ex. 7 ("People are upset, but do they realize we stopped the electoral count?"); Ex. 8 ("I've never felt more proud. We delayed the electoral count! . . . I feel like George Washington crossing the Delaware. A lot of people are switching their flights to stay longer! Just keep taking the capitol when they try to certify anything."). In short, the Defendant understood that physical certificates were constitutionally required to be counted to certify the election, and the Defendant understood that her actions had impacted the availability of those physical certificates, whether by destruction, alteration, or removal of those certificates from the chamber, or the introduction of substitute certificates instead.[6]

        2.    *Defendant's Arguments to the Contrary Are Unavailing.*

In her motion to dismiss, the Defendant presents scattershot arguments why, in her view, "the factual allegations canot [sic] support conviction under corrected interpretation the statute." Mot. at 5. These arguments are not properly considered in a motion to dismiss because they raise

---

[6] Under the *Fischer* framework, "it is possible to violate (c)(2) by creating false evidence—rather than altering incriminating evidence." 144 S. Ct. at 2186 (citing *United States v. Reich*, 479 F.3d 179, 185-87 (7th Cir. 2007)).

disputed factual issues that require trial on the merits. *See* Section I.A *supra*. But in any case, they are unconvincing.

First, the Defendant relies heavily on a proposed Statement of Offense that the government supplied as part of unsuccessful plea negotiations in October 2021—*before* Defendant was charged under § 1512(c)(2)—that did not result in a guilty plea. *See* Mot. at 5-7. That 13-paragraph Statement of Offense was intended to accompany a guilty plea to a single count of Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). The Defendant contends that because that draft Statement of Offense included the statement, "The purpose of the Baez's trip to Washington, D.C., was to protest Congress' certification of the Electoral College," the government has admitted that Baez's purpose was to exercise her rights under the First Amendment, and "judicial estoppel would require the DOJ now to explain any material change from those statements." Mot. at 6. But judicial estoppel "is used to a preclude a party from taking a position that is inconsistent with one *successfully* asserted by the same party in a prior proceeding." *United States Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 477 (D.C. Cir. 1993) (emphasis added). Accordingly, statements made in *failed* plea negotiations that were never even put before the Court do not give rise to judicial estoppel. *Cf. United States v. Flores*, 912 F.3d 613, 618-19 (D.C. Cir. 2019) (holding that judicial estoppel does not apply to guidelines calculations in a plea agreement where they did not result in a "favorable judicial decision"). And in any case, even if the government were bound by a statement that Baez intended to "protest" the certification, a person may act with more than one intent, and a factfinder at trial can properly find that the Defendant acted with corrupt intent even if they also find she acted, in part, for legitimate reasons. *E.g.*, *United States v. Warner* et al., No. 21-cr-392-RCL, 11/7/23 Tr. at 22 (instructing jury that a "defendant's unlawful intent to obstruct an official

proceeding is not negated by the simultaneous presence of another purpose for his conduct"); *see United States v. Bryant*, 655 F.3d 232, 245-46 (3d Cir. 2011) (upholding similar jury instruction); *United States v. Coyne*, 4 F.3d 100, 113 (2nd Cir. 1993).

Second, the Defendant contends that "[a]s a matter of law, if not physics, Baez conclusively **cannot be guilty** of 18 U.S.C. § 1512(c)(2)" because she entered the building at 2:56 p.m., *after* the Joint Session of Congress was called into recess at 2:13 p.m. Mot. at 7. But Defendant herself acknowledged in the aftermath of January 6 that the continued presence of rioters in the building "delayed the electoral count" until proceedings could safely resume. *See* Ex. 8. The Defendant complains that "the Government has never even attempted to prove that any Defendant delayed the resumption by even one second" because it has not proffered evidence of how long it would "normally" take law enforcement "to look everywhere in the Capitol and direct them to anything suspicious." Mot. at 10. That is a task for trial, but in any case, the factfinder can rely on reasonable inferences—supported by the Defendant's quite explicit post-January 6 social media posts—to conclude that the continued presence of rioters, including in the chamber, did result making the physical certificates unavailable for use during the official proceeding. And a factfinder can conclude, based on Defendant's expressions of knowledge and intent, that the Defendant knowingly engaged in corrupt actions to impact the availability of the certificates during the official proceeding. Finally, and perhaps most importantly, the Defendant ignores the fact that the statute criminalizes—and the indictment charges—attempts to commit the crime too. A reasonable fact finder could conclude that the defendant intended to either alter, destroy, mutilate, conceal, or otherwise impair the integrity of or render unavailable the ballots in question, and, coupled with that intent, the Defendant took a substantial step when she illegally occupied the U.S. Capitol during the proceeding.

