UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-cr-507 (PLF) |
| | : | |
| STEPHANIE MARYLOU BAEZ, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SURREPLY IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNT I OF THE SUPERSEDING INDICTMENT
ALLEGING VIOLATION OF 18 U.S.C. § 1512(C)(2)**

Pursuant to this Court's August 28, 2024 Minute Order, the government hereby responds to Defendant Stephanie Baez ("Defendant")'s Reply in Support of her Motion to Dismiss Count One, ECF No. 109 ("Reply"). The Defendant's Reply presents scattershot arguments attacking the sufficiency of the government's anticipated evidence under the standard for obstruction for an official proceeding in violation of 18 U.S.C. § 1512(c), as articulated in *Fischer v. United States*, 144 S. Ct. 2176 (2024). But, as another judge in this District recently stated while denying a motion to dismiss a post-*Fischer* § 1512(c) count in another January 6 case, "the sufficiency of the Government's evidence is not a proper issue for this Court to resolve in the context of a pretrial motion to dismiss an indictment because that issue cannot be 'determined without a trial on the merits.'" *United States v. Kelley*, No. 22-cr-408 (CKK), ECF No. 69 at 7 (quoting Fed. R. Crim. P. 12(b)(3)). This Court should hold the same and permit this case to proceed to trial on the Third Superseding Indictment.

**I.   The Third Superseding Indictment Is Legally Sufficient.**

An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). This may be accomplished by "echo[ing] the operative statutory text while

also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Because Count One of the Third Superseding Indictment does exactly that, *compare* ECF No. 103 at 1 *with* 18 U.S.C. § 1512(c), the Court's inquiry can stop there, and this Court should deny the Defendant's motion to dismiss.

Judge Kollar-Kotelly's recent decision denying a post-*Fischer* motion to dismiss an identically phrased § 1512(c) count in *United States v. Kelley* is instructive. No. 22-cr-408 (CKK), ECF No. 69. There, the Court held that "[b]y both reciting all the elements of an offense under 18 U.S.C. § 1512(c)—as authoritatively interpreted in *Fischer*—and specifying the place, date, and purpose of the alleged offense," the challenged count "both gives [the defendant] fair notice of the charge against which he must defend himself and protects him against later being charged for the same offense." *Id.* at 5. The Court went on to explain that "it is not necessary for the indictment to state exactly *how* his conduct satisfies each element of the offense, such as by specifying which actions he took, aided, or attempted 'with the intent to impair the integrity or availability' of a 'record, document, or other object' to be used in Congress's certification of the Electoral College vote." *Id.* at 6 (quoting Superseding Indictment, ECF No. 52, at 2). On the contrary, "it is sufficient that [the challenged count] alleges all the elements of the offense and provides enough contextual detail to afford [the defendant] fair notice and ample protection from double jeopardy." *Id.* The same is true of Count One in this case, which is identically phrased, tracking the language of the statute and specifying that the conduct at issue occurred "[o]n or about January 6, 2021, within the District of Columbia and elsewhere" and was intended to interfere with "Congress's certification of the Electoral College vote." ECF No. 103 at 1.

The Defendant attempts to avoid this inevitable conclusion by presenting a strained argument that "the charging language of the Third Superseding Indictment *DOES NOT* track the

2

language of the statute" because it replaces statutory text phrased in the disjunctive (i.e., "or") with charging language phrased in the conjunctive ("and"). Reply at 6-8. But "[i]t is 'well established that that if a criminal statute disjunctively lists multiple acts which constitute violations, the prosecution may in a single count of an indictment . . . charge several or all of such acts in the conjunctive.'" *United States v. Warnagiris*, 699 F. Supp. 3d 31, 55 (D.D.C. 2023) (quoting *United States v. Brown*, 504 F.3d 99, 104 (D.C. Cir. 2007) (internal quotations omitted)). Indeed, the D.C. Circuit has held that "[t]he correct method of pleading alternative means of committing a single crime is to allege the means in the conjunctive," *United States v. Lemire*, 720 F.2d 1327, 1345 (D.C. Cir. 1983), precisely because the alternative, charging "the offense in the disjunctive (as it appears in the strict language of the statute), that the accused did one thing 'or' the other, would make the indictment bad for uncertainty," *Joyce v. United States*, 454 F.2d 971, 976 (D.C. Cir. 1971). "And, as the Supreme Court has repeatedly held, the government is entitled to prove criminal acts in the disjunctive, notwithstanding that the indictment charges them in the conjunctive." *United States v. Coughlin*, 610 F.3d 89, 106-107 (D.C. Cir 2010) (collecting cases). The Defendant is therefore wrong when she suggests that, to prevail on Count One at trial, the government would have to prove beyond a reasonable doubt that she committed every possible iteration of the offense described in § 1512(c), or that "it is not sufficient that Baez 'attempted to' alter, destroy, mutilate and conceal a record, document and other object." Reply at 7. On the contrary, the government can prove a violation of § 1512(c) on an attempt theory, or even an aiding and abetting theory, because Count One charges violation of "18 U.S.C. §§ 1512(c) and 2," ECF No. 103 at 1. Far from "remov[ing] mere attempt from possibility," Reply at 7, then, the wording of the Third Superseding Indictment sufficiently and appropriately charges the Defendant with violating § 1512(c), and this Court should deny the motion to dismiss.

