UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| STEPHANIE MARYLOU BAEZ, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Criminal No. 21-0507 (PLF)

OPINION AND ORDER

Defendant Stephanie Marylou Baez is charged with violations of 18 U.S.C.

§§ 1512(c) and 2. See Third Superseding Indictment [Dkt. No. 103]; see also Memorandum

Opinion and Order (D.D.C. Nov. 18, 2024) ("MTD Opinion") [Dkt. No. 119]. A bench trial in

this case is scheduled to begin on December 3, 2024. See Third Amended Scheduling Order

[Dkt. No. 108]. In anticipation of trial, Ms. Baez has filed three motions seeking to suppress or

limit the kinds of evidence the government can introduce at trial. The Court has carefully

considered the parties' written submission and the applicable authorities. For the following

reasons, the Court denies Ms. Baez's motions.[1]

---

[1]    The papers reviewed by the Court in connection with this matter include:
Defendant's Motion in Limine to Preclude Defendant's Statements at Misdemeanor Change-of-
Plea Hearing ("Suppress Plea Stmt. Mem.") [Dkt. No. 111]; Defendant Stephanie Marylou
Baez's Motion to Suppress Interview with Agents of Federal Bureau of Investigation and Motion
in Limine with Included Memorandum of Law ("Suppress Law Enforcement Stmt. Mem.") [Dkt.
No. 112]; Defendant Stephanie Marylou Baez's Motions in Limine with Included Memorandum
of Law ("Omnibus Mot. Mem.") [Dkt. No. 113]; Government's Opposition to Defendant's
Motions in Limine ("Omnibus Mot. Opp.") [Dkt. No. 116]; Government's Opposition to
Defendant's Motion in Limine to Preclude Defendant's Statements at Misdemeanor Change of
Plea Hearing ("Suppress Plea Stmt. Opp.") [Dkt. No. 117]; Government's Opposition to
Defendant's Motion to Suppress Interview with Agents of Federal Bureau of Investigation
("Suppress Law Enforcement Stmt. Opp.") [Dkt. No. 118]; Suppress Law Enforcement Stmt.

## I.  LEGAL FRAMEWORK

Courts evaluate the admissibility of evidence on a pretrial motion in limine according to the framework established by Rules 401 and 402 of the Federal Rules of Evidence. See Daniels v. District of Columbia, 15 F. Supp. 3d 62, 66-67 (D.D.C. 2014); see also United States v. Sutton, 636 F. Supp. 3d 179, 190 (D.D.C. 2022); Democracy Partners, LLC v. Project Veritas Action Fund, Civil Action No. 17-1047, 2022 WL 3334689, at *3 (D.D.C. Aug. 12, 2022); accord United States v. Warnagiris, Crim. No. 21-0382 (PLF), 2023 WL 6973213, at *2 (D.D.C. Oct. 23, 2023). First, "the Court must assess whether the evidence is relevant." Daniels v. District of Columbia, 15 F. Supp. 3d at 66. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Relevant evidence is admissible" unless an applicable authority provides otherwise, whereas "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. The proponent of admitting an item of evidence has the initial burden of establishing relevance. See Dowling v. United States, 493 U.S. 342, 351 n.3 (1990); United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

Even if the proponent of an item of evidence can demonstrate its relevance, however, a court may still conclude that it is inadmissible if "the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court" provide for its exclusion. FED. R. EVID. 402. Rule 403 of the Federal Rules of Evidence states that a court may "exclude relevant evidence if its probative value is substantially outweighed by

---

Opp., Exhibit 2 ("Interview Transcript") [Dkt. No. 118-1]; and Suppress Law Enforcement Stmt. Opp., Exhibit 3 ("Text Log") [Dkt. No. 118-2].

a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## II. DISCUSSION

Ms. Baez moves to preclude or limit the government from presenting certain evidence at trial. The bench trial will relate to the single felony charge brought against Ms. Baez for alleged violations of 18 U.S.C. §§ 1512(c) and 2. See Third Superseding Indictment. Section 1512(c) provides:

> (c) Whoever corruptly –
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).

At the onset it is worth highlighting the breadth of evidence covered by Ms. Baez's motions. Across her three motions, Ms. Baez seeks to exclude essentially all background information related to the events that occurred at the Capitol on January 6, 2021, see Omnibus Mot. Mem., all of the statements she made in connection with her plea hearing, see Suppress Plea Stmt. Mem., and all statements she made to law enforcement. See Suppress Law Enforcement Stmt. Mem. The expansiveness of her requests results in the parties somewhat skirting the difficult issue of determining what evidence is relevant for purposes of proving a

Section 1512(c) violation – a question of even greater significance given the Supreme Court's recent decision in Fischer v. United States, 603 U.S. 480 (2024).

