UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Case No. 1:21-CR-507 (PLF) |
| | : |
| STEPHANIE BAEZ, | : |
| | : |
| Defendant. | : |

**DEFENDANT STEPHANIE BAEZ'S RULE 29 MOTION FOR ACQUITTAL ON THE FACTS.**

**"If Congress had wanted to authorize such penalties for any conduct that delays or influences a proceeding in any way, it would have said so. Instead, Section 1512 mentions "record," "document," or other "object" 26 times."** *Fischer. 144 S. Ct. at 2189.*

**I.      INTRODUCTION.**

Defendant Stephanie Baez ("Baez"), by counsel, hereby moves this Honorable Court, now that the prosecution has rested, for acquittal on Count 1 (18 U.S.C. §1512(c)(2)), pursuant to F.R.Crim.P. 29.

The Supreme Court, In *Fischer v. United States*, plainly ruled out *disruption, delay* or even *shutting down* of a proceeding as a ground for culpability under 18 U.S.C. §1512(c)(2). This is because

the statute is aimed only at conduct which alters, fabricates, impairs or destroys the *records, documents or evidence* of a proceeding.[1]

Yet here the government is pursuing a defendant with §1512(c)(2) under a theory (apparently) that the defendant *wanted* a proceeding shut down, and *joined in a demonstration* with thousands of others in a disruptive protest at the Capitol which led to a brief (6-hour) delay in proceedings.  The government's evidence was merely that a ceremonial ballot box containing election certificates was briefly removed from the U.S. Senate chamber into a second location on January 6.

But Baez never got close to the Senate Chamber.  Indeed she was apparently never even on the same floor of the Capitol.  Nor was there any evidence that Baez *even thought* about the ballot certificates on January 6; let alone that she talked about the certificates or searched for or pursued the certificates on January 6.

---

[1] The question presented in *Fischer v. United States* was as follows:

"Does 18 U.S.C. § 1512(c), which prohibits obstruction of congressional inquiries and investigations, include acts unrelated to investigations and evidence?"

The Supreme Court answered this question NO.

**The availability or integrity of the election certificates was never in jeopardy on January 6. The certificates were never touched; and never approached.**

The closest thing to any mention of the electoral ballot certificates on Baez' part were a couple of Baez' Instagram posts in December 2020.  In **Government's Exhibit 613A**, Baez told a friend on December 26, "Im so going to DC on the 6th!" When the friend asked, "What's happening on the 6th again," Baez responded, "They are finalizing the electoral! This when they can switch them for Trump." The next day, as shown in **Government's Exhibit 615A,** Baez posted on Instagram that "Pence will have presidency in his hands" and can decide whether to count the certificates from six disputed states.

These statements were made more than a week *before* January 6, in which Baez had repeated a then-circulating political theory that Vice President would have "plenary power" on January 6 to opt not to count the disputed ballots.[2]

Baez' remarks were plainly *political speech and advocacy* in which Baez was expressing her hope that *Pence* might do or not do something.  Baez expressed *no idea* suggesting that *she* might do or not do something with the ballots.  This places Baez' later conduct (traveling to D.C. and joining a mass protest at the Capitol) in the plain context of political advocacy.

Baez' intent to *lobby and try to persuade* Congress is further shown by **Government's Exhibit 619B,** wherein Baez says that senators such as Cruz, Blackburn, Daines, and Imhofe should be

---

[2] November 18, 2020—less than a fortnight after most media outlets called the election for Joe Biden—the Defendant *commented on another Instagram user's post* which read: "I am still BAFFLED at the fact that no one is talking about this! The 12th Amendment is looking more & more likely to be the solution to continued problems with our election, and it's time we did our homework." The Defendant responded: "Literally why I'm not worried, i [sic] fall asleep every night dreaming of the 12th amendment lol."

cheered for objecting to the upcoming certification, "plus 140 House members." "Let's do this," wrote Baez—directly referring to *supporting members of Congress.*

Under no First Amendment case law (or any other source of law) can writing an innocent statement about politicians being able to perform a political act constitute a crime. This is true even when such a statement is combined with Baez' later presence at the Capitol (far removed from Pence, the ballots, or the chamber where the ballots were located) when Baez joined in with other Trump-supporting demonstrators in a political protest.

