UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 21-cr-507 (PLF) |
| | ) |
| STEPHANIE MARYLOU BAEZ, | ) |
| Defendant. | ) |

**AMICUS CURIAE REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT STEPHANIE BAEZ'S MOTION FOR JUDGMENT OF ACQUITTAL**

Amicus hereby submits this reply to the government's opposition to Stephanie Baez's motion for judgment of acquittal and amicus's motion in support thereof.

**ARGUMENT**

The government has not rebutted the crux of amicus's argument that it failed to present evidence that Ms. Baez altered, destroyed, mutilated, concealed, or committed a similar act against a ballot. As argued in amicus's original motion, this Court must grant Ms. Baez's motion for judgment of acquittal.

Having ultimately committed to prosecuting Ms. Baez only under 18 U.S.C. § 1512(c)(2),[1] the government submits that: (1) the electoral vote count on January 6th was an "official proceeding"; (2) the ballots or "certificates of vote" were "documents records or objects"; and (3) Stephanie Baez "expressed her specific intent not only to halt the January 6th certification proceeding, but also to prevent the count of Electoral College ballots, supporting the reasonable inference that she intended to impair the integrity or availability of the ballots for use in the

---

[1] *See* Gov't Opp. at 24 ("To be clear, the Government does not contend that the defendant directly violated § 1512(c)(1). [...] She did, however, directly violate § 1512(c)(2) by rendering ballots unavailable for use in the Joint Session.").

proceeding." Gov't Opposition at 2-3.

Assuming arguendo that the government's evidence proved these allegations, these facts are insufficient to establish that Ms. Baez altered, destroyed, mutilated, concealed under subsection (c)(1) or committed a similar act that would satisfy the actus reus of subsection (c)(2).[2] Indeed, the government did not present facts establishing that Ms. Baez altered, destroyed, mutilated, concealed, or committed any similar act because no such facts exist. And nothing Ms. Baez said or did evinced an intent to alter, destroy, mutilate, conceal, or commit another similar act against a ballot. There is therefore likewise insufficient evidence of an attempt or aiding and abetting another to violate § 1512(c)(2), which would each require specific intent to alter, destroy, mutilate, conceal, or commit another similar act against a ballot, and not merely an intent to impair the integrity or availability of a ballot through other conduct such as protest or trespass.

The government's contrary position stems from its reliance on its erroneous proposed jury instruction,[3] which is unfaithful to the plain text of § 1512(c)(2) and the Supreme Court's

---

[2] Amicus has not undertaken to correct each of the government's misrepresentations of the trial evidence because there is no characterization of the record evidence that establishes a violation of § 1512. Amicus notes, however, that the government did not introduce evidence about "rioters who accessed the [Senate] chamber to destroy, alter, or remove ballots, and pave the way for the introduction of substitute—false—ballots for Trump" or evidence about "attempts by other rioters to seize" ballots. Gov't Opp. at 30.

[3] The government's proposed instruction is as follows:

> *First*, the defendant committed or attempted to commit an act that:
> - altered, destroyed, mutilated, or concealed a record, document, or other thing to be used in an official proceeding; or
> - otherwise impaired the integrity of or rendered unavailable such thing;
> 
> *Second*, the defendant intended to:
> - alter, destroy, mutilate, or conceal a record, document, or other thing; or
> - otherwise impair the integrity of or render such thing unavailable for use in an official proceeding; and
> 
> *Third*, the defendant acted corruptly.

Gov't Opp. at 5-6.

2

articulation of its elements.[4] Section 1512(c) states:

> (c) Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).

According to the Supreme Court, "Section 1512(c)(2) is [...] *limited* by the preceding list of criminal violations [in 1512(c)(1)]." *Fischer v. United States*, 603 U.S. 480, 489 (2024) (emphasis added). The government ignores that the object of a § 1512 violation – "a record, document, or other object" – and the act that must be committed against that object – "alter[ing], destroy[ing], mutilate[ing], or conceal[ing]" – are both limitations on the catchall provision of subsection (c)(2). *Id.* at 490-91. Thus, a proper jury instruction for § 1512(c)(2) would require:

1. The defendant attempted to, or did commit an act similar to altering, destroying, mutilating, or concealing a record, document, or other similar thing that was to be used in an official proceeding;

2. The defendant intended to impair the object's integrity or availability for use in an official proceeding; and

3. The defendant acted corruptly.

In contrast, the government's proposed instruction converts the mens rea element identified in subsection (c)(1) – "the intent to impair" – into an alternative actus reus for subsection (c)(2)'s catchall. Gov't Opp. at 5-6. This is a distortion of subsections (c)(1) and (c)(2) that finds no support

---

[4] The government is mistaken to assume that amicus "does not dispute" its proposed jury instruction. Amicus hereby makes explicit that, for the reasons above and in amicus's original motion, the government's proposed instruction does not correctly state the elements of § 1512(c)(2).

