UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA                )
                                        )
        v.                              )        Criminal No. 21-0507 (PLF)
                                        )
STEPHANIE MARYLOU BAEZ,                 )
                                        )
        Defendant.                      )
_____)


OPINION

        This matter is before the Court on defendant Stephanie Marylou Baez's motion

for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  See

Defendant Stephanie Baez's Rule 29 Motion for Acquittal on the Facts ("Mem.") [Dkt. No. 126];

Amicus Curiae Memorandum in Support ("Amicus Mem.") [Dkt. No. 125].  Ms. Baez is charged

with Obstruction of an Official Proceeding and Aiding in Abetting in violation of 18 U.S.C.

§§ 1512(c) and 2 based on conduct related to the events at the United States Capitol on

January 6, 2021.  See Third Superseding Indictment [Dkt. No. 103].  On December 3 and 4,

2024, the Court held a bench trial on the charge.  At the close of the government's case in chief,

Ms. Baez moved for judgment of acquittal, and the Court heard oral argument on the motion.

The parties subsequently filed written submissions.  The Court has reviewed the parties' written

submissions, the relevant authorities, the parties' presentations at oral argument, and the trial

record.  For the following reasons, Ms. Baez's motion for judgment of acquittal is granted.[1]

_____

        [1]        The Court has reviewed the following documents and attachments thereto in
connection with the pending motion:  Third Superseding Indictment [Dkt. No. 103]; Amicus
Curiae Memorandum in Support ("Amicus Mem.") [Dkt. No. 125]; Defendant Stephanie Baez's
Rule 29 Motion for Acquittal on the Facts ("Mem.") [Dkt. No. 126]; Government's Opposition

## I.  BACKGROUND

The case against Ms. Baez is based on her unlawful entrance into the United

States Capitol building on January 6, 2021.  The Court will not recount the entire background of

Ms. Baez's case given that it has written extensively on the subject.  See United States v. Baez,

Crim. No. 21-0507 (PLF), 2023 WL 3846169 (D.D.C. June 2, 2023) (motion to dismiss

information); United States v. Baez, Crim. No. 21-0507 (PLF), 2024 WL 1156567 (D.D.C.

Mar. 18, 2024) (motion to dismiss superseding indictment); United States v. Baez, Crim.

No. 21-0507 (PLF), 2024 WL 5297777 (D.D.C. Nov. 18, 2024) (motion to dismiss third

superseding indictment); United States v. Baez, Crim. No. 21-0507 (PLF), 2024 WL 4880011

(D.D.C. Nov. 25, 2024) (pretrial motions); United States v. Baez, 695 F. Supp. 3d 94

(D.D.C. 2023) (pretrial motions).

On September 18, 2024, a grand jury returned a Third Superseding Indictment,

which charged Ms. Baez with Obstruction of an Official Proceeding and Aiding and Abetting, in

violation of 18 U.S.C. §§ 1512(c) and 2.  See Third Superseding Indictment [Dkt. No. 103].[2]

The Court conducted a bench trial on that charge on December 3 and 4, 2024.  During its case in

---

to Defendant's Motion for Judgment of Acquittal ("Opp.") [Dkt. No. 127]; Defendant Baez's
Reply to Government's Opposition to Defendant's Motion for Judgment of Acquittal ("Reply")
[Dkt. No. 128]; Amicus Curiae Reply to Government's Opposition to Defendant Stephanie
Baez's Motion for Judgment of Acquittal ("Amicus Reply") [Dkt. No. 129]; and Government's
Witness and Exhibit List ("Gov't Ex.") [Dkt. No. 122].

[2]       On May 15, 2024, Ms. Baez pled guilty to the four misdemeanor charges
contained in the Second Superseding Indictment – Counts Two, Three, Four, and Five, charging
Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C.
§ 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in
violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40
U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in
violation of 40 U.S.C. § 5104(e)(2)(G).  See Minute Entry for May 15, 2024; see also Second
Superseding Indictment [Dkt. No. 69].

chief, the government presented testimony from two witnesses:  Dan Schwager and Federal Bureau of Investigation ("FBI") Special Agent Jessica Salo.  Mr. Schwager – the General Counsel to the Secretary of the Senate during the events of January 6, 2021 – testified to the processes of electoral certification and the interference with those processes by the rioters on January 6, 2021.  Special Agent Salo testified to the investigation of Ms. Baez, including by providing a detailed account of Ms. Baez's movement through the Capitol building on January 6, 2021.  In addition to witness testimony, the government introduced video evidence from social media and the Capitol building's closed-circuit television ("CCTV"), as well as messages and posts from Ms. Baez's social media accounts.

The government rested its case on December 4, 2024, and Ms. Baez moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  The Court heard argument on the motion and the parties subsequently filed written submissions.