Third, the Defendant baselessly accuses the government of violating its obligations under *Brady v. Maryland* by allegedly failing to turn over records from the United States Capitol Police documenting the decision to call the Joint Session of Congress into recess on January 6, 2021. Mot. at 7-9. Although it is unclear what specific documents the Defendant is seeking, she appears to allege that the government has withheld contemporaneous communications from the Capitol Police regarding when exactly the decision was made to call the Joint Session into recess and based on what threat. *See id.* at 8. As the government has previously explained, it has certified that it requested "all records form the U.S. Capitol Police that reflect any communications made to the Presiding Officer of each House, and any other involved persons, that led to the decision to recess the Certification"; it has produced FBI memoranda of Capitol Police officers and professional staff on this topic; and it has produced the Capitol Police's radio runs, along with relevant Capitol Police text messages and emails. *United States v. Rhodes* et al., No. 22-cr-15-APM, ECF No. 272, at 10. And as courts in this district have recognized, defendants have failed articulate how information about the timing and reasons behind the recess are exculpatory, because "Defendants are accused of interfering with the Joint Session at the time they entered and remained in the building because their entry and activities that day prevented Congress from carrying out its constitutional and statutory responsibilities. That others were the original cause for Congress's decision to recess or also kept Congress from reconvening is beside the point." *United States v. Rhodes* et al., No. 22-cr-15-APM, ECF No. 294, at 9 (denying motion to compel discovery). *See also, e.g.*, *United States v. Nichols*, 2023 WL 6809937, at *9 (D.D.C. Oct. 16, 2023) (requests for communications "concerning any reasons for Congress to recess on January 6, 2021" and "information concerning the reasons it took Congress several hours to resume the joint session" "fail under both *Brady* and Rule 16," including because "it cannot be a pure coincidence that members of Congress evacuated

15

the House and Senate chambers while rioters were storming the halls of Congress."); *United States v. Thomas*, No. 21-cr-552-DLF, Minute Entry (Mar. 20, 2023) (denying motion to compel, *inter alia*, disclosure of information related to alternative causes of Congress's recess on January 6, *see* ECF No. 64).

Fourth, the Defendant dives deep into the weeds of the Electoral Count Act to support a strained assertion that "it is not possible to impair the availability of the Electoral College ballots and certification documents and any other records sent from the States to the Federal Government," because the sealed certificates containing the ballots present in the Capitol on January 6 were not the only original sets of ballots, and the multiple original sets provided for in the Electoral Count Act "are geographically distributed," including to the Federal Records Center located in Suitland, Maryland. Mot. at 20-21. But the Defendant does not explain how the presence of "backup" copies of electoral ballots in a location off Capitol Grounds would make it impossible for a defendant to violate either prong of 18 U.S.C. § 1512(c) by "impair[ing] the availability or integrity for use in an official proceeding" of ballots, "or ***attempting to do so***." *Fischer*, 144 S. Ct. at 2190 (emphasis added). This is unsurprising, given 18 U.S.C. § 1512(c) imposes no requirement that the "record, document, or other object" at issue be an original or sole copy. The Defendant seems to suggest that even if she personally had located and destroyed a sealed certificate containing an electoral ballot inside the U.S. Capitol, that she would not face criminal liability because she did not successfully destroy all six original sets. That is plainly not the case considering that § 1512(c) criminalizes attempt.

        **D.**      **This Court Has Already Rejected Defendant's Remaining Arguments.**

The Defendant's motion also raises several arguments that do not deal directly with the *Fischer* decision: that the term "corruptly," as used in § 1512, is void for vagueness, Mot. at 4, 21-24; that the statute is overbroad due to First Amendment concerns, *id.* at 4, 24-27; and that

"corruptly" must mean something different from "unlawfully," *id.* at 27-28. These arguments do no more than reframe and rehash the arguments that the Defendant raised in her prior motion to dismiss, which this Court denied. ECF No. 93. The Court should reach the same conclusion here.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion to Dismiss Count One.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Monika (Isia) Jasiewicz*
Monika (Isia) Jasiewicz
Assistant United States Attorney
D.C. Bar No. 102491
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
(202) 714-6446
isia.jasiewicz@usdoj.gov

*/s/ Samuel White*
Samuel White
Assistant United States Attorney
NC Bar # 44908
601 D Street NW
Washington, DC 20530
(202) 431-4453
samuel.white@usdoj.gov