3

## II.     The Defendant's Arguments in Reply Do Not Support Dismissal.

Because Count One tracks the language of § 1512(c) and provides sufficient detail to put the Defendant on notice of her crime, this Court can and should deny the motion to dismiss without addressing the Defendant's myriad other arguments. For the sake of completeness, however, the government notes that none of the arguments presented in Defendant's reply brief bars a conviction under § 1512(c) after a trial on the merits in this case.

First, the Defendant resorts to semantics when she suggests that "there is no 'certification of the Electoral College'" under the Twelfth Amendment or 3 U.S.C. §§ 15-18. Reply at 8. If the Defendant means to suggest that because "Congress does not *certify* anything with regard to the Electoral College," *id.* (emphasis added), but rather counts votes that individual states have certified, the Joint Session of Congress on January 6, 2021 was not an "official proceeding" for the purposes of 18 U.S.C. § 1512(c), this Circuit's precedent forecloses that argument, and the Supreme Court's decision in *Fischer* did not disturb that conclusion. *See Fischer v. United States*, 144 S. Ct. 2176, 2195(Barrett, J., dissenting) ("The Court does not dispute that Congress's joint session qualifies as an 'official proceeding[.]'"). Likewise, to the extent that the Defendant suggests that because "[t]he Electoral College documents are *not* evidence of whether the election in a state was flawed," Reply at 9, they do not qualify under *Fischer* as "records, documents, objects, or . . . other things used in [an official] proceeding," *Fischer* does not support that conclusion, either. *See* 144 S. Ct. at 2194 (Jackson, J., concurring) (the official proceeding of the Joint Session "plainly used certain records, documents, or object—including, among others, those relating to the electoral votes themselves. . . . And it might well be that Fischer's conduct, as alleged here, involved the impairment (or the attempted impairment) of the availability or integrity of things used during the January 6 proceeding"). The D.C. Circuit ruled that the January 6

4

certification proceeding was an official proceeding and listed the required actions that Congress did as part of that proceeding, including "read[ing] and list[ing] the votes." *United States v. Fischer*, 64 F.4th 329, 343 (D.C. Cir. 2023). This legal interpretation of the official proceeding remains undisturbed. The "votes" are, of course, the electoral ballots themselves, which in turn are tangible documents that are submitted to the deciding tribunal (here, Congress) and considered in Congress's vote to certify the results of the presidential election. Thus, under any interpretation, those ballots represent documents or information establishing certain facts—the electors' votes of each state—used in the course of a legal investigation to determine which candidate won the presidential election. Though the official proceeding on January 6 is not a traditional court proceeding, it still involves a proceeding by which Members of Congress, acting as triers of fact, consider whether to do or not do something as a result of what was presented to them, namely, certify the election based on the electors' votes and declare the next president. The ballots are documents considered by the factfinder in the course of this proceeding, and therefore meets the definition of "evidence." Indeed, in a recent trial, *United States v. Edward Kelley*, No. 22-cr-408 (CKK), the government presented evidence that the ballots were items to be physically examined during the proceeding.