        The fact that the case is proceeding to a bench trial, however, mitigates some of the problems presented in Ms. Baez's sweeping motions.  The balancing test outlined in Rule 403 "'has a highly limited application, if any at all' in a bench trial." United States v. Bray, Crim. No. 23-306 (RC), 2024 WL 3723942, at *2 (D.D.C. Aug. 8, 2024) (quoting United States v. Fitzsimons, 605 F. Supp. 3d 92, 100 n.6 (D.D.C. 2022)).  This is particularly the case where the Rule 403 challenge is premised on "unfair prejudice," with some courts going as far as deeming Rule 403 a "useless procedure" in the context of a bench trial.  United States v. Griffith, Crim. No. 21-244-2 (CKK), 2023 WL 2043223, at *2 (D.D.C. Feb. 16, 2023) (quoting Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981)).  The Court therefore need not define the precise scope of relevance within the broad categories of evidence Ms. Baez seeks to exclude both because it is clear – and mostly undisputed – that at least some, if not most, of the evidence in these categories is relevant and because of the more limited role Rule 403 plays in cases proceeding to a bench trial.  See United States v. Griffith, 2023 WL 2043223, at *2. With this in mind, the Court turns to Ms. Baez's specific requests.

*A.  Ms. Baez's Omnibus Motion*

        Ms. Baez first seeks to exclude categories of evidence that provide background on the events that occurred at the Capitol on January 6, 2021.  See Omnibus Mot. Mem.  In particular, Ms. Baez moves to exclude evidence related to:  (1) the total number of individuals present at the Capitol on January 6, 2021, see id. at 4; (2) the conduct of other individuals at the Capitol on January 6, see id. at 10-13; and (3) the reason Congress recessed its Joint Session. See id. at 4.  The cursory arguments put forward on these points ignore the numerous court

decisions – including decisions of the undersigned – that have determined that a defendant's conduct on January 6 "did not occur in a vacuum, and thus the actions of others may be relevant, and indeed necessary, to the government's case against" them. See United States v. Gunby, Crim. No. 21-0626 (PLF), 2023 WL 4993483, at *5 (D.D.C. Aug. 4, 2023); see also United States v. Rhine, Crim. No. 21-0687 (RC), 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023) ("[P]lacing [defendant's] actions in the context of everything else that the Capitol Police were dealing with that day to try to maintain control is relevant to the jury's assessment of whether Congress was in fact disrupted.") (citation and quotation marks omitted). While the government is not unlimited in offering evidence on the surrounding circumstances of January 6, the categorical bar that Ms. Baez suggests is inappropriate, especially in light of the "highly limited application" of Rule 403 as discussed above. See United States v. Bray, 2024 WL 3723942, at *2. As a final note, Ms. Baez is correct that that she cannot be convicted on the basis of the "collective guilt" of other individuals present at the Capitol on January 6, 2021. See Omnibus Mot. Mem. at 10-13. But this principle of criminal law does not impact the relevance of other individuals' actions to the government's case. See United States v. Gunby, 2023 WL 4993483, at *5 (concluding that the actions of other individuals on January 6, 2021, are relevant notwithstanding the fact that the defendant "cannot be punished for offenses committed by others").

Second, Ms. Baez argues that the government should not be permitted to offer "evidence or argument" pertaining to "any delay of the resumption of the Joint Session of Congress" because Ms. Baez left four hours before Congress resumed the Joint Session. See Omnibus Mot. Mem. at 4. As the Court stated in its recent decision on Ms. Baez's motion to dismiss, "this argument ignores the fact that [her] presence in the Capitol may have served to

delay the resumption of the Joint Session." MTD Opinion at 8. Evidence of Ms. Baez's

interference with Congress's Joint Session – including any delay she may have contributed

to – is undoubtably relevant to the issue of whether and how she "impaired the availability or

integrity for use in an official proceeding of records, documents, objects, or . . . other things used

in the proceeding, or attempted to do so." Fischer v. United States, 603 U.S. at 498.