## II. THE INDICTMENT ALLEGES BAEZ "ATTEMPTED TO, AND DID"

As a preliminary matter, the government is bound to the plain language of its indictment in this case:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **STEPHANIE MARYLOU BAEZ** attempted to, and did, corruptly alter, destroy, mutilate, and conceal a record, document, and other object, with the intent to impair the object's integrity or availability for use

The indictment alleges that Baez "attempted to, **and did**, corruptly alter, destroy, mutilate, and conceal a record, document, or other object, with the intent to impair. . ." (emphasis added).

Neither the prosecutor nor the Court may prosecute a charge different from what the Grand Jury alleged. "[A]fter an indictment

has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Stone*, 2012 U.S. Dist. LEXIS 41434, *20 (citing *Stirone v. United States*, 361 U.S. 212, 215-16 (1960)). The Second Circuit examined "whether, in violation of the Fifth Amendment, the defendants were tried on charges upon which a grand jury had not passed." *United States v. Wydermyer*, 51 F.3d 319 (2nd Cir. 1995) (citing *Stirone v. United States*, 361 U.S. 212, 217 (1960)).

Because the indictment alleges that Baez "attempting to, and did" alter, mutilate, or conceal records, etc., the prosecution was bound to prove that Baez *accomplished* such feats. Yet at trial the government concededly retreated to a mere suggestion that Baez *attempted to* "impair the availability of" ballots (indirectly; merely by joining or following a mob of hundreds, in faraway public areas where millions of tourists enter every year (the Crypt, various hallways).

### III.  WHAT DOES THE GOVERNMENT ARGUE?

Despite acknowledging the *Fischer* decision, the government's assertions in Baez' case appear to track the government's arguments in *Fischer* itself.  As the *Fischer* Court wrote, the government's construction of 1512(c)(2)

> **would criminalize a broad swath of prosaic conduct, exposing *activists* and *lobbyists* alike to decades in prison. As the Solicitor General acknowledged at oral**

**argument, under the Government's interpretation, a peaceful protester could conceivably be charged under §1512(c)(2) and face a 20-year sentence.. . . And the Government would likewise have no apparent obstacle to prosecuting under (c)(2) any lobbying activity that "influences" an official proceeding and is undertaken "corruptly."**

*Fischer* at Part III, paragraph 1 (emphasis added).

But the Supreme Court explicitly rejected the government's conceptualization.  "If Congress had wanted to authorize such penalties for any conduct that delays or influences a proceeding in any way, it would have said so. Instead, Section 1512 mentions "record," "document," or other "object" 26 times." Id, paragraph 2. Id at paragraph 3, 5. Even "shutting down" an official proceeding does not fall under the reach of 1512. Thus, <u>even if</u> Baez had actually "shut down" Congress' electoral ballot count completely, her actions would not qualify for conviction.

**Baez' thoughts regarding the electoral college certification are 1st amendment protected political speech.**

The 1st amendment provides a further barrier to the government's theory.  The government presented only two exhibits which might arguably show Baez referencing records, evidence or certificates; and from the contexts, each of Baez' references were plainly *political advocacy*.  As already described, **Government's Exhibit 613a** shows Baez commenting: "*They're* finalizing the electoral. This is when *they* can switch them for Trump."  (Even if this

were a reference to certificates, Baez is plainly saying that *Congress* ("they") "can switch them. . ." Nowhere did Baez say **she** had any notions of "switching them," or '**we** can switch them. .' Obviously, Baez was expressing her political advocacy for Congress to act or not to act in a given way.

And this also places Baez' later arrival at the Capitol in plain— innocent—context. Baez was there on January 6 as an activist or lobbyist, the status which the *Fischer* decision explicitly protected.