3

in *Fischer*. Indeed, it is inconsistent with *Fischer's* narrow interpretation of § 1512(c)(2) and therefore is not a basis for conviction in Ms. Baez's case.

The government claims that *Fischer* "articulated the *actus reus* of § 1512(c)(2) as 'impair[ing] the availability or integrity for use in an official proceeding' of a record or document" and accuses amicus of relying upon a narrow interpretation of § 1512(c)(1) that would "write § 1512(c)(2) out of existence." Gov't Opp. at 23 (citing *Fischer*, 603 U.S. at 498). The government's propositions are as backwards as can be. *Fischer* did not hold that the actus reus of § 1512(c)(2) was "'impair[ing] the availability or integrity for use in an official proceeding' of a record or document." Instead, *Fischer* unambiguously specified "four types of highly particularized conduct" – (1) altering, (2) destroying, (3) mutilating, (4) concealing – identified in subsection (c)(1) that could "impair the availability or integrity" of ballots under subsection (c)(2). In doing so, it explicitly narrowed the scope subsection (c)(2) to conduct similar to "alter[ing], destroy[ing], mutilat[ing], or conceal[ing]." Fidelity to the limitations articulated in *Fischer* would not "write § 1512(c)(2) out of existence," but would respect its plain text.

The government attempts to obscure its expansive interpretation of § 1512(c)(2) by arguing that a sequence of inferences would allow this Court to find that it has satisfied the elements of § 1512(c)(2) in this case. The government argues:

> The Defendant's illegal entry into the Capitol—twice—and the facts and circumstances known to her when she acted—including the role of certificates of vote in the proceeding, and the fact that rioters had already accessed the Senate Chamber where the proceeding was supposed to be taking place—support the conclusion that she intended to impair the availability of the electoral ballots.

Gov't Opp. at 20. The government further posits that "[t]he natural and probable—and actual—consequence of joining a mob invasion of the Capitol when the certification was supposed to be taking place was that, at best, the ballots would be removed to safety and no longer available for use in the proceeding, and at worst, they would be mutilated, altered, or destroyed." *Id.* Even if

4

Ms. Baez intended to delay the electoral count, the government did not prove that she had an intent to effectuate such a delay through altering, destroying, mutilating, or concealing an actual ballot, rather than by causing the people who would count the ballots – Congress – to delay their responsibilities. *See United States v. DeCarlo*, No. 21-cr-073, 2024 WL 4650993, at *14 (D.D.C. Nov. 1, 2024) (Howell, J.) (holding that even if defendant had "intent to stop Members of Congress from proceeding with the certification, [...] Members are not evidence to be used in the proceeding, as required for Section 1512(c)(2) to apply" (citing *Fischer*, 603 U.S. at 491)). Rather, it was purely speculative as to what effect Ms. Baez's presence inside the Capitol had on ballots.

Even if the presence of many protestors caused a delay in the business of Congress, there was no evidence of conduct by Ms. Baez that would cause Congress and their staff to take the ballots to another location rather than secure them in place. Moreover, the government fails to identify a single fact leading to an inference that a ballot would be altered, destroyed, mutilated, concealed, or similarly impaired in pursuit of delaying that certification. Certainly, it follows that altering, destroying, mutilating, concealing, or committing a similar act against a ballot would delay the certification, but the converse is not true. That is, a delay in the certification does not create an inference that the defendant altered, destroyed, mutilated, concealed, or committed a similar act as required for conviction under the § 1512(c)(2). Thus, the inferences the government urges upon this Court are not supported by logic or evidence .

Finally, the government is incorrect as a matter of law that "illegal entry" (Gov't Opp. 20) or "trespass" (Gov't Opp. at 3, 19, 23, 24, 25) inside the Capitol, even with an intent to delay or the effect of delaying the counting of ballots, are acts similar to altering, destroying, mutilating, or concealing so as to satisfy the actus reus of § 1512(c)(2). In adopting a contrary view, the government echoes the dissent in *Fischer,* which would have found that the defendant violated § 1512(c)(2) because "[b]locking an official proceeding from moving forward surely qualifies as

obstructing or impeding the proceeding by means *other than* document destruction." *Fischer v.* 603 U.S. at 508 (Barrett, J., dissenting). The dissent, however, is not the law.

As in *Fischer*, *DeCarlo*, and *United States v. Kelley*, No. 22-cr-408, 2024 WL 4708086 (D.D.C. Nov. 7, 2024) (Collar-Kotelly, J.), here the government has failed to present sufficient evidence that the defendant violated § 1512(c)(2).

## CONCLUSION

For the above reasons and any others that may appear to the Court, a judgment of acquittal under Rule 29 is required based on the insufficiency of the evidence.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
TONY AXAM, JR.
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500
tony_axam@fd.org