## II.  LEGAL STANDARD

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  FED R. CRIM. P. 29(a); see United States v. Kayode, 254 F.3d 204, 212-13 (D.C. Cir. 2001); United States v. Harrington, 108 F.3d 1460, 1464 (D.C. Cir. 1997); United States v. Sutton, 706 F. Supp. 3d 1, 12-13 (D.D.C. 2023).  "To succeed on a Rule 29 motion, a defendant must clear a 'very high' hurdle."  United States v. Hale-Cusanelli, 628 F. Supp. 3d 320, 324 (D.D.C. 2022) (quoting United States v. Pasha, 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015)).  Granting a defendant's motion for judgment of acquittal "is appropriate only when there is no evidence upon which a reasonable juror might fairly conclude guilt beyond a

reasonable doubt." United States v. Weisz, 718 F.2d 413, 438 (D.C. Cir. 1983) (emphasis omitted); see United States v. Campbell, 702 F.2d 262, 264-65 (D.C. Cir. 1983). Judgment of acquittal is inappropriate where "any reasonable factfinder could conclude that the evidence, viewed most favorably to the government, satisfied each element [of the offense] beyond a reasonable doubt." United States v. Slatten, 865 F.3d 767, 781 (D.C. Cir. 2017); see United States v. Safavian, 644 F. Supp. 2d 1, 8 (D.D.C. 2009); United States v. Jabr, Crim. No. 18-0105 (PLF), 2019 WL 13110682, at *3 (D.D.C. May 16, 2019).

   In other words, a motion for judgment of acquittal should be granted only when "viewing the evidence most favorably to the government and according the government the benefit of all legitimate inferences therefrom, a reasonable juror must necessarily have had a reasonable doubt as to the defendants' guilt." United States v. Weisz, 718 F.2d at 437. The same standard guides a district court in resolving a Rule 29 motion whether in the context of a bench or jury trial. See United States v. Jabr, 2019 WL 13110682, at *4. While the text of Rule 29 refers only to the procedure to follow in a jury trial, see FED. R. CRIM. P. 29, courts generally have applied the same legal standard in bench trials. See, e.g., United States v. Salman, 378 F.3d 1266, 1267 n.3 (11th Cir. 2004); United States v. Doe, 136 F.3d 631, 636 (9th Cir. 1998) ("The same test applies to both jury and bench trials."). In addition, Rule 29 provides that the same sufficiency of the evidence standard applies whether the court decides a motion for judgment of acquittal at the close of the government's case or at the close of all the evidence. See FED. R. CRIM. P. 29(a); see also 2A CHARLES ALAN WRIGHT & PETER J. HENNING, FEDERAL PRACTICE & PROCEDURE CRIMINAL § 467 (4th ed. 2019).

III. DISCUSSION

Ms. Baez argues that the government has failed to present sufficient evidence to sustain a conviction for Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c).  See Mem.  The government disagrees, and argues that Ms. Baez can be found guilty of violating Section 1512(c) under any one of three separate theories:  (1) Ms. Baez completed the Section 1512(c) offense by causing the Electoral College ballots to be temporarily unavailable for use by the Congressional representatives, see Opp. at 23-24; (2) Ms. Baez attempted to violate Section 1512(c) by attempting to impair the availability and integrity of the Electoral College ballots, see id. at 24-27; and (3) Ms. Baez "aided and abetted the attempts of other rioters to obstruct an official proceeding."  Id. at 27-30 (emphasis omitted).  The Court begins by discussing the elements of Section 1512(c), and then turns to each of the government's three theories of guilt.

*A.  Elements of the Offense*

Ms. Baez is charged with Obstruction of an Official Proceeding pursuant to 18 U.S.C. § 1512(c).  Section 1512(c) provides:

> (c) Whoever corruptly –
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

5

18 U.S.C. § 1512(c).  In <u>Fischer v. United States</u>, the Supreme Court held that "[t]o prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so."  <u>Fischer v. United States</u>, 603 U.S. 480, 498 (2024).  In reaching its conclusion, the Supreme Court reasoned that the term "otherwise" in Section 1512(c)(2) was "limited by the preceding list of criminal violations" contained in Section 1512(c)(1).  <u>Id</u>. at 489.  In other words, the types of conduct prohibited by Section 1512(c)(2) must be similar to the "highly particularized conduct" listed in Section 1512(c)(1) – "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] – and does not include "all means of obstructing, influencing, or impeding any official proceeding."  <u>Id</u>. at 490 (emphasis omitted).  In light of the "[t]ethering" of Section 1512(c)(2) "to the context of" Section 1512(c)(1), <u>id</u>. at 490, the Supreme Court concluded that Section 1512(c)(2) requires the government to prove that the defendant's conduct "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so."  <u>Id</u>. at 498 (quoting 18 U.S.C. § 1512(c)(1)).

The government's position is that to sustain a conviction under Section 1512(c)(2), it must prove beyond a reasonable doubt that:

> (1) Ms. Baez committed or attempted to commit an act that "alter[ed], destroy[ed], mutilate[d], or conceal[ed] a record, document, or other object," to be used in an official proceeding (18 U.S.C. § 1512(c)(1)), or otherwise impaired the integrity of or rendered unavailable a record, document, or other object to be used in an official proceeding (18 U.S.C. § 1512(c)(2));
>
> (2) Ms. Baez intended to "alter[], destroy[], mutilate[], or conceal[] a record, document, or other object," to be used in an official proceeding (18 U.S.C. § 1512(c)(1)), or otherwise impair the integrity of or render unavailable a record, document, or other object to be used in an official proceeding (18 U.S.C. § 1512(c)(2)); and

(3) Ms. Baez acted corruptly.