The Defendant also suggests that she could not have violated § 1512(c) because the Electoral College certificates "remained under official control at all times, available for use—and in fact used—during the certification proceeding." Reply at 10; *see also id.* at 11 ("the factual allegations by the Government reflect activities that were consistent with the ECA process rather than obstacle to it."). The government disputes the Defendant's contention. Congress's ability to maintain "official control" of the ballots during the riot does not change the fact that the forced removal of the ballots from the Chamber impaired their availability for use in the proceeding *inside*

*the Chamber*. But, even on the Defendant's own flawed theory, as explained above, the government can prove a violation of § 1512(c) at trial under an attempt theory. Indeed, taken to its ultimate conclusion, the Defendant's theory of the case would mean that no participant in the January 6 riot could possibly be guilty of obstruction of the certification because the certification ultimately happened. That is plainly not what the Supreme Court held in *Fischer*. *See Fischer*, 144 S. Ct. at 2194 (Jackson, J., concurring).

The Defendant also seems to assert a First Amendment defense, arguing that her statements on Instagram are constitutionally protected speech. Reply at 11-15. But the First Amendment "simply 'does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" *United States v. Ring*, 706 F.3d 460, 471 (D.C. Cir. 2013) (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)); *see also United States v. Chansley*, 525 F. Supp. 3d 151, 164 (D.D.C. 2021) (even if statements are constitutionally protected, "the First Amendment does not prohibit their consideration as evidence of motive or intent"). The Defendant stands charged for her unlawful actions on January 6, and the Defendant's statements are evidence of the intent behind her actions, which included entering the Capitol building without authorization not once, but twice, and refusing to leave until forced to do so by police. The Defendant's statements can certainly be offered as part of the government's case-in-chief as proof of the Defendant's knowledge of the certification, her intent to stop it, and her intent to impair the availability and integrity of documents, records, objects, and other things necessary to the proceeding.

The Defendant also repeats her claim that "it is impossible by the laws of physics" for her to have obstructed the Joint Session because she first entered the building after Congress was called into recess. Reply at 18. But the Defendant offers no response to the government's proffered

6

evidence that she herself admitted to having "delayed the electoral count" through her continued presence in the building, ECF No. 106 at 14, or the argument that Congress's recess on January 6 was necessarily extended by the presence of the Defendant and other rioters and the extensive time required to subsequently clear all rioters from the Capitol Grounds.

Finally, the Defendant's baseless accusation that the government has violated its *Brady* obligations by refusing to produce evidence of alternative causes for the disruption of the certification proceeds from a false premise. As an initial matter, the United States Attorney (i.e., the executive branch) does not "represent" the legislative branch, nor is the legislative branch (i.e., Congress) part of the prosecution team. Reply at 21. Nor is it accurate for the Defendant to claim that the U.S. Capitol Police control Joint Sessions (or any session) of Congress—a function left to the people's elected representatives. *See id.* ("The U.S. Capitol Police will not disclose the most crucial, most central issue of January 6, documentation of why and when recess and evacuation of the Joint Session of Congress was decided upon."). It is also not true that evidence of "**_THE_** reason that Congress in fact recessed on January 6, 2021, <u>*before she arrived*</u>," would automatically be "flat-out exculpatory evidence-proof of actual innocence," as the Defendant asserts. *Id.* at 20. As the Defendant well knows, the government has produced reams of multimedia and documentary evidence showing the suspension of proceedings prior to her arrival, the efforts of USCP and other law enforcement to secure the building, and the resumption of proceedings after rioters had been cleared from the building. The government has produced the purported "exculpatory" evidence concerning the reason for suspension of the proceedings,[1] and the Defendant is welcome to argue at trial, as she does now, that "Baez arriving at 2:56 PM was not **_THE_** reason nor related in any

---

[1] To cite just one example, the government has produced in discovery video footage from inside the Senate Chamber at 2:13 p.m. when Senator Lankford, who was addressing the Senate, is advised by an aid that "protestors are in the building" as the Senate goes into recess.

way to **_THE_** reason the Congress recessed starting at 2:13 PM." *Id.* Her unfounded claims that the government is withholding some unspecified evidence of an unknown cause for Congress's recess do not entitle her to discovery beyond what has already been provided, much less compel dismissal of the indictment. *See* ECF No. 106 at 14-15.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion to dismiss and allow this case to proceed to trial on the Third Superseding Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Monika (Isia) Jasiewicz*
Monika (Isia) Jasiewicz
Assistant United States Attorney
D.C. Bar No. 102491
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
(202) 714-6446
isia.jasiewicz@usdoj.gov

*/s/ Samuel White*
Samuel White
Assistant United States Attorney
NC Bar # 44908
601 D Street NW
Washington, DC 20530
(202) 431-4453
samuel.white@usdoj.gov