        Third, Ms. Baez argues that the government should not be allowed to use the term

"certification" to describe the purpose of Congress's Joint Session on January 6, 2021, because

"Congress certifies nothing." See Omnibus Mot. Mem. at 5. If Ms. Baez maintains that the term

"certification" should not be used because it could wrongly suggest that Congress's Joint Session

was an "official proceeding," the Court has already rejected this argument in its recent decision

on Ms. Baez's motion to dismiss. See MTD Opinion at 7. If, however, Ms. Baez seeks only to

prevent the government from using the term "certification" based on potential prejudice that

would stem from its use, the Court is confident that any such prejudice will be immaterial over

the course of the bench trial. See United States v. Griffith, 2023 WL 2043223, at *3 (denying

motion in limine related to the use of allegedly prejudicial terms because "excluding relevant

evidence on the basis of unfair prejudice [in a bench trial] is a useless procedure") (citation

omitted).

        Fourth, Ms. Baez argues that the government should be prohibited from offering

"false and inflammatory statements about deaths that did not occur." Omnibus Mot. Mem. at 5

(capitalization omitted). In particular, Ms. Baez argues that the government should not be

allowed to offer evidence on the "lie" that "five police officers died on or as a direct result of

events on January 6, 2021." Id. at 7. The government states that it does not intend to offer any

such evidence, see Omnibus Mot. Opp. at 6, and thus Ms. Baez's request is moot.

Fifth, Ms. Baez argues that the government should not be allowed to argue that "seeing other people commit a crime . . . make[s] one guilty of that crime." See Omnibus Mot. Mem. at 13. The Court has previously addressed this argument, concluding that "[a]lthough merely observing the conduct of others is insufficient by itself to establish criminal liability for any of the offenses with which [the defendant] is charged, the government may introduce evidence about [the defendant's] observations of others' actions to establish his mental state when [the defendant] took certain actions." United States v. Gunby, 2023 WL 4993483, at *4. Ms. Baez's request therefore is denied since she provides no reason to depart from this earlier conclusion.

Finally, Ms. Baez argues that the government should be prohibited from offering evidence from her social media accounts since permitting such evidence would violate her First Amendment rights. See Omnibus Mot. Mem. at 14.[2] "[T]he Supreme Court has made clear that the [First] Amendment simply 'does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" United States v. Ring, 706 F.3d 460, 471 (D.C. Cir. 2013) (quoting Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993)). The government therefore may offer evidence for these purposes. See United States v. Chansley, 525 F. Supp. 3d 151, 164 (D.D.C. 2021) ("[W]hether defendant's speech itself was criminal is an issue the Court need not decide today. For even if his statements were themselves protected, the First Amendment does not prohibit their consideration as evidence of motive or intent.").

---

[2]     Ms. Baez also makes reference to the fact that "the statutes focus on 'loud' and 'disruptive' speech." Omnibus Mot. Mem. at 14. The only statute Ms. Baez is currently charged with violating is 18 U.S.C. § 1512(c), which does not use either of these terms nor focus on speech. See Fischer v. United States, 603 U.S. at 498 (holding that Section 1512(c) focuses on "records, documents, objects, or . . . other things used in the [official] proceeding").

In conclusion, because Ms. Baez has failed to provide a valid reason under Rule 403 or any other authority to exclude any evidence or argument the government intends to offer at trial, her first motion is denied.

### B. Motion to Suppress Plea Hearing Statements

Ms. Baez's second motion seeks to "preclude . . . all statements made by [Ms.] Baez at [her] change of plea hearing regarding [the] misdemeanors in this case." See Suppress Plea Stmt. Mem. at 1. On May 15, 2024, Ms. Baez pled guilty to the four misdemeanor charges contained in the Second Superseding Indictment: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). See Minute Entry for May 15, 2024; Second Superseding Indictment [Dkt. No. 69]. The Court concludes that the statements made at her plea hearing are admissible.

Rule 11(f) of the Federal Rules of Criminal Procedure provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." FED. R. CRIM. P. 11(f). Rule 410 of the Federal Rules of Evidence states:

> (a) Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> > (1) a guilty plea that was later withdrawn;
>
> > (2) a nolo contendere plea;

(3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

(b) Exceptions. The court may admit a statement described in Rule 410(a)(3) or (4):

(1) in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together; or

(2) in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present.

FED. R. EVID. 410.

        Ms. Baez does not argue that a particular portion of Rule 410 justifies excluding her statements made at the plea hearing. She instead argues that allowing the government to use those statements against her at trial defeats the purpose of Rule 410, which is to "promot[e] and facilitat[e] plea negotiations." Suppress Plea Stmt. Mem. at 2. It is certainly true that Rule 410 was designed to encourage plea negotiations. But pointing only to the general purpose of the rule is insufficient to justify the exclusion of evidence. Ms. Baez has not withdrawn her guilty plea – despite the Court inquiring whether she wished to do so, see MTD Opinion at 2 n.1 – and was informed explicitly at the plea hearing that her statements could be used against her at trial. See Transcript of Plea Hearing [Dkt. No. 115] at 15 ("Because you're under oath and because you have to admit some facts . . . the Government could use anything you say today against you at a subsequent trial."). The Court therefore concludes Ms. Baez has failed to provide a valid reason to exclude her statements pursuant to Rule 410.