## IV.   COMPARISON TO THE OCHS AND DECARLO CASE

Judge Howell, in *United States v. Ochs*, Criminal No. 2021-0073 (D.D.C. 2024) recently addressed the precise questions at issue here, in a parallel case. Judge Howell granted a §2255 motion, releasing two prisoners (Proud Boys Ochs and DeCarlo) from custody in a case similar (but far worse) than Baez' case(September 4, 2024). Indeed the facts in Ochs' and DeCarlo's case were significantly more extreme than the facts in Baez' case:

> As they approached the Capitol building, DeCarlo, filming on a GoPro, said, "this is where they are going to steal it. And they called on us. They called on us to stop it. We are putting an end to it. They said calling all patriots. . . . We're going to put the kai-bosh on this." . . . Ochs said, "the steal is in fact right here and we are going to stop it.". . . . As police tried to keep the crowd away from the Capitol building, both defendants threw smoke bombs at the police. . . DeCarlo lamented throwing his without "pulling the pin" and told Ochs, "yeah, pull the pin and throw it." . .

. As defendants filmed the large crowd of rioters amassing outside the Capitol, DeCarlo asked Ochs, "you think they are scared in there?," and Ochs replied, "yeah, and I fucking love it." . . . [W]hile inside the Crypt, DeCarlo can be heard yelling out asking about the location of then-Speaker of the House Nancy Pelosi and being aware that Congress had gone into lockdown.

> . . . . In the Rotunda, both defendants pointed out directions to Pelosi's office to a group of rioters gathering there. . . .
>
> Defendants then walked away from the building and documented on video the pride they had about their conduct that day. For example, Ochs, in a video filmed on his cell phone, said, "sorry we couldn't go live when we stormed the fuckin' U.S. Capitol and made Congress flee." . . . In another video filmed by Ochs the same day, while walking through the streets of D.C. with DeCarlo, both defendants celebrated the fact that their conduct contributed to Congress stopping its certification of the electoral college due to the riot. Ochs said, "it may resume, but the steal is for now stopped," while DeCarlo said, "we fucking did it," "that's what I came down here to do," and "we did our job."

*Ochs* Order, at 3-4.

As anyone can see, the conduct of Ochs and DeCarlo on January 6 was far more violent, more egregious, more extreme, and more specifically directed at disrupting Congress's certification (rather than persuading policymakers to do so) compared to the conduct of Baez. Yet Judge Howell recognized that the *Fischer* decision required vacating and dismissal of Ochs' and DeCarlo's convictions and sentences.

Judge Howell recognized that Ochs' and DeCarlo's conduct "causing the halting of the proceeding and the concomitant removal of the ballots to a more secure location" did not amount to impairing the availability or integrity of the ballots themselves.

### What about 'attempt'?

Next is the question of whether Baez can be convicted of 'attempting' to obstruct an official proceeding by impairing evidence (even if the indictment allowed for guilt by attempt, which it doesn't). Of course, attempt to commit any offense is a specific-intent crime. *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991). The required elements to establish a criminal attempt under the common law are "(1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation." *United States v. Nitschke*, 843 F. Supp. 2d 4, 10 (D.D.C. 2011)(quoting *United States v. Washington*, 106 F.3d 983, 1005 (D.C. Cir. 1997)).

To convict Baez of attempting to violate Section 1512(c)(2), the government would have to show that Baez had "not simply the *general* intent to do the immediate act with no particular, clear, or undifferentiated end in mind," but also "the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result," 21 Am. Jur. 2d *Criminal Law* § 114, which in this context means the intent to impair the availability of documents, records, or other things for use in Congress's certification proceeding, see *Fischer*, 144 S. Ct. at 2190. In proving this intent, defendants' "mere knowledge that a result is substantially certain to follow from

one's actions is not the same as the specific intent or desire to achieve that result." 21 Am. Jur. 2d *Criminal Law* § 114 (footnote omitted).