See Opp. at 5-6.  The Court agrees that this is the appropriate formulation of the elements

necessary to find Ms. Baez guilty of violating Section 1512(c).[3]

### B. Complete Offense

The government's first theory is that Ms. Baez violated Section 1512(c) by having

"directly caused the Electoral College ballots to be unavailable."  Opp. at 23 (emphasis omitted).

Ms. Baez responds, inter alia, that the government has not proven the first element of the offense

because she did not, in fact, "impair[] the availability" of the Electoral College ballots as is

required under the Supreme Court's interpretation of Section 1512(c) in Fischer.  See Mem.

at 2-3; Amicus Mem. at 4.

The core of the parties' dispute centers on the meaning of "impair[ing] the

availability" for purposes of establishing a Section 1512(c) conviction.  According to the

government, Ms. Baez's presence in the Capitol building "caused the electoral ballots to remain

absent from the Senate Chamber for hours, rendering them unavailable for use in the

proceeding."  Opp. at 23.  The government's interpretation of "impair[ing] the availability"

therefore is quite literal – that is, the Electoral College ballots were not available to the

Congressional representatives for use while the rioters were in the Capitol building.

This interpretation of "impair[ing] the availability" was recently considered and

rejected by Judge Howell in United States v. DeCarlo, Crim. No. 21-0073, 2024 WL 4650993

---

[3]    In its reply memorandum, amicus curiae disputes the government's formulation of the elements of Section 1512(c).  See Amicus Reply at 2-4.  The Court believes that these arguments are more appropriately addressed in the context of determining whether Ms. Baez satisfies the elements of Section 1512(c).

(D.D.C. Nov. 1, 2024).  Judge Howell began by highlighting the fact that the Supreme Court in

Fischer held that the conduct prohibited by Section 1512(c)(2) "cover[s] only actions . . . that

'impair[ ] the availability or integrity for use in an official proceeding of records, documents,

objects, or . . . other things used in the proceeding, or attempt[ ] to do so.'"  Id. at *11 (quoting

Fischer, 603 U.S. at 498).  Relying both on the dictionary definition of "impair," as well as the

Supreme Court's reasoning that Section 1512(c)(2) prohibits conduct akin to the four types of

conduct enumerated in Section 1512(c)(1) – that is, "alter[ing], destroy[ing], mutilat[ing], or

conceal[ing]" – Judge Howell found that "impairing the availability" of the Electoral College

ballots "means to diminish, weaken, or make worse that availability."  Id. at *12.  In further

support, Judge Howell relied on examples of impairment the Fischer majority had in mind,

including "creating false evidence – rather than altering incriminating evidence," and "impairing

the availability or integrity of other things . . . [not] enumerated in (c)(1), such as witness

testimony or intangible information."  Fischer v. United States, 603 U.S. at 491; see United

States v. DeCarlo, 2024 WL 4650993, at *11 n.10.

       Judge Howell applied this definition to the events of January 6, 2021, and found

that the Electoral College ballots were not "impaired" on that day; in fact they were "preserved."

In relevant part, Judge Howell reasoned:

> At the time Senate staff members removed the documents from the
> chamber, however, the proceeding had already been temporarily
> suspended, [. . .] and "legislators were evacuated from the House
> and Senate chambers," Gov't Opp'n at 34 (citing U.S. Br. at 60,
> United States v. Fischer, No. 22-3038 (D.C. Cir.) (filed Aug. 8,
> 2022)).  The temporary removal of the documents, therefore, did not
> immediately impact their availability to be used in the certification
> proceeding, since that proceeding was not in progress and both
> houses of Congress were recessed due to the security threat posed
> by the rioters to the Vice President, Members of Congress, and
> overwhelmed law enforcement personnel.

> In the context of the overall catastrophic security breach posed by non-security screened rioters roaming Capitol corridors and rooms, the removal of the ballots from the Senate and House chambers <u>preserved</u> their availability for use in the certification process, rather than impaired that availability.  As the government acknowledges, the electoral ballots were removed from the chamber when the rioters began to breach the Capitol grounds and building in order to "maintain custody of the ballots and make sure nothing happen[ed] to them."  <u>Id</u>. (alteration in original) (quoting U.S. Br. at 60, <u>United States v. Fischer</u>, No. 22-3038 (D.C. Cir.) (filed Aug. 8, 2022)). This action was crucial to ensuring both the integrity of the ballots and that the ballots remained available to be used when the proceeding resumed later in the evening.  <u>See</u> Carrazana, <u>supra</u> at III.A.2.(b) (quoting Sen. Tammy Duckworth as saying, "One of the staff members was very quick thinking and was able to grab and secure the electoral college ballots and take them with her to this location, <u>so we have them with us and we will be able to proceed as long as Mitch McConnell calls us back into session</u>" (emphasis supplied)); <u>id</u>. (quoting Sen. Jeff Merkley as saying that removing the ballots "rescued the voice of the American people" from being damaged by the rioters).  While the disruption to Congress caused by the rioters, including defendants, was severe, the electoral ballots remained intact, unaltered, unimpaired, and within the control of the appropriate congressional personnel to ensure their availability for use when the official proceedings could safely resume.  <u>See</u> <u>id</u>.; Gov't's Opp'n at 34 (acknowledging that the documents were moved to "maintain custody" over them and "make sure nothing happened to them").