Ms. Baez's remaining arguments are equally unpersuasive as they relate to other evidentiary rules that are inapplicable here. See, e.g., Suppress Plea Stmt. Mem. at 1 (citing United States v. Mezzanatto, 513 U.S. 196 (1995), which involved the exclusion of "statement[s] made during plea discussions with an attorney for the prosecuting authority" under FED. R. EVID. 410(d)); id. at 2 (citing FED. R. EVID. 404 relating to the exclusion of character evidence).

Because Ms. Baez has failed to provide any reason to categorically bar the introduction in evidence of the statements she made at the May 15, 2024 plea hearing, her motion to suppress those statements is denied.

### C. Motion to Suppress Statements Made to Law Enforcement

Ms. Baez's final motion seeks to suppress "any and all statements made during interrogation by the Federal Bureau of Investigation and/or other law enforcement officers." Suppress Law Enforcement Stmt. Mem. at 1. The basis for excluding these statements appears to be that the statements were not voluntarily made because she was "influenced and affected by lawfully-prescribed medication at the time." Id. at 2.[3] In connection with her request, Ms. Baez seeks an evidentiary hearing where she "intends to introduce evidentiary and medical proof that she was in fact taking medication that would affect the interview." Id.

The Due Process Clause forbids the admission of a statement to law enforcement "if under the totality of the circumstances it was involuntarily obtained." United States v. Reed,

---

[3]     Ms. Baez does not argue that the Court should exclude her statements to law enforcement based on violations of Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny. The Court therefore need only consider the voluntariness of her statements rather than inquire into whether she was subjected to a custodial interrogation. Cf. United States v. GossJankowski, Crim. No. 21-0123 (PLF), 2023 WL 244487, at *1 (D.D.C. Jan. 18, 2023); United States v. Wills, 316 F. Supp. 3d 437, 452 (D.D.C. 2018); see also United States v. Tai Tan Nguyen, 325 F. Supp. 3d 124, 126 (D.D.C. 2018) (rejecting Miranda claim where the court found the interview was noncustodial).

522 F.3d 354, 358-59 (D.C. Cir. 2008) (quoting United States v. Bradshaw, 935 F.2d 295, 299

(D.C. Cir. 1991)); accord United States v. Roberson, 573 F. Supp. 3d 209, 217 (D.D.C. 2021).

"The ultimate question is whether [a defendant's] 'will' was 'overborne and his capacity for self-

determination critically impaired' as a result of the agents' conduct." United States v. Hallford,

816 F.3d 850, 857 (D.C. Cir. 2016) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225-26

(1973)). "[C]oercive police activity is a necessary predicate to the finding that a confession is

not 'voluntary' within the meaning of the Due Process Clause . . . ." Colorado v. Connelly,

479 U.S. 157, 167 (1986); see also United States v. Harris, Crim. No. 19-358 (RC), 2021 WL

1167263, at *2 (D.D.C. Mar. 26, 2021) (applying principles to statements made in an interview

that were not confessions). As such, "[a]lthough the defendant's mental condition can be a

factor in the 'voluntariness calculus,' 'this fact does not justify a conclusion that a defendant's

mental condition, by itself and apart from its relation to official coercion, should ever dispose of

the inquiry.'" United States v. Reed, 522 F.3d at 359 (cleaned up) (quoting Colorado v.

Connelly, 479 U.S. at 164). In considering whether particular statements are voluntary, the

government bears the burden of showing voluntariness by a preponderance of the evidence. See

United States v. Hallford, 816 F.3d at 859.

The Court concludes that Ms. Baez's statements were voluntarily given to law

enforcement. As an initial matter, Ms. Baez does not point to any evidence in the record – which

includes a transcript of her interview with law enforcement, see Interview

Transcript – suggesting that law enforcement used coercive police tactics during the course of

the interview. And the Court's review of the transcript did not uncover any such practices. This

finding alone is sufficient to reject Ms. Baez's argument that her statements should be excluded

on Due Process grounds. See Colorado v. Connelly, 479 U.S. at 167 ("[C]oercive police activity

is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."); United States v. Harris, 2021 WL 1167263, at *3 (finding statements to officers were voluntary where a review of the record "show[ed] no coercive action" by the investigators).