> As Judge Howell wrote in the *Ochs & DeCarlo* case:
>
> The evidence in the record could not support a finding that defendants had a "deliberate and conscious purpose or design" to impair the availability of documents, records, objects, or other things used in the certification proceeding. To the contrary, the record amply shows defendants' intent to stop Members of Congress from proceeding with the certification, but Members are not evidence to be used in the proceeding, as required for Section 1512(c)(2) to apply. Fischer, 144 S. Ct. at 2186 (concluding "that subsection (c)(2) was designed by Congress to capture other forms of evidence and other means of impairing its integrity or availability").

Ochs, at p. 28.

Baez *did cheer* the delay of proceedings on January 6. But she never formed any specific intent to fabricate, destroy, or impair the electoral certificates. Indeed, nowhere did the government show that Baez mentioned any ballots or other records, documents, objects, or "other forms of evidence," to be used in the certification proceeding; or that Baez searched for or had any contact with any records, documents, or other tangible or intangible evidence to be used in the certification proceeding; or even that Baez suggested that any other rioters should search any Capitol areas or offices or take any actions

with respect to documents, records, or other evidence for the proceeding.

"As already discussed," wrote Judge Howell, "the theory of obstruction premised on defendants' efforts to stop the congressional vote on certification was the interpretation of Section 1512(c)(2) specifically rejected by the Supreme Court in Fischer. See 144 S. Ct. at 2182–83, 2189–90; id. at 2196 (Barrett, J., dissenting) (recognizing that, after Fischer, "means of obstructing a proceeding," including "shutting it down," that do not involve the impairment of evidence, can no longer be charged under Section 1512(c)(2)."

Judge Howell found that although both Ochs and DeCarlo signed plea agreements which expressly waived all avenues for appeal or collateral challenges to their §1512(c)(2) convictions, "Defendants here have succeeded in demonstrating their actual innocence." Judge Howell then concluded that that both Ochs and DeCarlo were entitled to release from their prison sentences, under Section 2255.

The same principles—and the ultimate outcome—applies to Baez's case which applied to Ochs' and DeCarlo's case. No evidence shows Baez's specific intent to impair the availability of documents, records, or other things to be used in the certification proceeding.

Thus no evidence has been presented on which a properly instructed, reasonable juror could find that Baez violated Section 1512(c)(2), either by actually impairing the availability of documents, records, objects or other things of evidentiary value for use in the official proceeding in Congress or by attempting to do so.

## V. THE LEGAL AND FACTUAL IMPOSSIBILITY OF COMPLETING THE CRIME IN THIS CASE.

The proposition that the election certification on January 6 is an "official proceeding" seems to be relatively settled. The *Fischer* Court itself seems to have held so.

But the 'official proceeding' of January 6 is a peculiar one. Almost every other type of official proceeding regularly conducted under the umbrella of the U.S. government produces documents or evidentiary records which could, *at least conceivably*, be altered in a way which might change an outcome. But the evidence presented in Baez' case prove that <u>nothing Baez might have done</u> to the documents could have altered the certification process anyway!

Prosecution witness Dan Schwager, General Counsel to the Secretary of the Senate, testified that there are six (6) original sets of copies of the ballot certificates in question in this case. Thus, "impairing the availability of" one set would not actually impair the

availability of the records. Schwager testified that in the event that any of the Senate ballot certificates went missing, the certificates could be easily replaced by simply retrieving another original from the National Archives—some two or three blocks away.

This means that no one on January 6, 2021 could have realistically "impaired the availability" of the records in any way that might have altered the outcome of the certification process.

Moreover, Schwager testified that the contents of the certificate boxes are publicly known to everyone. Because the electoral college numbers are widely published, no one is ever surprised by the contents of the ballot box. Thus, it would be *impossible for anyone* to violate Section 1512(c) by destroying, altering, mutilating or impairing these specific records. Even if Baez could have held the records in her own hands; nothing she did with the records could have possibly made any difference.