<u>United States v. DeCarlo</u>, 2024 WL 4650993, at *12.

Judge Howell rejected the government's argument that the Electoral College ballots' availability was impaired because the ballots "could not be readily used to certify the election," finding that this interpretation of Section 1512(c)(2) was "the exact interpretation rejected by the Supreme Court in <u>Fischer</u>."  <u>United States v. DeCarlo</u>, 2024 WL 4650993, at *13. More specifically, Judge Howell reasoned:

> Embracing the government's theory would risk "transforming this evidence-focused statute into a one-size-fits-all solution to obstruction of justice," [<u>Fischer</u>, 603 U.S. at 497], simply because documents in the form of electoral ballots were to be used in the proceeding.  This is what the Supreme Court sought to avoid.

Indeed, the Supreme Court expressly rejected a reading of Section 1512(c)(2) that would "authorize [ ] penalties for <u>any</u> conduct that delays or influences a proceeding in <u>any</u> way," noting that "[i]nstead, Section 1512 mentions 'record,' 'document,' or other 'object' 26 times." <u>Id</u>. (emphasis in original). In other words, while defendants and the other rioters certainly prevented the immediate ability of Congress to use the ballots in the official proceeding as intended, they did so by stopping the official proceeding itself, not by "impair[ing]" the ballots' "integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1); <u>Fischer</u>, 144 S. Ct. at 2185.

<u>Id</u>. at *13 ("As the facts demonstrate, while the proceeding itself was clearly obstructed by being halted, neither the ballots themselves nor their availability for use in the proceeding were impaired by their temporary removal from the Senate chamber to ensure their safety.").

This Court is persuaded by Judge Howell's reasoning and concludes that the evidence presented by the government in the instant case does not show that Ms. Baez "impaired the availability" of the Electoral College ballots. The government has certainly presented sufficient evidence to show that Ms. Baez's presence in the Capitol building on January 6, 2021, <u>served to obstruct Congress's Joint Session</u> such that the Congress was unable to count to the Electoral College ballots and certify the election. For example, Mr. Schwager testified that following the rioters' breach of the Capitol building, the Joint Session of Congress was recessed, and the Electoral ballots were removed from the Senate Chamber for safekeeping. He further testified that the ballots were only returned to the Senate Chamber after the rioters were removed from the Capitol building and the Joint Session had reconvened. This evidence, however, does not show that Ms. Baez's actions "diminish[ed], weaken[ed], or ma[de] worse" the availability of the Electoral College ballots. <u>United States v. DeCarlo</u>, 2024 WL 4650993, at *12.

The government does not argue that the evidence presented during Ms. Baez's bench trial warrants a different result from that reached in <u>DeCarlo</u>. Instead, it argues in a

footnote that <u>DeCarlo</u> was incorrectly decided.  <u>See</u> Opp. at 24 n.5.  In particular, the government contends that under <u>DeCarlo</u>'s interpretation of Section 1512(c)(2), "no January 6 defendant can be convicted under a direct theory of liability . . . because 'while the proceeding itself was clearly obstructed by being halted, neither the ballots themselves nor their availability for use in the proceedings were impaired by their temporary removal from the Senate chamber . . . .'"  <u>Id</u>.  As an initial matter, this argument confusingly presumes that there <u>must</u> have been January 6 defendants who completed a Section 1512(c)(2) offense.  Setting this assumption aside, however, the argument does not identify a particular flaw in Judge Howell's reasoning.  The fact remains that Section 1512(c) is an "evidence-focused statute," <u>Fischer v. United States</u>, 603 U.S. at 497, and the government has not provided an example of any evidence that was "impaired" on January 6 as should be understood following <u>Fischer</u>.  <u>See</u> <u>United States v. DeCarlo</u>, 2024 WL 4650993, at *11 n.10 (outlining the examples of "impair[ing] the availability or integrity" provided by the Supreme Court in <u>Fischer</u>).

In sum, "while the Government's evidence shows that [Ms. Baez] and other rioters 'certainly prevented the immediate ability of Congress to use the ballots in the official proceeding as intended, they did so by stopping the official proceeding itself' and forcing the evacuation of the Senate Chamber, 'not by impairing the certificates' integrity or availability for use in an official proceeding.'"  <u>United States v. Kelley</u>, Crim. No. 22-408 (CKK), 2024 WL 4708086, at *13 (D.D.C. Nov. 7, 2024) (internal quotation marks and alterations omitted) (quoting <u>United States v. DeCarlo</u>, 2024 WL 4650993, at *13).  The Court therefore cannot find that Ms. Baez is guilty under the theory that she completed a Section 1512(c) offense.

### C.  Attempt

The government next argues that the evidence submitted at trial is sufficient to establish that Ms. Baez "attempted to impair the availability and integrity of the Electoral College ballots."  Opp. at 24 (emphasis omitted).  Ms. Baez maintains that she cannot be convicted of attempting to violate Section 1512(c) because she lacked the specific intent to violate the statute.  See Mem. at 10-11; Amicus Mem. at 7.  The Court begins by discussing the elements of proving a crime of attempt and the evidence presented at trial before turning to whether the government has presented sufficient evidence.