        Moreover, the evidence submitted by the government – including a transcript of the interview and text message logs, see Interview Transcript; Text Log – provide significant indicia of voluntariness.[4]  For example, the interview was conducted in Ms. Baez's residence and a family member, her father, was present for a portion of the interview.  After discussing various personal information and her educational aspirations, Ms. Baez expressed concern about speaking with the investigators, and the investigators immediately stated that it was "a voluntary interview."  Interview Transcript at 14.  Ms. Baez then continued to speak with the investigators, at one point stating that she had "want[ed] to talk to" them and "wanted [them] to come in."  Interview Transcript at 75.  Ms. Baez then thanked the investigators at the end of the interview, see Interview Transcript at 82, and sent a series of text messages to one of the agents agreeing to meet again for a follow-up interview.  See Text Log (text message timestamped Apr. 27, 2021 at 5:11 p.m.).  These facts taken together provide significant support for the conclusion that Ms. Baez's statements were voluntarily given to law enforcement.  See United States v. Robinson, 256 F. Supp. 3d 15, 29-30 (D.D.C. 2017) (concluding statements were voluntarily given where

---

[4]      The interview transcript suggests that the interview occurred on April 27, 2021, beginning at "9:57pm."  See Interview Transcript at 1.  The government's brief on the other hand indicates that the interview began at 9:57 a.m.  See Suppress Law Enforcement Stmt. Opp. at 2. Evidence in the record corroborates the government's representation that the interview took place in the morning of April 27, 2021.  For example, text message records reflect that Ms. Baez and an agent exchanged text messages on April 27, 2021 at around 5:00 p.m., related to "meet[ing] in person again" the following day.  See Text Log (text message timestamped Apr. 27, 2021 at 5:01 p.m.).

defendant agreed to be interviewed, was eager to provide information, and the short interview proceeded in a calm tone).

A review of the transcript also makes clear that there is no need for an evidentiary hearing centered on the affect Ms. Baez's medications may have had on her mental state during the interview. "[T]he right to an evidentiary hearing . . . turns on whether the district court need[s] to resolve any disputes of material fact to decide [defendant]'s suppression motion." United States v. Law, 528 F.3d 888, 904 (D.C. Cir. 2008). As an initial matter, Ms. Baez's conjecture about the possible effects that her medication may have had on her mental state at the time of the interview cannot by itself cast material doubt on the other indicia of voluntariness discussed above. More importantly, even if the Court were to hold an evidentiary hearing and gather "medically-expert testimony," such testimony does not change the fact that the record is bereft of any evidence of coercive police tactics. See United States v. Reed, 522 F.3d at 359 ("Although the defendant's mental condition can be a factor in the 'voluntariness' calculus, this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry.") (cleaned up). It therefore is unnecessary to hold an evidentiary hearing. See United States v. Harris, 2021 WL 1167263, at *4 (denying request for evidentiary hearing on a motion to suppress evidence where defendant did "not allege[] any egregious activity on the part of the interviewing officers").

As an alternative basis, Ms. Baez appears to suggest that her statements to law enforcement should be suppressed under Rule 403 of the Federal Rules of Evidence. See Suppress Law Enforcement Stmt. Mem. at 4-6. Outside of citing the governing law around Rule 403, Ms. Baez provides little analysis of its application here. As already discussed above, the fact that her interview with law enforcement undoubtably contains relevant evidence coupled

with the more limited application of Rule 403 in the bench trial context leads the Court to reject this argument.[5]

### III. CONCLUSION

In light of the foregoing, it is hereby

ORDERED that Defendant's Motion in Limine to Preclude Defendant's Statements at Misdemeanor Change-of-Plea Hearing [Dkt. No. 111] is DENIED; it is

FURTHER ORDERED that Defendant Stephanie Marylou Baez's Motion to Suppress Interview with Agents of Federal Bureau of Investigation and Motion in Limine [Dkt. No. 112] is DENIED; it is

FURTHER ORDERED that Defendant Stephanie Marylou Baez's Motions in Limine [Dkt. No. 113] is DENIED; and it is

FURTHER ORDERED that Ms. Baez's Motion to Suppress [Dkt. No. 114] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 11/25/24

---

[5]    The Court denies the Motion to Suppress [Dkt. No. 114] for the same reasons. While this appears as a separate motion on the docket, the docket entry is unaccompanied by a separate filing, and the docket text states "See docket entry 112 to view document)."