The Supreme Court provided examples of conduct that would run afoul of Section 1512(c)(2), including, including (1) "by creating false evidence—rather than altering incriminating evidence," id. (citing case example of "transmitting a forged court order"); and (2) by "impairing the availability or integrity of other things used in an official proceeding beyond the 'record[s], document[s], or other

object[s]' enumerated in (c)(1), such as witness testimony or intangible information," id. (citing case example of "defendant's attempt to orchestrate a witness's grand jury testimony"). *Fischer*, 144 S. Ct. at 2186.

Because there are five or six identical original sets, and because the content of the ballots are entirely known to the public, the electoral college ballot certificates under count on January 6 cannot, realistically, be altered, impaired, destroyed, or fabricated in any way that matters. Thus, even if Baez were otherwise culpable, the defense of impossibility entirely acquits her.

**Baez did nothing approaching the reach of Section 1512(c)(2).**

Nothing in the government's trial evidence indicated that defendant Baez engaged in "creating false evidence," such as fraudulent electoral ballots for submission to government officials, or tried to impair intangible information of an evidentiary nature used in the certification proceeding. No evidence suggests that the electoral ballots' integrity, was affected by the events on January 6, 2021, and the government does not claim otherwise.

The government's entire theory of its case rests on the mere fact that a ceremonial box of ballot certificates was briefly moved from the Senate chamber to a secure location nearby on January 6, 2021. The

electoral ballots remained intact, unaltered, unimpaired, and within the control of the appropriate congressional personnel. No rioter ever came close to taking custody of the ballots.

Significantly, Stephanie Baez arrived inside the Capitol more than 45 minutes after the box was briefly moved. Baez never got to the same floor or likely within a hundred yards of the box. And the government presented no evidence whatsoever that defendant Baez *ever spoke of or even thought about* the ballots during her time in Washington.

As Judge Howell found in the *Ochs* and *DeCarlo* case, the government's theory of impaired availability of the January 6 certificates "stretches beyond a fair reading of *Fischer*.

The strict reading given in *Fischer* requires a "focus on evidence impairment." 144 S. Ct. at 2185; *see also id.* at 2186 (concluding "that subsection (c)(2) was designed by Congress to capture other forms of evidence and other means of impairing its integrity or availability beyond those Congress specified in (c)(1)").

The government's prosecution of Baez in this case *is what the Supreme Court sought to avoid.* Indeed, the Supreme Court expressly rejected a reading of Section 1512(c)(2) that would "authorize [] penalties for any conduct that *delays* or influences a proceeding in

any way," noting that "[i]nstead, Section 1512 mentions 'record,' 'document,' or other 'object' 26 times." Id. (emphasis added).

As Justice Barrett wrote in her *Fischer* dissent, the Court's narrow "evidentiary focus" in interpreting this statute means that "[o]ther means of obstructing a proceeding—say, by shutting it down—are out." *Fischer* at 2196 (Barrett, J., dissenting).

## VI. CONCLUSION

For the foregoing reasons, Defendant Baez asks this honorable court to order Count 1 of the superseding indictment dismissed; and Baez acquitted, under Rule 29. The evidence presented by the government show that the ballot certificates on January 6, 2021 were never in jeopardy, and nothing that Baez did or didn't do placed the certificates in any jeopardy.

Moreover, Baez' scant, fleeting references to the certification process place Baez in the role of activist or lobbyist; merely advocating for policymakers to do or not to do certain things; Such political advocacy is protected by the 1st amendment.

No reasonable jury could convict Baez of Count 1 based on the evidence presented. Accordingly, Baez should be acquitted of Count 1 of the superseding indictment.

Dated December 20, 2024          RESPECTFULLY SUBMITTED,

                                       _/s/ Roger I. Roots_

                                       Roger I. Roots
                                       John Pierce Law Firm
                                       21550 Oxnard Street,
                                       3rd Floor PMB #172
                                       Woodland Hills, CA
                                       rroots@johnpiercelaw.com

CERTIFICATE OF SERVICE

I hereby certify and attest that on December 16, 2024, I uploaded this document to the Court's ECF electronic filing system, thereby serving the document on counsel of record for all parties

/s/ Roger I. Roots