### 1.  Elements of Crime of Attempt

As discussed supra at 5-6, Section 1512(c) prohibits "corruptly . . . obstruct[ing], influenc[ing] or imped[ing] any official proceeding," as well as "attempt[ing] to do so."  18 U.S.C. § 1512(c).  The statute does not provide a specific definition of "attempt," and in such circumstances, courts in this District generally have applied a common law definition of criminal attempt.  See United States v. Jabr, Crim. No. 18-0105 (PLF), 2019 WL 13110682, at *12 (D.D.C. May 16, 2019) (citing United States v. Duran, 96 F.3d 1495, 1507-08 (D.C. Cir. 1996)); United States v. DeCarlo, 2024 WL 4650993, at *13 ("When a specific definition of attempt is not provided in a criminal statute, the D.C. Circuit has generally applied the common law definition of criminal attempt.").

Under the common law, the crime of attempt consists of "(1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation."  United States v. Washington, 106 F.3d 983, 1005 (D.C. Cir. 1997) (quoting 2 WAYNE R. LA FAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 18 (1986)); see United States v. Nitschke, 843 F.

Supp. 2d 4, 9-10 (D.D.C. 2011).  As explained by Judge Richey in <u>Duran</u>, the "dual elements" of the crime of attempt are "[1] that the defendant had the specific intent to commit the substantive crime and [2] that he took a substantial step towards commission of that crime."  <u>United States v. Duran</u>, 884 F. Supp. at 582 (citing <u>Braxton v. United States</u>, 500 U.S. 344, 349 (1991)).  And as Chief Judge Boasberg further explained in <u>Nitschke</u>, "[t]he act in furtherance is often described as a 'substantial step' that demonstrates a 'true commitment toward completing the crime' and 'that the crime will take place unless interrupted by independent circumstances.'"  <u>United States v. Nitschke</u>, 843 F. Supp. 2d at 10 (quoting <u>United States v. Hofus</u>, 598 F.3d 1171, 1174 (9th Cir. 2010)).

Applying these common law principles to the instant case, the government is required to show that Ms. Baez had the "deliberate and conscious purpose or design of accomplishing [the] very specific and more remote result" of altering, destroying, mutilating, concealing (18 U.S.C. § 1512(c)(1)), or otherwise impairing the availability or integrity of the Electoral College ballots (18 U.S.C. § 1512(c)(2)).  <u>United States v. DeCarlo</u>, 2024 WL 4650993, at *13 (citation omitted).  In other words, to prove that Ms. Baez had the "specific intent" necessary to convict her under a theory of attempt, the government must not merely show that Ms. Baez "act[ed] in violation of the law"; it must prove that she "act[ed] with the purpose of violating the law."  <u>United States v. Jabr</u>, 2019 WL 13110682, at *12 (citation and quotation marks omitted).

## 2.  Evidence Presented at Trial

The government argues that it presented sufficient evidence at trial to prove beyond a reasonable doubt that Ms. Baez had the specific intent necessary to sustain a Section 1512(c)(2) conviction on the theory that she "attempted to impair the availability

integrity of the Electoral College ballots." Opp. at 24. More specifically, the government

maintains that the evidence proves her specific intent by "link[ing] [her] undisputed intent to

interfere with the certification with her understanding" of the electoral certification process.

Opp. at 19. To that end, the government groups its evidence into three categories: (1) evidence

reflecting that Ms. Baez had an "understanding of the procedures dictated by the Twelfth

Amendment and the significance of the joint proceeding on January 6, including the role of

ballots at the core of the proceeding," Opp. at 13; (2) evidence revealing that Ms. Baez was

"dissatisf[ied] with the reported results of the 2020 presidential election" and wanted to "take

action to undo those results," id. at 14; and (3) evidence showing that Ms. Baez did take

action – i.e., entering and remaining in the Capitol building – that temporarily succeed in

preventing the Joint Session from counting the Electoral College ballots. Id. at 15-16.

　　　　　As to the first category – evidence of Ms. Baez's understanding of the electoral

certification process – the government introduced a series of Ms. Baez's social media posts and

messages discussing the electoral certification that would take place on January 6, 2021. See

Opp. at 13. For example, on November 18, 2020, after an individual sent Ms. Baez a message

related to the Twelfth Amendment and an accompanying video, Ms. Baez messaged the

individual, "[l]iterally why I'm not worried, i [sic] fall asleep every night dreaming of the 12th

amendment lol." Gov't Ex. 611A.[4] In another set of messages on December 26, 2020, Ms. Baez

stated that she was "going to DC on the 6th," and when asked what was happening on January 6,

Ms. Baez replied "[t]hey are finalizing the electoral! This is when they can switch them for

---

[4]　　　　The Twelfth Amendment to the United States Constitution outlines the
requirement of electoral certification. See U.S. Const. amend. XII ("The Electors shall meet in
their respective states, and vote by ballot for President and Vice-President. . . . The person
having the greatest number of votes for President, shall be the President.").

Trump." Gov't Ex. 613A. On December 27, 2020, Ms. Baez posted an Instagram story containing a series of screenshots of Twitter posts from a Rasmussen Reports account discussing the possibility that then-Vice President Pence could "declin[e] to open and count the certificates," adding the text "See you in DC on the 6th!" Gov't Ex. 615A. On January 2, 2021, Ms. Baez posted another Instagram story containing a screenshot of a Twitter post discussing several Senators' stated intention to object on January 6, adding the text "LET'S DO THIS." Gov't Ex. 619B.

   With respect to the second category – evidence that Ms. Baez was dissatisfied with the presidential election results and intended to travel to Washington, D.C. on January 6, 2021 – the government introduced several of Ms. Baez's social media posts and messages. See Opp. at 14-15. For example, on December 28, 2020, Ms. Baez posted an Instagram story containing a screenshot of a social media post from then-President Trump stating, "See you in Washington, DC on January 6th," adding the text "Ready to fight for America!!!" Gov't Ex. 616B. On December 30, 2020, Ms. Baez posted another Instagram story stating, in relation to a story about January 6, that "[t]hings are going to get spicy. Can't wait for DC." Gov't Ex. 617B. Also on December 30, 2020, Ms. Baez sent a message to an individual stating, "[t]hings are for sure going down on the 6th. People are done being pushed around." Gov't Ex. 618A.

   As to the final category – evidence of Ms. Baez's actions at the Capitol on January 6 – the government introduced video footage from Ms. Baez's and others' social media accounts and from the Capitol's CCTV documenting Ms. Baez's movement through the Capitol building. See Opp. at 15-16. At approximately 2:31 p.m. on January 6, 2021, Ms. Baez – before entering the Capitol building herself – posted to Instagram several photographs of rioters in the

Capitol building, adding the caption "[p]rotestors outside Senate Chamber, have breached chamber." Gov't Ex. 620B. CCTV footage shows Ms. Baez entering the Capitol building through the Parliamentarian Door on the Senate side of the building at approximately 2:56 p.m. Gov't Ex. 201A; see Transcript of May 15, 2024 Plea Hearing ("Plea Hr'g Tr.") [Dkt. No. 115] at 30:2-11. After the Capitol police pushed a large number of rioters – including Ms. Baez – outside of the Capitol building toward the Northwest Plaza of the Capitol, Ms. Baez reentered the Capitol through the Senate Wing Door at approximately 3:07 p.m. Gov't Exs. 202A, 505; see Plea Hr'g Tr. at 30:2-11. Ms. Baez spent the majority of the rest of her time in the Capitol building in the Capitol Crypt. See Gov't Exs. 203A, 204A, 306A, 507. At one point, Ms. Baez briefly departed the Crypt and encountered a Capitol Police officer blocking access to a stairwell leading to the above floor where the Senate and House chambers are located. Gov't Exs. 204A, 306A. The Capitol Police officer stepped aside, and Ms. Baez began encouraging other rioters to go up the stairwell, stating "C'mon guys, go, go, go!" See Gov't Ex. 507. Ms. Baez herself did not go up the stairwell. She returned to the Crypt and was then escorted out of the Capitol building by officers at approximately 3:34 p.m. See Gov't Exs. 203A, 204A, 206A, 207, 208A, 308A.

In the subsequent hours after her removal from the Capitol and through January 7, 2021, Ms. Baez messaged individuals and posted to social media statements about the rioters' effect on the certification, such as "I went in to document. But this was beyond peaceful protests. Because of the storming at the capitol building we stopped the electoral vote count," Gov't Ex. 625A, and "[p]eople are upset, but do they realize we stopped the electoral count?" Gov't Ex. 626A. Ms. Baez also messaged an individual expressing that further action may be required, stating "[a] lot of people are switching their flights to stay longer! Just keep taking the

[C]apitol when they try to certify anything."  Gov't Ex. 632A; see Gov't Ex. 627A (stating in an Instagram comment, "[w]e will do all we have to, to keep delaying this FAKE certification.").

### 3.  The Government Has Not Introduced Sufficient Evidence

Based on this evidentiary record and drawing all reasonable inferences in the government's favor, the Court concludes that the government has not provided sufficient evidence for a reasonable factfinder to conclude that Ms. Baez had the specific intent to alter, destroy, mutilate, conceal, or otherwise impair the integrity or availability of the Electoral College ballots.  The government's argument with respect to specific intent is that a factfinder can reasonably conclude that Ms. Baez specifically intended to impair the integrity or availability of the Electoral College ballots because she "inten[ded] to interfere with the certification" and had an "understanding of" the electoral certification process.  Opp. at 19.  This argument, however, does not rely on evidence suggesting that Ms. Baez had "an intent . . . to bring about certain consequences . . . ." United States v. Washington, 106 F.3d at 1005 (citation omitted). The argument really is an attempt to recharacterize Ms. Baez's intent to delay or interfere with the electoral certification as specific intent to violate Section 1512(c) based on her general understanding that Congress's procedure for certifying the election involved the counting of Electoral College ballots.  As Judge Howell concluded in DeCarlo, a defendant's "focus[] on stopping Members of Congress and the proceeding to certify the Electoral College vote . . . falls short of showing any specific intent by [a defendant] to impair the availability or integrity of the electoral ballots themselves."  United States v. DeCarlo, 2024 WL 4650993, at *14 (citations and internal quotation marks omitted).  Evidence that Ms. Baez had a basic understanding of the

electoral certification process cannot by itself transmute her intent to interfere with the proceeding into a specific intent to impair the availability of the Electoral College ballots.

   The fact of the matter is that outside of evidence reflecting that Ms. Baez was aware that Congress planned to count the Electoral College ballots on January 6, 2021, the government has not presented any evidence that Ms. Baez "searched for or had any contact with" the Electoral College ballots, or that Ms. Baez "suggested that any other rioters should search any Capitol areas or offices" for the ballots. United States v. DeCarlo, 2024 WL 4650993, at *14. Indeed, there is no evidence reflecting Ms. Baez's intention to take any action with respect to the Electoral College ballots themselves. Absent such evidence, the Court cannot find that Ms. Baez had the specific intent necessary to sustain a conviction for attempting to violate the "evidence-focused" prohibitions in Section 1512(c). See Fischer v. United States, 603 U.S. at 497. To find otherwise based on evidence that Ms. Baez was aware of the procedures to certify the election and may have intended to interfere with the certification would "transform[] this evidence-focused statute into a one-size-fits-all solution to obstruction of justice." Id.; see United States v. DeCarlo, 2024 WL 4650993, at *14 ("[T]he theory of obstruction premised on defendants' efforts to stop the congressional vote on certification was the interpretation of Section 1512(c)(2) specifically rejected by the Supreme Court in Fischer."); see also United States v. Kelley, Crim. No. 22-408 (CKK), 2024 WL 4708086, at *12 (D.D.C. Nov. 7, 2024) ("Even assuming . . . that [the defendant] did know that Congress was evaluating and counting certificates of vote on January 6, the Government's evidence would support an inference that he intended only to influence how Members of Congress evaluated and counted those certificates, rather than to alter or destroy the certificates or impair their availability for use in the proceeding.").

The government makes two additional arguments in support of their contention that it has proven Ms. Baez acted with the requisite specific intent.  First, the government argues that a factfinder could infer that Ms. Baez intended the natural and probable consequence of "joining a mob invasion of the Capitol," which it contends was the mutilation, altering, or destruction of the Electoral College ballots.  Opp. at 20 (citing United States v. Rivera, 607 F. Supp. 3d 1, 8 (D.D.C. 2022), aff'd, No. 22-3088, 2023 WL 8594077 (D.C. Cir. Dec. 12, 2023)). "[T]he probable and natural consequence of breaking into the United States Capitol is the disruption of Congressional business and proceedings."  United States v. Rivera, 607 F. Supp. 3d at 8.  And while that disruption can be effectuated by targeting the proceeding, individual members of Congress, or the evidence to be used in the proceeding, the Supreme Court in Fischer made undeniably clear that Section 1512(c) is only concerned with evidence.  Fischer v. United States, 603 U.S. at 497 (finding that Section 1512(c) is an "evidence-focused statute"). As amicus curiae point out – and as the Court discussed supra at 16-17 – "the government did not prove that [Ms. Baez] had an intent to effectuate such a delay through altering, destroying, mutilating, or concealing an actual ballot, rather than by causing the people who would count the ballots – Congress – to delay their responsibilities."  Amicus Reply at 5.  Absent indicia that Ms. Baez intended to take any action with respect to the Electoral College ballots themselves, the Court cannot find that Ms. Baez had the requisite specific intent to convict her of attempting to violate Section 1512(c) solely based on the fact that the impairment of the ballots was one of several natural and probable results of her actions on January 6.  Cf. United States v. Rivera, 607 F. Supp. 3d at 8 (finding defendant acted with the requisite intent in violating 18 U.S.C. § 1752(a)(2) because of "Defendant's inculpatory statements" coupled with the principle that "a person intends the natural and probable consequences of their actions").

Second, the government argues that Ms. Baez's entrance into the Capitol building after the rioters had breached the Senate Chambers suggests that her "intentions were not limited to delaying the joint session" – which had already been recessed – and that it shows that she "wanted to access the ballots" or "allow rioters who were already in proximity to the Chamber sufficient time to locate, then alter, mutilate, conceal, replace, or destroy them." Opp. at 19. Ms. Baez's intention to allow other rioters to access the ballots is more appropriately addressed in the context of the government's aiding and abetting theory discussed below. As for Ms. Baez's intention to access the ballots, her entrance into the Capitol building after the recess of Congress could be explained by a variety of different intentions – such as her desire to continue the delay of the certification process – and cannot be a reasonable basis to conclude that she had the requisite specific intent.

In sum, the Court finds that the government's evidence is insufficient for a reasonable factfinder to conclude that Ms. Baez acted with the specific intent necessary to convict her of attempting to violate Section 1512(c).

### D. Aiding and Abetting

The government's final argument is that it "has proven beyond a reasonable doubt that [Ms. Baez] aided and abetted the attempts of other rioters to obstruct an official proceeding." Opp. at 27 (emphasis omitted). Ms. Baez argues that the government has failed to prove that she is guilty of aiding and abetting the Section 1512(c) violations of others both because the government has not identified a principal offender, and because it has not provided sufficient evidence that she acted with the requisite intent. See Amicus Mem. at 7-8.

To succeed under an aiding and abetting theory, the government must show: "(1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge

20

on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense." United States v. Washington, 12 F.3d at 1136 (citation omitted); see United States v. Raper, 676 F.2d 841, 849 (D.C. Cir. 1982); United States v. Wilson, 720 F. Supp. 2d 51, 60 (D.D.C. 2010).

   The Court concludes that the government has failed to provide sufficient evidence to establish the first and third elements of aider and abettor liability. Turning first to the third element – that an offense was being committed by someone, that is, the principal – the government has not offered any evidence in this case to show that any of the rioters on January 6 violated or attempted to violate Section 1512(c). As the Court discussed above, the Electoral College ballots were not "alter[ed], destroy[ed], mutilate[d], or conceal[ed]," nor was their availability or integrity impaired. See Section III.B; United States v. DeCarlo, 2024 WL 4650993, at *13 ("[W]hile the proceeding itself was clearly obstructed by being halted, neither the ballots themselves nor their availability for use in the proceeding were impaired by their temporary removal from the Senate chamber to ensure their safety."). Furthermore, the government has not offered any evidence "that any other rioter acted with the specific intent to impair the integrity or availability of the certificates of vote (or any other document or other physical thing) for use in the certification proceeding." United States v. Kelley, 2024 WL 4708086, at *13. Absent evidence that there was a principal offender that completed or attempted to complete the Section 1512(c) offense, the government has not proven that Ms. Baez is guilty of aiding and abetting the offense. See id.; In re Nofziger, 956 F.2d 287, 291 (D.C. Cir. 1992) ("It is well established that there must be a guilty principal before a second party can be found to be an aider or abettor.").

The government attempts to skirt this lack of evidence by arguing that Ms. Baez was "aware of plans being hatched by others to interfere with the ballots." Opp. at 27. In support, the government points to three pieces of evidence: (1) an Instagram story where Ms. Baez included a screenshot of a Rasmussen Reports' Twitter post quoting Joseph Stalin saying "[t]hose who cast the votes decide nothing. Those who count the votes decide everything," Gov't Ex. 615A; (2) a message from Ms. Baez stating, in response to a message inquiring about what was planned for January 6, "[t]hey are finalizing the electoral! This is when they can switch them for Trump," Gov't Ex. 613A; and (3) an Instagram story from January 6, 2021, where Ms. Baez included photographs of rioters outside of the Senate Chambers with added text stating "Protestors outside Senate Chamber, have breached chamber." Gov't Ex. 620B. The closest the government comes to showing that Ms. Baez was "aware of plans being hatched by others to interfere with the ballots" was her message stating that "they can switch [the ballots] for Trump," which based on the entire message, seems to be referring to Congress, not the rioters. See Gov't Ex. 613A ("They are finalizing the electoral! This is when they can switch them for Trump."). But even if the government's evidence showed that Ms. Baez was "aware of plans being hatched by others to interfere with the ballots," Opp. at 27, the government would still fail to make the required showing that the offense was actually committed by a principal offender because it has not shown that a rioter took a substantial step towards the commission of a Section 1512(c) offense with the requisite specific intent. See United States v. Duran, 884 F. Supp. at 582 (outlining the "dual elements of the crime of attempt").

In any event, even if the Court were to find that the government satisfied its burden of showing that an offense was committed by a principal offender, the government has not met its burden of showing the first element of aider and abettor liability – that Ms. Baez

acted with "the specific intent to facilitate the commission of a crime by another." <u>United States v. Washington</u>, 12 F.3d 1128, 1136 (D.C. Cir. 1994). As discussed at length above, none of the evidence presented by the government proves that Ms. Baez intended to take any action with respect to the Electoral College ballots. <u>See</u> Section III.C. It is similarly the case that the evidence does not reflect that Ms. Baez took any action with the intent of facilitating another rioter's attempt to specifically interfere with the Electoral College ballots. The government's arguments on this point mirror those it made in the context of the attempt theory of guilt. For example, the government argues that evidence of Ms. Baez "encouraging other rioters seeking to obstruct the proceeding" – such as when Ms. Baez stood at the base of the stairwell and waved rioters up the stairs, <u>see</u> Gov't Ex. 507 – "when seen through the prism of [Ms. Baez's] substantial knowledge" of the electoral certification process, shows that "her goal was to add to the mass of rioters on the floor and thereby further the ongoing attempt to seize the certificates." Opp. at 28-29. Ms. Baez's knowledge about the electoral certification process does not alone transform her intent to obstruct the proceeding into either an intent to "impair the availability" of the Electoral College ballots or an intent to assist others in doing so.

      Because the government has not offered evidence to find that anyone other than Ms. Baez violated Section 1512(c), and because it has not offered sufficient evidence that Ms. Baez had the specific intent to facilitate the commission of a Section 1512(c) offense, the government has failed to prove that Ms. Baez is guilty of aiding and abetting the offense. <u>See</u> <u>United States v. Kelley</u>, 2024 WL 4708086, at *13 (finding a defendant not guilty of aiding and abetting a Section 1512(c) offense where "the Government ha[d] not proven [that] anyone other than [defendant] completed the offense charged").

In viewing the evidence most favorably to the government, the Court concludes that the government has not offered sufficient evidence to sustain a conviction pursuant to 18 U.S.C. § 1512(c)(1), and Ms. Baez therefore is entitled to judgment of acquittal.

## IV. CONCLUSION

In light of the foregoing, Defendant Stephanie Baez's Rule 29 Motion for Acquittal on the Facts [Dkt. No. 126] is GRANTED.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:     January 17, 2025